# EXHIBIT B

*Contract for Services Between*
**Government of Guam Retirement Fund**
*and*
**AXA Rosenberg Investment Management LLC**

# INVESTMENT MANAGEMENT AGREEMENT BETWEEN THE GOVERNMENT OF GUAM RETIREMENT FUND

## AND

## AXA ROSENBERG INVESTMENT MANAGEMENT LLC

**THIS AGREEMENT** is made this _____ day of _____, 2005, by and between the BOARD OF TRUSTEES OF THE GOVERNMENT OF GUAM RETIREMENT FUND (hereafter referred to as the "RETIREMENT FUND" or simply "the FUND"), whose office address is 424 Route 8, Maite, Guam 96910, and AXA ROSENBERG INVESTMENT MANAGEMENT LLC (hereafter referred to as the "INVESTMENT MANAGER"), whose address is 4 Orinda Way, Building E, Orinda, California 94563, U.S.A.

**WHEREAS**, the Retirement Fund, after adopting a particular Asset Allocation described in the Investment Policy Statement attached hereto as Attachment A, determined the need to engage the professional services of an investment manager to provide investment management services in the INTERNATIONAL EQUITY STYLE to the Retirement Fund; and

**WHEREAS**, the Retirement Fund, engaged the services of its consultant, Mercer Investment Consulting, Inc. ("Mercer"), to conduct a manager search to develop a list of investment managers that would fit the criteria established jointly by the Fund and Mercer for the International Equity Manager; and

**WHEREAS**, the services to be rendered are of a special nature and these services have been determined to be in the best public interest to be performed under contract by professional personnel rather than employees in the service of the Government; and

**WHEREAS**, the Director of the Retirement Fund, or his designee as Procurement Officer for the purchasing agency, known as Retirement Fund, is authorized under GSA Procurement Regulations 2-112 to procure the services of certain professionals; and

**WHEREAS**, reference is hereby made to "Government of Guam Retirement Fund Request for Proposals for International Equity Manager dated October 29, 2003 (the "RFP"), a copy of which is attached as Attachment B and hereby made a part hereof, describing the type of services required and specifying the type of information required from each offeror and the relative importance of particular qualifications; and

**WHEREAS**, the Investment Manager has submitted a proposal in response to the RFP (the "Proposal"), a copy of which is attached as Attachment C and hereby made a part thereof; and

**WHEREAS**, the Retirement Fund awarded this contract to the Investment Manager pursuant to the Board of Trustees' finding that this Investment Manager is qualified to provide the services sought;

**NOW, THEREFORE**, for and in consideration of the premises and mutual covenants herein contained, the Retirement Fund and the Investment Manager hereby agree as follows:

**1. APPOINTMENT, FIDUCIARY STATUS, AND DISCRETIONARY AUTHORITY OF INVESTMENT MANAGER.**

1.1 .APPOINTMENT & FIDUCIARY STATUS. Pursuant to the authority vested in the Board of Trustees by 4 GCA § 8145, the Board of Trustees appoints Investment Manager with power of attorney to invest and reinvest the Investment Account Assets, as defined in paragraph 7 below, as fully as the Board

itself could do. The Investment Manager does hereby accept such appointment and by its execution of this agreement, the Investment Manager represents and warrants the following:

    1.1.1    It meets all of the qualifications set forth in 4 GCA § 8145(c)(1) - (4);

    1.1.2    It is registered as an investment adviser under the Investment Adviser's Act of 1940;

    1.1.3    It has in excess of two hundred million dollars ($200,000,000.00) under its direct supervision as of the date of this Agreement;

    1.1.4    It will promptly advise the Board and/or the Director of the Fund of any material change in the nature of its present organization that would affect its qualifications under the Code or its registration with the Securities Exchange Commission as an investment adviser. More specifically, the Investment Manager shall promptly notify the Fund if:

    (a)    any change occurs in the director, officers or partners of the Investment Manager who are:

    (i)    members of Investment Manager's investment committee who make strategic investment decisions for the Investment Account Assets, or

    (ii)    responsible for strategic investment decisions for the Investment Account Assets, or

    (iii)    supervisors of the person(s) responsible for strategic investment decisions for the Investment Account Assets; or

    (b)    more than 25% of Investment Manager's equity capital is sold. If Investment Manager is a partnership, Investment Manager shall promptly notify the Fund of a change of not more than 25% in the ownership of the Investment Manager.

    1.1.5    It will provide such investment management services with respect to and in accordance with this Agreement (including the investment guidelines set forth in Attachment A hereto, as the same may be amended from time to time in writing by the Board of Trustees).

    1.1.6    It is a fiduciary and will assume the duties, responsibilities and obligations of a fiduciary under the standards set forth in paragraph 3 with respect to the portion of the Fund's investment portfolio delegated to the Investment Manager to manage.

    1.1.7    It will provide the Fund with a copy of its most current Form ADV, Part II, filed with the SEC, at least forty-eight hours prior to entering into this agreement.

    1.2    DISCRETIONARY AUTHORITY. The Investment Manager shall have full discretionary authority to manage the Investment Account Assets from the effective date. The Investment Manager shall supervise and direct the investments of the Investment Account Assets, subject to such limitations as the Retirement Fund may impose by notice in writing but without any further approval from the Fund, except as required by law.

    1.2.1    The Investment Manager shall supervise and direct the investment of the Investment Account Assets in accordance with (i) those pertinent provisions of the Government of Guam Retirement Laws relating to permissible investment, (ii) the general provisions of the Fund's investment policy and guidelines; and (iii) the Fund's specific provisions regarding the Investment Manager's

designated style of asset management, as provided in Appendix A and which is incorporated by reference into this contract, provided, however that such documents are provided to the Investment Manager by the Fund.

        1.2.2    Investment Manager shall have full discretionary authority to buy, sell, exchange, convert, and otherwise trade in any stocks, bonds, mutual funds, and other securities and to establish and execute securities transactions through accounts with such brokers and/or dealers as the Investment Manager may select in the best interest of the Fund, except to the extent otherwise directed by the Board, provided, however, that all such activities shall be conducted in a manner consistent with the investment guidelines, applicable laws, and the Investment Manager's obligations hereunder including its obligation to seek to ensure best execution of any such transactions.

        1.2.3    Notwithstanding the foregoing, to the extent that the Investment Manager invests in mutual funds as described in Appendix A attached hereto, the Investment Manager's discretionary authority over the direct investments in the mutual fund shall be subject to the provisions of the provisions of the prospectus, trust deed and/or subscription documents applicable to said mutual fund, as amended and supplemented from time to time (collectively, the Mutual Fund Documents).

## 2. AGREEMENT OF TERM.

The Agreement Term shall be as set forth under 4 GCA § 8145(c)(5) and shall commence on the date that the Governor of Guam affixes his signature.

## 3. STANDARD OF CARE.

        3.1    The Investment Manager shall perform its duties hereunder with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent investor acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, consistent with the standards applicable to fiduciaries under the Employee Retirement Income Security Act of 1974 ("ERISA") even though the Retirement Fund is itself exempt from the requirements of ERISA.

        3.2    The Investment Manager shall diversify the Investment Account Assets so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Diversification of assets in mutual fund investments described in Appendix A hereto shall be subject to the applicable Mutual Fund Documents.

        3.3    The Investment Manager shall discharge its duties hereunder with respect to the Investment Account Assets in the interest of, and for the exclusive purpose of providing benefits for the beneficiaries and members of the Retirement Fund.

        3.4    The Investment Manager shall not engage in any transaction involving Investment Account Assets that would constitute a non-exempt prohibited transaction under Section 406 of ERISA.

        3.5    The Investment Manager shall comply with the Investment Policy Statement and the statutory investment guidelines, which may be amended from time to time. The Investment Manager will not be bound to follow any such amended Investment Policy Statement or statutory investment guidelines until it has received written notice thereof from the Board of Trustees. In the event of a conflict between the terms of this Agreement and the Investment Policy Statement, the terms of this Agreement shall govern.

        3.6    The Investment Manager shall at no time have custody or physical control of the cash, cash equivalents or the securities comprising the Investment Account Assets.

4. **COMMUNICATIONS, NOTICES, DIRECTIONS TO MANAGERS.**

    4.1    All directions by or on behalf of the Retirement Fund to the Investment Manager shall be in writing signed either by (a) the Director of the Fund or the Board of Trustees' duly authorized representative; and/or (b) the Chairperson or a Member of the Board of Trustees.

    4.2    The Investment Manager shall be fully protected in relying upon any direction in accordance with the previous paragraph with respect to any instruction, direction or approval by the Fund Director.

    4.3    The Investment Manager shall be fully protected in acting upon any instrument, certificate or paper believed by it to be genuine and to be signed or presented by the proper person or persons, and the Investment Manager shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

    4.4    The Investment Manager will not be bound to follow any amendments to the Investment guidelines or changes to the Retirement Law until it has received written notice thereof from the Board of Trustees, the Fund Director or other authorized representative.

5. **NOTICES.**

Unless otherwise specified herein, all notices, instructions and advice, with respect to security transactions or any other matters contemplated by this Agreement shall be deemed duly given when delivered in writing to the addresses below or when sent by facsimile transmission followed by the original document in the mail or when deposited by first-class mail addressed as follows:

    To the Trustees:

    Board of Trustees
    Government of Guam Retirement Fund
    424 Route 8
    Maite, Guam  96910

    ATTENTION:    Wilfred G. Aflague, Director


    To the Investment Manager:

    AXA Rosenberg Investment Management, LLC
    4 Orinda Way, Building E, Orinda, California 94563, U.S.A.

    ATTENTION:    Bill Ricks, Chief Executive Officer

6. **REPRESENTATIONS AND WARRANTIES OF THE BOARD.**

The Board hereby represents, warrants, and covenants to the Investment Manager that (a) a true and complete copy of the Government of Guam Retirement Laws, compiled by the Fund, has been delivered to the Investment Manager; (b) true and complete copies of each and every amendment thereto will be delivered to the Investment Manager as promptly as practicable after the adoption thereof; (c) the investment guidelines as currently in effect have been delivered to the Investment Manager as promptly as practicable after the adoption thereof; (d) the Board constitutes all of the present Trustees; (e) if any person shall cease to be a Trustee, the Investment Manager shall be notified

of such cessation and, in such event, from and after the effective date of such notification, such person shall no longer be deemed to be a Trustee for purposes of the Agreement; and (f) if another institution should be substituted as the Custodian (as defined in paragraph 9) of the Investment Account Assets, the Investment Manager shall be notified of such substitution and the substituted bank will thereafter be deemed to be the Custodian for purposes of the Agreement.

**7.     DEFINITION OF INVESTMENT ACCOUNT ASSETS.**

7.1     The Investment Account Assets shall initially consist of the cash and investments of the Fund that the Board gives the Investment Manager discretion to manage plus all investment, reinvestments and proceeds of the sale thereof, including without limitation all dividends and interest on investment, and all appreciation thereof and additions thereto less depreciations thereof and withdrawals therefrom. The Board will promptly notify the Investment Manager of any additions it makes to, or any withdrawals from, the custodial Investment Account.

7.2     To the extent that Investment Account Assets are invested in mutual funds, the Investment Account Assets shall consist only of the shares of the mutual funds. Direct investments in the mutual funds shall not constitute part of the Investment Account Assets and shall remain in the custody of the mutual fund(s).

**8.     VALUATION.**

8.1     In computing the market value of any non-mutual fund investment of the Investment Account Assets, each security listed on any national securities exchange shall be valued at the last sale price on the valuation date. Listed stocks not traded on such date and any unlisted stock regularly traded in the over-the-counter market shall be valued at the latest available bid price quotation furnished to the Custodian (as defined in paragraph 9) by such sources as it may deem appropriate. Any other non-mutual fund security shall be valued in such manner as determined in good faith by the Custodian, with the reasonable assistance of the Investment Manager, if requested, to reflect its fair market value.

8.2     Valuation of mutual fund assets shall be based on the net asset value of the shares in accordance with the Mutual Fund Documents.

**9.     CUSTODIAL SERVICES.**

9.1     The Investment Account Assets shall be held by a custodian bank (the "Custodian") duly appointed by the Retirement Fund and the Investment Manager is authorized to give instructions to the Custodian with respect to all investment decisions regarding the Assets.

9.2     All transactions shall be consummated by payment to, or by delivery by the Fund or such other party as the Fund may designate in writing, such as the Custodian of the Fund, of all cash and/or securities due to or from the Investment Account Assets. The Investment Manager shall not act as Custodian for the Investment Account Assets, but may issue instructions to the Custodian as may be appropriate in connection with the settlement of transactions initiated by the Investment Manager pursuant to Paragraph 9 hereof.

9.3     Instructions of the Investment Manager to the Fund and/or the Custodian shall be made in a form mutually agreed to by the Custodian and the Investment Manager. The Investment Manager shall instruct all brokers and dealers executing orders on behalf of the Investment Account Assets to forward to the Investment Manager and/or the Custodian copies of all confirmations promptly after execution of transactions. The Investment Manager shall not be responsible for any loss incurred by reason of any act or omission of any broker or dealer or the Custodian; provided, however that the

Investment Manager will make reasonable efforts to require that brokers and dealers selected by the Investment Manager perform their obligations with respect to the Investment Account Assets.

9.4  To the extent that Investment Account Assets are invested in mutual funds, the Investment Account Assets shall consist only of the shares of the mutual funds.

9.5  The Board or Director of the Fund will instruct the Custodian to provide the Investment Manager with monthly reports concerning the status of the Investment Account Assets.

**10.  EXECUTION/BROKERAGE.**

10.1  To the extent applicable to the type of investment to be made hereunder, when the Investment Manager places orders for the purchase or sale of portfolio securities for the Account, the Investment Manager shall use reasonable efforts in seeking the best combination of price and execution in selecting brokers or dealers. In making such selection, the Investment Manager is expressly authorized to consider, among other factors, the fact that a broker or dealer has furnished, or has agreed to furnish in the future, statistical, research or other information or services which may enhance the Investment Manager's investment research and portfolio management capability generally. The Fund acknowledges that such information or services may not directly or exclusively benefit the Investment Account Assets and that certain of such information or services may be available to the Investment Manager on a cash payment basis.

10.2  Subject to best execution, it is anticipated that as relates to transactions effectuated by any broker or dealer for the Investment Account Assets, the commission therefor shall not, to the knowledge of the Investment Manager, be in excess of the commission rate charges of comparable accounts for comparable transactions placed through the same type of brokers or dealers offering similar services including the ability to execute the entire trade in an expeditious manner.

10.3  Where the Investment Manager places orders for the purchase or sale of securities for the Investment Account, in selecting brokers or dealers to execute such orders, the Investment Manager shall act in the best interest of the Fund, and may place buy and sell orders with brokerage houses with branch(es) on Guam and arrange for credits for such transactions to be given to the branch(es).

10.4  To the extent applicable to the type of investment to be made hereunder, and subject to best execution, the Board of Trustees may instruct the Investment Manager to direct transaction orders to particular broker-dealers. The direction may relate to all or only a percentage of all transactions effected for the Fund, including equity, fixed income, and new issue underwriting, as part of a Commission Recapture Program. The cost of transaction shall be at a discounted price that has been negotiated with identified brokerage houses. The obligation of the Investment Manager is to obtain both best price and best execution and to consider the full range and quality of a broker's services in placing brokerage transactions including the value or research, execution capability, commission rate, financial responsibility, and responsiveness to the Investment Manager.

10.5  Provided the investment objectives of the Fund are adhered to, the Retirement Fund agrees that the Investment Manager may aggregate sales and purchase orders or securities held in the Investment Account with similar orders being made simultaneously for other portfolios managed by the Investment Manager if, in the Investment Manager's reasonable judgment, such aggregation shall result in an overall economic benefit to the Investment Account, taking into consideration the advantageous selling or purchase price and brokerage commission. In accounting for such aggregated orders, price and commission shall be averaged on a per bond or share basis daily. The Retirement Fund acknowledges that the Investment Manager's determination or such economic benefit to the Fund is based on an evaluation that the Fund is benefited by relatively better purchase or sales prices, lower commission expenses and beneficial timing of transactions, or a combination of these and other factors.

## 11. NON-EXCLUSITIVITY OF SERVICES.

11.1 The Retirement Fund understands and agrees that the Investment Manager performs investment management services for various clients and that the Investment Manager may take action with respect to any of its other clients which may differ from action taken or from the timing or nature of action taken with respect to the Investment Account Assets, so long as it is the Investment Manager's policy, to the extent practical, to allocate investment opportunities to the Investment Account Assets over a period of time on a fair and equitable basis relative to other clients.

11.2 The Retirement Fund understands and agrees that the Investment Manager shall have no obligation to purchase or sell for the Investment Account Assets any security which the Investment Manager or its officers, directors, or employees, may purchase or sell for its or their own accounts or the account of any other client, if in the opinion of the Investment Manager such transaction or investment appears unsuitable, impractical, or undesirable for the Investment Account Assets.

## 12. FEES, EXPENSES, AND COMPENSATION.

12.1 The compensation of the Investment Manager for the management of the money deposited with the Custodian in the account to be managed by the Investment Manager (the Investment Account Assets) in the designated International Equity Style shall be calculated in the following manner:

      12.1.1 All assets not invested in mutual funds      0.0% per annum

12.1.2 The foregoing fee shall be paid quarterly in arrears based on the market value of those Investment Account Assets which are not invested in mutual funds as of the last day of the quarter, with ¼ of the annual rates indicated above applied each quarter. The fee schedule above shall apply until the Investment Account Assets are moved to a new structure.

12.2 Mutual Funds. Fees and expenses levied inside each mutual fund managed by Investment Manager shall be governed by the applicable Mutual Fund Documents. No additional fees or compensation beyond those paid within each mutual fund shall be payable by the Fund on Investment Account Assets invested by the Investment Manager in such mutual funds.

12.3 This fee schedule, and the structure of the account including whether investment is made in mutual funds or other commingled vehicles as opposed to being made via separate account, may be changed by mutual agreement for the Fund and the Investment Manager verified formally by both parties in writing.

## 13. PROXY VOTING, ELECTIONS.

13.1 To the extent applicable to the type of investment to be made hereunder, the Investment Manager shall be responsible for voting proxies which are solicited in connection with the Investment Account Assets and shall keep such records as may from time to time be required under applicable laws in connection with the voting thereof. The Investment Manager shall also be responsible for making all elections in connection with any mergers, acquisitions, tender offers, bankruptcy proceedings or other similar occurrences which may affect the Investment Account Assets, and in connection with Rule 14b-1(c) under the Securities Exchange Act of 1934. The Fund will instruct the Custodian to promptly forward to the Investment Manager all communications received by the Custodian in connection with the Investment Account Assets, including proxy statements and proxy ballots duly executed by the Custodian as the record owner of the Investment Account Assets. The Investment Manager shall make available to the Fund information concerning the voting of proxies.

13.2     The Fund will instruct the Custodian of the Investment Account Assets, as the record owner, to complete and file any class action notices or proofs of claim and the Investment Manager will not be responsible for such administrative filings.

13.3     With respect to assets invested in any mutual fund, the Investment Manager shall vote or refrain from voting proxies as the Investment Manager believes is in the best interest of the participants in the mutual fund, and in accordance with the Investment Manager's proxy voting policies as provided to the Fund.

## 14.    CONFIDENTIAL INFORMATION.

All information and advice regarding the operations and investment of the Fund, furnished by either party to the other hereunder, including their respective agents and employees, shall be treated as confidential and shall not be disclosed to third parties except as required by law by regulatory agencies, or in the performance of Investment Manager's duties.  However, the Investment Manager is authorized to include the Fund's name on a list that may be used in connection with its marketing practices.

## 15.    SCOPE OF AGREEMENT; MERGER; MODIFICATION.

15.1     This agreement supercedes any and all other agreements, either oral or in writing, between the parties with respect to the retainment of the Investment Manager by the Fund and contains all of the covenants and agreement between the parties with respect to such retainment in any manner whatsoever.  Each party to this agreement acknowledges that no representation, inducements, promises or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in the agreement shall be valid or binding.

15.2     Any modification of this agreement will be effective only if it is in writing signed by the parties hereto.

15.3     No such modification shall be effective to permit the use of the Assets or any part thereof for any purposes not authorized by the applicable laws, investment guidelines and policy.

## 16.    SEVERABILITY.

16.1     If any provision of this agreement shall be deemed by a court of competent jurisdiction to be invalid, then such provision shall be deemed stricken from the agreement and the agreement shall be enforced according to its valid and subsisting terms and provisions.

## 17.    TERMINATION.

17.1     This Agreement shall continue in effect until terminated by either party giving to the other party seven (7) days written notice of such termination.  If any assets are invested in a mutual fund, such termination shall be effectuated solely in accordance with the Mutual Fund Documents.  The Fund understands that any withdrawal or disinvestment from the Laudus Rosenberg International Small Cap Fund (the "LR Fund") required by the Fund is subject to the terms of the Mutual Fund Documents, including but not limited to, terms relating to early termination fees.

17.2     Such termination will not affect the liabilities or the obligations of the parties under this Agreement arising from transactions initiated prior to such termination.  In the event of termination of the Agreement, the Investment Manager shall have no obligation whatsoever to recommend any action with respect to, or to liquidate, the securities, property or other assets in the Account.  Any action by the Investment Manager prior to receipt of written notice of such termination in reliance upon this Agreement

shall be binding upon the Fund and the Fund's legal representatives, heirs, assigns, and successors in interest.

17.3   Fees hereunder shall be prorated to the date of termination as specified in the notice of the termination, and any unearned portion thereof shall be refunded to the Fund.

17.4   On the effective date of termination or as close to such date as is reasonably possible, the Investment Manager shall provide the Fund with a final report containing the same information as provided in a quarterly investment report described herein.

## 18.   REPORTS; MEETINGS.

18.1   Investment Manager shall provide the Retirement Fund with shareholder reports for the Laudus Rosenberg International Small Cap Fund. The content and time frame of such reports shall be in accordance with applicable law.

18.2   The Board of Trustees and representatives of the Investment Manager shall typically meet formally at least once per annum, or at such other times as the Board may reasonably request. All costs incurred by the Investment Manager in connection with reporting to the Fund shall be at no additional cost to the Fund.

## 19.   ASSIGNMENT; CHANGES IN ORGANIZATION OF MANAGER.

19.1   No assignment, as that term is defined in the Investment Advisers Act of 1940, of this Agreement shall be made by the Investment Manager without the written consent of the Board of Trustees or their designated representative.

19.2   If the Investment Management Company hereunder is converted into, merges or consolidates with or sells or transfers substantially all of its assets or business to another corporation, the resulting corporation or the corporation to which such sale or transfer has been made shall become the Investment Manager hereunder only if the Fund specifically so consents in writing.

19.3   In performing its services under this Agreement, the Investment Manager with the written consent of the Board of Trustees or their designated representative may delegate all or any of its duties and responsibilities to other affiliates, provided however, that the Investment Manager's liabilities to the Retirement Fund for all matters so delegated shall not be affected thereby.

## 20.   CONFLICT OF INTEREST.

20.1   The Fund agrees that the Investment Manager may refrain from rendering any advice or services concerning securities of companies of which any of the Investment Manager's, or affiliates of the Investment Manager's, officers, directors, or employees are directors or officers, or companies for which the Investment Manager or any of the Investment Manager's affiliates act as financial adviser or in any capacity that the Investment Manager deems confidential, unless the Investment Manager determines in its sole discretion that it may waive this provision.

20.2   Promptly following the execution of this Agreement and the management of the Investment Account Assets by the Investment Manager, the Retirement Fund shall file with the Investment Manager a roster of the "parties-in-interest to the Fund" with respect to the plan or plans funded under the Fund as that term is defined in the ERISA, as amended from time to time. The Fund shall notify the Investment Manager promptly after any additional person, corporation, partnership, organization or entity becomes a party-in-interest to the Fund and not less frequently than annually provide the Investment Manager with a currently correct roster of all parties-in-interest to the Fund.

20.3    The Investment Manager shall review the roster of parties-in-interest provided by the Fund and identify all persons, corporations, partnerships, organizations or entities which are such parties-in-interest to the Fund that are affiliates of the Investment Manager.

**21.    GOVERNING LAW.**

The validity of this Agreement and of any of its terms or provisions, as well as the rights and duties of the parties to this Agreement, shall be governed by the laws of Guam.

**22.    EFFECTIVE DATE OF THIS AGREEMENT.**

This Agreement shall take effect upon the date it is signed by the Governor of Guam and the date of this Agreement shall be the date upon which the Governor affixes his signature.

**23.    MUTUAL FUND DOCUMENTS**

The Fund agrees that this Agreement and all terms set forth here in are without prejudice to anything in the Mutual Fund Documents. In the event of a conflict between the terms of this Agreement and the Mutual Fund Documents, the Mutual Fund Documents shall govern.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**IN WITNESS WHEREOF,** the parties have entered into this Agreement on the dates indicated by their respective names:

**INVESTMENT MANAGER:**
**AXA ROSENBERG INVESTMENT MANAGEMENT, LLC**

_/s/ William E. Ricks_
**WILLIAM E. RICKS,** Chief Executive Officer and Chief Investment Officer
Date: _____

**GOVERNMENT OF GUAM RETIREMENT FUND**

_/s/_
**PAULA M. BLAS,** Acting Director
Date: 8.30.05

### BOARD OF TRUSTEES

_/s/_
**JOE T. SAN AGUSTIN,** Chairman
Date: _____

_/s/_
**WILFRED P. LEON GUERRERO**
Vice-Chairman
Date: Aug. 24, 2005

_/s/_
**JAMES J. TAYLOR, Ph.D.,** Secretary
Date: 8/24/05

_/s/_
**KATHERINE T.E. TAITANO,** Treasurer
Date: 23 Aug 2005

**ANTHONY C. BLAZ,** Trustee
Date: _____

_/s/_
**GERARD A. CRUZ,** Trustee
Date: August 25, 2005

_/s/_
**GEORGE A. SANTOS,** Trustee
Date: _____

**CERTIFIED FUNDS AVAILABLE:**

_/s/ Rosalia Bordallo_
**ROSALIA L. BORDALLO**
Certifying Officer
Date: August 29, 2005

**APPROVED AS TO LEGALITY AND FORM:**

_/s/ Joseph A. Guthrie_
**DOUGLAS B. MOYLAN**
Attorney General
Date: 9/27/05

**CLEARED PER BBMR'S REVIEW**

_/s/ Carlos P. Bordallo_
**CARLOS E. P. BORDALLO**
Director, BBMR
Date: 9/9/05

**APPROVED:**

_/s/ Camacho_
**FELIX P. CAMACHO**
Governor of Guam
Date: 9/30/05

SEP 0 9 2005

RECEIVED

- 11 -

# Government of Guam Retirement Fund - Appendix A
Investment Guidelines and Performance Objectives

| | |
|---|---|
| *Management Style:* | **International Equity** |
| *Investment Manager:* | **AXA Rosenberg Investment Management LLC** |
| Portfolio Manager: | |
| Contact(s): | |
| *Performance Benchmark:* | 82.1% MSCI EAFE Index / 17.9% MSCI EAFE Small Capitalization Equity Index for overall portfolio. Comparison to the MSCI EAFE Index and MSCI EAFE Small Capitalization Equity Index will also be made to the subcomponents of the portfolio. |
| *Peer Group Comparison:* | International (World ex-US) Equity Universe for EAFE component<br>International (World ex-US) Small Capitalization Equity Universe for EAFE Small Cap component. |

### Investment Guidelines:

The entirety of the Investment Account Assets managed by the Investment Manager are to be invested into the Laudus Rosenberg International Small Cap Fund.

### Objective:

The objective is to manage a portion of the Fund's international equity assets consistent with the indices and universes noted above.

### Performance Objective:

The Investment Manager objective is to achieve the following performance objective:

- Total portfolio performance is to exceed a composite benchmark comprised of 82.1% MSCI EAFE Index / 17.9% MSCI EAFE Small Capitalization Equity Index.
- The performance of the subcomponents of the portfolio benchmarked against the MSCI EAFE Index are to exceed the performance of this index.
- The performance of the subcomponent of the portfolio benchmarked against the S&P/Citigroup EMI World Ex-US Index is to exceed the performance of this index.

Notwithstanding the foregoing, the Fund acknowledges that the Investment Manager makes no representation or warranty that it will be able to achieve the performance objectives set forth herein.

**Government of Guam Retirement Fund**
Fiduciary Acknowledgment of Investment Manager

*Statement of Fiduciary Acknowledgment*

The undersigned, designated as an International Equity Style Manager for the Government of Guam Retirement Fund, acknowledges and agrees to its fiduciary status and will fully comply with the Fund's Investment Policy Statement and all applicable laws, rules, and regulations as it pertains to fiduciary duties and responsibilities.

_____William E. Redn_____          _____4/27/05_____
                                            Date

_____                  _____
                                            Date