1  JONATHAN R. BASS (State Bar No. 75779)
   SUSAN K. JAMISON (State Bar No. 131867)
2  JEREMIAH J. BURKE (State Bar No. 253957)
   COBLENTZ, PATCH, DUFFY & BASS LLP
3  One Ferry Building, Suite 200
   San Francisco, California  94111-4213
4  Telephone:  415.391.4800
   Facsimile:  415.989.1663
5  Email:   ef-jrb@cpdb.com,
            ef-skj@cpdb.com,
6            ef-jjb@cpdb.com

7  Attorneys for Defendant
   Barr Rosenberg

8

9               **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                **SAN FRANCISCO DIVISION**

12  The Government of Guam Retirement Fund;      Case No. CV 11-00536 JSW
    The Sacramento County Employees'            Related Case No. CV 11-0897
13  Retirement System; The Board of Trustees of
    The National Elevator Industry Health Benefit  **NOTICE OF MOTION AND MOTION TO**
14  Fund; and The Board of Trustees of the      **DISMISS OF DEFENDANT BARR**
    Pipefitters Local 636 Defined Benefit Pension  **ROSENBERG; MEMORANDUM OF**
15  Fund, both individually and on behalf of all  **POINTS AND AUTHORITIES IN**
    others similarly situated,                  **SUPPORT THEREOF**
16
                  Plaintiffs,                   **[F.R.C.P. 12(b)(6)]**
17
           v.                                   Date:       September 9, 2011
18                                              Time:       9:00 a.m.
    AXA Rosenberg Group LLC, AXA Rosenberg      Courtroom   11
19  Investment Management LLC, Barr Rosenberg   Judge:      Hon. Jeffrey S. White
    Research Center LLC, and Barr Rosenberg,
20
                  Defendants.
21

22

23

24

25

26

27

28

11776.004.1753978v3                                        No. C 11-00536 JSW

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S
MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA  94111-4213
415.391.4800 · FAX 415.989.1663

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

1

**NOTICE OF MOTION AND MOTION**

2      TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE THAT on Friday, September 9, 2011, at 9:00 a.m., or as soon

4  thereafter as the matter may be heard in the above-entitled Court, located at 450 Golden Gate

5  Avenue, San Francisco, California, 94102, Courtroom 11, on the nineteenth floor, before the

6  Honorable Jeffrey S. White, defendant Barr Rosenberg will and hereby does move this Court to

7  dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to

8  Rule 12(b)(6) of the Federal Rules of Civil Procedure.

9      This motion seeks an order of dismissal because plaintiffs have failed to state a claim upon

10  which relief may be granted against Barr Rosenberg, both for the reasons stated in the separate

11  motion of the other defendants in this action, and those briefed in this Motion.  This Motion will

12  be based on this Notice of Motion and Motion to Dismiss of Defendant Barr Rosenberg, the

13  Memorandum of Points and Authorities in Support Thereof, all the pleadings and papers on file in

14  this action, any matters of which the Court may take judicial notice, the motion papers of the other

15  defendants to this action, any evidence or argument presented at the hearing on the motions, and

16  any other matters the Court deems proper.

17      **SUMMARY OF ARGUMENT**

18      The plaintiffs in these actions allege statutory and common law claims against their

19  investment management company (AXA Rosenberg Investment Management, LLC ("ARIM"))

20  and against two entities related to ARIM – its parent company (AXA Rosenberg Group, LLC

21  ("ARG")), and an affiliated research company, the Barr Rosenberg Research Center ("Research

22  Center").  As those defendants point out in their own briefing, those claims are legally deficient,

23  and each claim should be dismissed on the grounds raided by those defendants.

24      The Complaint also names Barr Rosenberg as a defendant.  But Dr. Rosenberg was not an

25  ERISA fiduciary (and thus faces no exposure to the ERISA-based claims in the Consolidated

26  Complaint, *see, e.g., Nieto v. Ecker*, 845 F.2d  868, 870-73 (9th Cir. 1988), *Farm King Supply,*

27  *Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 292 (7th

28  Cir. 1989), and he had no relationship to any plaintiff on which any common law-based duty could

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S
MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   be predicated, *see*, *e.g.*,  *Swinden v. Vanguard Group, Inc.*, No. 09-3816, 2009 WL 3415376 (N.D.

2   Cal. Oct. 21, 2009); *Brown v. Cal. Pension Adm'rs. & Consultants, Inc.*, 45 Cal. App. 4th 333,

3   347-48 (1996).  The Complaint alleges that Dr. Rosenberg was a "founder" and former officer and

4   director of one or another of the AXA entities, and that he exercised "control" of them, or of

5   certain "processes" at them.  What the Complaint fails to allege, however, is any relationship

6   between Dr. Rosenberg and plaintiffs that could give rise to a legal duty.

7           ERISA liability attaches only to those who are expressly designated as ERISA fiduciaries,

8   who exercise discretionary authority, control, or responsibility over ERISA plans or their assets, or

9   who regularly provide individualized investment advice pursuant to a mutual understanding.  Dr.

10  Rosenberg is not alleged to have been, or done, any of those things.  Common law fiduciary

11  liability attaches only to one who undertakes to act as a fiduciary, or who stands in a certain

12  relationship to plaintiffs.  No such undertaking, and no such relationships, are alleged here.  A

13  negligence claim similarly requires circumstances giving rise to a duty of care owed to plaintiffs.

14  No such circumstances are pleaded.  The Complaint alleges that Dr. Rosenberg "aided and

15  abetted" the commission of an intentional tort, but it fails to identify the tort that Dr. Rosenberg

16  allegedly aided and abetted, his knowledge of that tort, or any breach of a duty he independently

17  owed to plaintiffs.  Finally, the Complaint seeks an "accounting," but that relief is not available

18  from Dr. Rosenberg.

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

STATEMENT OF ISSUES TO BE DECIDED.......................................................... 1

INTRODUCTION AND BACKGROUND .............................................................. 1

FACTS ALLEGED IN CONSOLIDATED COMPLAINT.................................................. 3

      A.    Defendants.............................................................................. 3

      B.    Allegations of Concealment, Failure to Disclose, and Failure Promptly to Fix The Coding Error. ................................................ 4

ARGUMENT .......................................................................................... 4

  I.     LEGAL STANDARD .......................................................................... 4

  II.    THE ERISA COUNTS STATE NO CLAIM AGAINST DR. ROSENBERG. ................................................................................. 5

      A.    Dr. Rosenberg Is Not an ERISA Fiduciary. ................................. 5

           1.    No Allegations of Discretionary Authority, Control or Responsibility over ERISA Plans or Assets.................................... 7

           2.    No Allegations of Individualized Investment Advice...................... 8

      B.    Plaintiffs' ERISA Claims Fail Because Each Requires That Dr. Rosenberg Be An ERISA "Fiduciary." ....................................... 10

  III.   PLAINTIFFS' COMMON LAW CLAIMS FAIL BECAUSE DR. ROSENBERG OWED NO DUTY TO PLAINTIFFS........................................ 11

      A.    Plaintiffs State No Claim for Breach of Fiduciary Duty. ........................... 12

      B.    Plaintiffs State No Claim for Aiding and Abetting Breach of Fiduciary Duty....................................................................... 13

           1.    No Allegations of Either a Specific Primary Wrong or Dr. Rosenberg's Actual Knowledge of It............................................ 14

           2.    The Alternative Test of Aiding and Abetting Liability Is Not Satisfied Because Plaintiffs Fail to Allege Duty............................. 15

      C.    Plaintiffs State No Claim for Negligence/Gross Negligence. ..................... 15

      D.    Plaintiffs State No Claim for an Accounting. ................................... 16

CONCLUSION ...................................................................................... 16

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ...................................................................................... 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................... 5

*Bily v. Arthur Young & Co.,*
3 Cal. 4th 370 (1992) ...................................................................................... 16

*Blevins Screw Products, Inc. v. Prudential Bache Securities, Inc.,*
835 F. Supp. 984 (E.D. Mich. 1993) ............................................................... 10

*Brennan v. Concord EFS, Inc.,*
369 F.Supp.2d 1127 (N.D. Cal. 2005) ............................................................ 13

*Brown v. Cal. Pension Adm'rs. & Consultants, Inc.,*
45 Cal. App. 4th 333 (1996) ........................................................................... 12

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,*
43 Cal. 4th 375 (2008) .................................................................................... 12

*Coleman v. Nationwide Life Ins. Co.,*
969 F.2d 54 (4th Cir. 1992) .............................................................................. 8

*Consolidated Beef Industries, Inc. v. New York Life Ins. Co.,*
949 F.2d 960 (8th Cir. 1991) ............................................................................ 9

*Coyne & Delany Co. v. Selman,*
98 F.3d 1457 (4th Cir. 1996) ............................................................................ 6

*Crowley v. Corning, Inc.,*
234 F. Supp. 2d 222 (W.D.N.Y. 2002) ............................................................. 8

*Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.,*
884 F.2d 288 (7th Cir. 1989) ..................................................................... 7, 10

*Gauvin v. Trombatore,*
682 F. Supp. 1067 (N.D. Cal. 1988) ............................................................... 13

*Gelardi v. Pertec Computer Corp.,*
761 F.2d 1323 (9th Cir. 1985) .......................................................................... 8

*Hecker v. Deere & Co.,*
556 F.3d 575 (7th Cir. 2009) ............................................................................ 8

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

*Henry v. Lehman Commercial Paper, Inc.,*
    471 F.3d 977 (9th Cir. 2006) ........................................................................................ 14

*In re Calpine Corp. ERISA Litig.,*
    No. 03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ................................... 6, 8

*In re McKesson HBOC, Inc. ERISA Litig.,*
    No. 00-20030, 2002 WL 31431588 ........................................................................ 11

*In re WorldCom, Inc. ERISA Litig.,*
    263 F.Supp.2d 745 (S.D.N.Y. 2003) ...................................................................... 7, 10

*Kirschbaum v. Reliant Energy, Inc.,*
    526 F.3d 243 (5th Cir. 2008) .................................................................................. 6, 7

*Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    709 F.2d 605 (9th Cir. 1983) ..................................................................................... 12

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ....................................................................................... 5

*Neilson v. Union Bank of Cal., N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..................................................................... 15

*Nieto v. Ecker,*
    845 F.2d 868 (9th Cir. 1988) ....................................................................................... 5

*Pegram v. Herdrich,*
    530 U.S. 211 (2000) ................................................................................................ 5, 8

*Saunders v. Superior Court,*
    27 Cal. App. 4th 832 (1994) ................................................................................ 13, 15

*Sollberger v. Wachovia Securities, LLC,*
    No. 09-0766, 2010 WL 2674456 (C.D. Cal. June 30, 2010) ..................................... 14

*Swinden v. Vanguard Group, Inc.,*
    No. 09-3816, 2009 WL 3415376 (N.D. Cal. Oct. 21, 2009) ...................................... 12

*Teselle v. McLoughlin,*
    173 Cal. App. 4th 156 (2009) ..................................................................................... 16

*Thomas, Head & Greisen Employees Trust v. Buster,*
    24 F.3d 1114 (9th Cir. 1994) ........................................................................................ 9

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,*
    1 Cal.3d 586 (1970) .................................................................................................... 16

*Wright v. Or. Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004) ...................................................................................... 5

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S
MOTION TO DISMISS**

**STATUTES & RULES**

29 U.S.C. section 102(a)(2) ................................................................................. 6

29 U.S.C. section 1002(21)(A) .......................................................................... 6

29 U.S.C. section 1002(21)(A)(ii) ..................................................................... 8

29 U.S.C. section 1102(a)(l) .............................................................................. 6

29 U.S.C. section 1105(a) ................................................................................ 11

29 U.S.C. section 1106(b)(1) .......................................................................... 11

Employee Retirement Income Security Act of 1974, 29 U.S.C. section 1001, *et seq.*
   ("ERISA") ................................................................................................... passim

Federal Rule of Civil Procedure 8 ............................................................... 4, 13

Federal Rule of Civil Procedure 8(a)(2) ........................................................... 4

**OTHER AUTHORITIES**

29 C.F.R. section 2510.3-21(c)(1) ..................................................................... 9

5 Witkin, *Cal. Procedure* (5th ed. 2008) Pleading, § 819, p. 236 ................................ 16

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S
MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA  94111-4213
415.391.4800 · FAX 415.989.1663

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF ISSUES TO BE DECIDED

In addition to the distinct issues presented by the AXA Entity Defendants' motion, in which Dr. Rosenberg joins, this motion presents the following issues:  (1) Have Plaintiffs NEI and Pipefitters failed to state ERISA-based claims against Dr. Rosenberg?  (2) Can Plaintiffs Guam and Sacramento state a common law claim for breach of fiduciary duty or negligence against Dr. Rosenberg where they allege no relationship giving rise to a duty owed to them by Dr. Rosenberg? (3) Are the facts alleged sufficient to establish that Dr. Rosenberg had actual knowledge of a specific primary wrong or violated an independent duty, so as to support a claim for aiding and abetting a breach of fiduciary duty?  (4) Can an accounting claim lie against Dr. Rosenberg?

## INTRODUCTION AND BACKGROUND

These actions commenced with the filing by the Government of Guam Retirement Fund ("Guam") of a putative class action complaint against three "AXA" entities – ARG, ARIM and BRRC (collectively, the "AXA Entities") – for breach of fiduciary duty, negligence/gross negligence and an accounting.  Docket No. 1.  Guam complained that those entities allowed a "coding error" to be introduced into a quantitative investment model and did not discover it promptly enough; that they did not fix the error immediately upon discovering it two and a half years later; and that they did not tell clients (such as Guam) about it until after it was fixed.  Guam alleged that the AXA Entities retained an expert consultant to study the possible impact of the coding error on client portfolios, and agreed to compensate clients affected by the error for their losses attributed to it – in the amount of $217 million.  It complained that the amount was insufficient (for unexplained reasons) to compensate AXA clients such as Guam.

Guam's original complaint named only the AXA Entities, not Dr. Rosenberg.  About three weeks after Guam filed its "state law" action, another plaintiff, the Board of Trustees of the National Elevator Industry Health Benefit Fund ("NEI"), filed a new action against ARG, ARIM, BRRC, and Dr. Rosenberg, who, they alleged, was the "founder and a former director and officer" of the AXA Entities.  That action ("the ERISA action") alleged the same facts as the Guam action had, but presented different legal theories.  NEI claimed that the defendants' conduct violated

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP

ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213

415.391.4800 · FAX 415.989.1663

1  obligations imposed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001,

2  *et seq.* ("ERISA") (Case No. 11-0897, Docket No. 1 ("NEI Compl."), and asserted four claims for

3  relief under that statute.

4  On March 18, 2011, the Court related the ERISA action to this case, *see* Docket No. 19.

5  On April 15, 2011, Plaintiffs Guam (and an additional plaintiff asserting only common law claims,

6  the Sacramento County Employees' Retirement System ("Sacramento")), and NEI (and an

7  additional plaintiff asserting only ERISA claims, the Pipefitters Local 636 Defined Benefit

8  Pension Fund ("Pipefitters")), filed a Consolidated Complaint. *See* Docket No. 20 ("CC").

9  In the Consolidated Complaint, Plaintiffs NEI and Pipefitters purport to represent an

10  "ERISA class" seeking relief from the AXA Entities and Dr. Rosenberg for the four claimed

11  violations of ERISA, on behalf of a putative class of "all fiduciaries of ERISA-covered plans" that

12  invested in "financial investment vehicles" offered by the AXA Entities and for which they

13  "served as an investment manager." CC ¶ 44.  Plaintiffs Guam and Sacramento seek to represent

14  all *other* AXA Entity clients that entrusted assets to the AXA Entities "or Affiliated Advisers" for

15  investment advice and management – they expressly exclude "ERISA Plans" from the scope of

16  their putative class (*see id.* ¶ 43) – and assert only *common law* claims on behalf of that "Investor

17  Class":  Count I (breach of fiduciary duty); Count II (aiding and abetting breach of fiduciary duty);

18  Count III (negligence/gross negligence); and Count IV (accounting).  *Id.* ¶¶ 50-76.

19  Dr. Rosenberg is now apparently being sued by all plaintiffs on all claims, not just in the

20  ERISA action for ERISA violations.  We draw that inference because he is included in the

21  definition of "defendants" wherever that term is used in the Consolidated Complaint.

22  Dr. Rosenberg should not have been named as a defendant with respect to any set of

23  claims, as he was not a fiduciary to the plaintiffs and had no relationship with them giving rise to a

24  duty of care.  Nothing in the Consolidated Complaint suggests that he played the kind of role in

25  the AXA Entities with respect to the management of plan assets, or the provision of investment

26  advice to those entities' clients, or with respect to any communications with AXA clients, that

27  could create a basis for any claim by them against him, whether under ERISA, or otherwise.  The

28  Consolidated Complaint makes generalized claims about his authority to "control" processes at

1   one or more of the AXA Entities, and his alleged role in supposedly preventing "escalation" of the

2   coding error to other officials of those entities.  But it does not allege that he violated duties owed

3   to AXA Entity clients or knew that another fiduciary was committing a primary tort against any

4   AXA client, and substantially assisted that tortfeasor.  For these reasons, *every* claim against him

5   is defective.

6          The ERISA and common law claims suffer from a host of other defects, which are fully

7   briefed by the AXA Entities.  Dr. Rosenberg joins in the motion to dismiss of the AXA Entities,

8   and moves for dismissal on each of the grounds asserted in their motion, including the grounds

9   that the common law claims are disguised securities law claims that cannot be asserted as "state

10  law" claims, and that plaintiffs' allegations of uncompensated damage are wholly insufficient.

11              **FACTS ALLEGED IN CONSOLIDATED COMPLAINT**

12  **A.      Defendants.**

13         Defendant ARIM is an investment management company serving institutional investors

14  such as plaintiffs.  CC ¶ 14.  It is a wholly-owned subsidiary of defendant ARG.  Defendant

15  Research Center develops and maintains the quantitative model (including the computer code)

16  used by ARIM.  *Id.* ¶ 15.  It is also a subsidiary of ARG.  ARG is a holding company that owns

17  ARIM and the Research Center.  *Id.* ¶ 16.  Plaintiffs use the term "AXA Rosenberg" to refer

18  indistinguishably to all three entities, despite their different roles, and despite the fact that only

19  ARIM had any alleged relationship with them.

20         Dr. Rosenberg is described as "an AXA Rosenberg founder and former principal officer

21  and Board member."  *Id.* ¶ 18.  The use of the collective term "AXA Rosenberg" and the reference

22  to Dr. Rosenberg as a "former" officer and director (of an unspecified AXA Entity) obscures any

23  role he might have played in plaintiffs' investments.  Plaintiffs claim that Dr. Rosenberg had

24  "control" or "full control" of the quantitative *model* and operated AXA Rosenberg's investment

25  *process* and the Research Center with few organizational checks and balances.  *Id.* ¶¶ 6, 18.[1]

26  _____

27  [1] These allegations are on "information and belief," and many of the more colorful ones about Dr.

28  (footnote continued)

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1  Plaintiffs never describe how, exactly, Dr. Rosenberg exercised his alleged "control" over the

2  investment processes or other affairs of the AXA Entities, or what he actually "did" for those

3  entities during the relevant time period.

4  **B.    Allegations of Concealment, Failure to Disclose, and Failure Promptly to Fix The Coding Error.**

5      Plaintiffs allege that a coding error was introduced into the quantitative model used by the

6  AXA Entities in or about January 2007.  CC ¶ 28.  The error was discovered in June 2009.

7  Plaintiffs allege that "a senior AXA Rosenberg official . . . directed that the error not be fixed at

8  that time," but that it be addressed as part of the next upgrade of the quantitative model.  *Id.* ¶ 30.

9  They admit that it was fixed when the new model was implemented.  The "heads of the Research

10 Center" did not promptly bring the error to the attention of upper management, or the Investment

11 Group, the team responsible for doing the actual investing.  The Global CEO was not informed of

12 it until November 2009, after it had been fixed.  *Id.*

13     ARG did not inform clients about the error until April 2010.  *Id.* ¶ 32.  Subsequently, a

14 consultant retained by ARG to ascertain the impact of the error concluded that it had caused

15 approximately $217 million in losses to clients, and the Company agreed to compensate the

16 affected clients in that amount.  *Id.* ¶ 42.  ARG also retained counsel to investigated the delay in

17 fixing and escalating the error, and concluded that Dr. Rosenberg and the Research Center director

18 had violated its internal policies.  *Id.* ¶ 33.

19                          **ARGUMENT**

20 **I.    LEGAL STANDARD**

21     A pleading must contain a statement of the claim "showing that the pleader is entitled to

22 relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "demands more than an unadorned, the-defendant-

23 _____

24 Rosenberg's alleged "control" cite to an industry newsletter as the source of such information and
25 belief.  For example, the Consolidated Complaint recites that, according to that newsletter, when
   AXA Group purchased 60% of Mr. Rosenberg's firm in 1999, the Paris-based insurer promised
26 Dr. Rosenberg that his investment models 'could not be tinkered with' and that he would 'retain
   full control of the firm's 40-person research center.'"  CC ¶ 39.  Dr. Rosenberg thus reportedly
27 operated the "investment process" with little oversight, and had "untouchable status."  *Id.*

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949  (2009).  Dismissal is

2   appropriate where a complaint fails to allege "enough facts to state a claim to relief that is

3   plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Plausibility lies

4   somewhere between allegations that are "merely consistent" with liability and a "probability

5   requirement." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556-57).   "[F]or a complaint

6   to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences

7   from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.*

8   *U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  Moreover, "the tenet that a court must accept

9   as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*,

10  129 S. Ct. at 1949.

11  ## II.   THE ERISA COUNTS STATE NO CLAIM AGAINST DR. ROSENBERG.

12         Count V alleges breach of the duty of prudence on behalf of the ERISA class against all

13  defendants.  CC ¶¶ 77-85.  Count VI alleges breach of the duty of loyalty on behalf of the ERISA

14  class against all defendants.  *Id.*  ¶¶ 86-94.  Count VII asserts a claim for co-fiduciary liability on

15  behalf of the ERISA class, *id.* ¶¶ 95-101, and Count VIII asserts a claim for prohibited

16  transactions.  *Id. ¶¶* 102-108.  Insofar as these ERISA claims are being asserted against Dr.

17  Rosenberg, plaintiffs must allege facts demonstrating that Dr. Rosenberg is or was an ERISA

18  fiduciary.  No such facts are alleged.  The claims against Dr. Rosenberg rest on the "group"

19  allegation – one entirely devoid of supporting facts – that "Defendants are fiduciaries within the

20  meaning of ERISA." *Id.* ¶¶ 79, 88.  This conclusory assertion cannot support the ERISA claims.

21         ### A.   Dr. Rosenberg Is Not an ERISA Fiduciary.

22         In order for personal liability under ERISA § 409, 29 U.S.C. § 1109(a) to attach, "an

23  individual or entity must be a 'fiduciary.'"  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101

24  (9th Cir. 2004); *Nieto v. Ecker*, 845 F.2d 868, 873 (9th Cir. 1988).  "In every case charging breach

25  of ERISA fiduciary duty, then, the threshold question is . . . whether that person was acting as a

26  fiduciary (that is, was performing a fiduciary function) when taking the action subject to

27  complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)  An individual is an ERISA fiduciary

28  in one of three circumstances: (a) he or she is named as a fiduciary in the written plan document,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   29 U.S.C. § 1102(a)(l); (b) he or she is identified as a fiduciary pursuant to a procedure specified

2   in the written plan document, 29 U.S.C. § 102(a)(2); or (c) he or she meets the definition of a

3   functional or *de facto* fiduciary as set forth in 29 U.S.C. § 1002(21)(A).

4       The first two circumstances require that the individual be expressly designated as a

5   fiduciary in the ERISA plan documents.  The Consolidated Complaint does not allege that Dr.

6   Rosenberg was a fiduciary under an express designation.[2]  Nor are any facts alleged that would

7   cast Barr Rosenberg as a functional or *de facto* fiduciary.

8       A person is a functional or *de facto* fiduciary:

9       ***to the extent*** (i) he exercises any discretionary authority or discretionary control
10      respecting management of such plan or exercises any authority or control
        respecting management or disposition of its assets, (ii) he renders investment
11      advice for a fee or other compensation, direct or indirect, with respect to any
        moneys or other property of such plan, or has any authority or responsibility to do
12      so, or (iii) he has any discretionary authority or discretionary responsibility in the
        administration of such plan.

13  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added).

14      Determining whether a person is a fiduciary therefore requires an examination of his actual

15  functions and responsibilities.  A person is a fiduciary under ERISA "only 'to the extent' that he

16  has or exercises specified authority, discretion or control over a plan or its assets."  *Kirschbaum v.*

17  *Reliant Energy, Inc.*, 526 F.3d 243, 251 (5th Cir. 2008); *Coyne & Delany Co. v. Selman*, 98 F.3d

18  1457, 1465 (4th Cir. 1996) (inclusion of phrase "to the extent" in ERISA's definition of fiduciary

19  means that party is fiduciary only as to activities which bring the person within the definition); *In*

20  *re Calpine Corp. ERISA Litig.*, 2005 WL 1431506, at *2 (N.D. Cal. Mar. 31, 2005) (same).

21      Where, as here, there are no allegations of discretionary authority, control or responsibility

22  over the assets of an ERISA plan, and no allegations that a particular defendant rendered

23  

24  ───────────────────

25  [2] In footnote 1 on page 4 of the Consolidated Complaint, it is alleged that the Investment
    Management Agreement between Plaintiff Sacramento and ARIM states that ARIM "shall cause
26  any and all of its employees, agents and representatives providing services in connection with this
    Agreement" to exercise the same standard of care as ARIM.  This language does not designate
27  Barr Rosenberg as an ERISA fiduciary.  Nor is there anything in the Consolidated Complaint that
    indicates that Dr. Rosenberg was ever an agent of or representative of ARIM.

28  

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S
MOTION TO DISMISS**

investment advice to the ERISA plan for a fee, plaintiffs cannot establish a breach of ERISA duty against that defendant.

### 1. No Allegations of Discretionary Authority, Control or Responsibility over ERISA Plans or Assets.

Plaintiffs allege that "[e]ach of the Defendants is a fiduciary under applicable law by virtue of having or exercising discretionary authority over Plaintiffs and the Class' entrusted assets, and/or assuming fiduciary responsibility for them in writing." CC ¶ 13. However, plaintiffs point to no writing showing that Dr. Rosenberg assumed fiduciary responsibility to plaintiffs (or any AXA client). They vaguely allege that "Dr. Rosenberg exercised full control over AXA Rosenberg's quantitative investment process and Defendant BRRC." *Id.* ¶ 18. But they say nothing indicating that Dr. Rosenberg ever had, or ever exercised, power over any plan assets. *See, e.g.*, *Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 292 (7th Cir. 1989) ("Those cases which hold that the person or firm was a fiduciary have a common theme conspicuously absent here, *viz.*, the authority to exercise control unilaterally over a portion of a plan's assets, not merely to propose investments.").

Plaintiffs allege that Dr. Rosenberg directed Research Center employees to keep quiet about the computer error, and not to fix it until the next upgrade of the quantitative model. CC ¶ 30. But their factual allegations in this regard undermine, rather than support, a claim that he had control over plan assets. According to plaintiffs, "[d]espite their knowledge of the error, the heads of the Research Center did not bring the error to the attention of the Investment Group, *the team responsible for doing the actual investing*, or to upper management." *Id.* (emphasis added). Plaintiffs admit, in other words, that Dr. Rosenberg did *not* have responsibility for actual investing. The facts do not suggest that he was acting in a fiduciary capacity when he performed any of the acts alleged in the Consolidated Complaint. *See Kirschbaum*, 526 F.3d at 251 (employer's alleged misrepresentations of its financial condition in Form 10-Q and 10-K filings with SEC were not made in its capacity as ERISA fiduciary); *see also In re WorldCom, Inc. ERISA Litig.*, 263 F.Supp.2d 745, 760 (S.D.N.Y. 2003) ("ERISA liability arises only from actions taken or duties breached in the performance of ERISA obligations.").

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   Plaintiffs also allege that Dr. Rosenberg was a founder or former principal officer and

2   Board member of one or more of the AXA Entities.  CC ¶ 18.  But none of those roles suggests

3   that Dr. Rosenberg had discretionary authority or control over any portion of the ERISA plans

4   and/or their assets.  *See*, *e.g.*, *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.

5   1985) (improper to bring breach of fiduciary duty claim against defendants who did not have

6   discretionary control over the action at issue); *Calpine Corp.*, 2005 WL 1431506, at *3 (noting

7   that Director Defendants can only be ERISA fiduciaries to the extent they perform functions

8   described in section 3(21)(A) of the Act); *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 229

9   (W.D.N.Y. 2002) ("Plaintiff's first claim . . . fails as to the Board, as is apparent from plaintiff's

10   amended complaint, the Board did not control investment options.").

11   Courts routinely reject attempts to extend ERISA liability to persons who are not ERISA

12   "fiduciaries."  *Pegram*, 530 U.S. at 234-36 (rejecting attempt to extend ERISA liability to

13   physicians in HMO, and cautioning about ramifications of extending ERISA liability); *Hecker v.*

14   *Deere & Co.*, 556 F.3d 575, 583-84 (7th Cir. 2009) (affirming dismissal of manager and

15   investment advisor to plan because they did not have ultimate discretion and authority over

16   investment of plan assets; merely "playing a role" in selection of investment options or furnishing

17   professional advice is not enough to transform company into fiduciary.); *Coleman v. Nationwide*

18   *Life Ins. Co.*, 969 F.2d 54, 61-62 (4th Cir. 1992) (affirming dismissal of insurer with

19   administrative duties relating to plan but no authority or discretion over plan functions).  Absent

20   facts indicating that Dr. Rosenberg had the ultimate discretion and authority over the investment

21   of plan assets, no ERISA claim for breach of fiduciary duty may lie.

22   **2.    No Allegations of Individualized Investment Advice.**

23   A person can also be an ERISA fiduciary if "he renders investment advice for a fee or

24   other compensation, direct or indirect, with respect to any moneys or other property of such plan,

25   or has any authority or responsibility to do so."  29 U.S.C. § 1002(21)(A)(ii).  The Department of

26   Labor has issued regulations that further define "rendering investment advice" within the meaning

27   of ERISA.  A person shall be deemed to be rendering investment advice only if:

28   (i) Such person renders advice to the plan as to the value of securities or other

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and

(ii) Such person either directly or indirectly. . . .

(B) Renders any advice . . . on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan . . . that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3-21(c)(1). Put another way, a person is an ERISA fiduciary if he or she provides: (1) individualized investment advice; (2) pursuant to a mutual understanding; (3) on a regular basis; (4) pertaining to the value of the property or consisting of recommendations as to the advisability of investing in certain property; and (5) the advice was rendered for a fee. "All five factors are necessary to support a finding of fiduciary status." *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir. 1994) (hereinafter *Buster*).

Plaintiffs do not allege facts establishing any of these five elements, much less all of them. They do not allege that Dr. Rosenberg provided "individualized investment advice" to any of them (or, indeed, that he ever had any contact with any of them); they do not allege that he did so "pursuant to a mutual understanding"; they do not allege that he did so "regularly" (or at all); they fail to allege that any advice he gave to anyone pertained to the value of any property or the advisability of investing in any property, and they do not allege that any advice he might have given to anyone was rendered "for a fee."

Actually, plaintiffs fail to allege that Dr. Rosenberg had *any relationship at all* with them, or with the trustees of any other ERISA plan. *Consolidated Beef Industries, Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir. 1991) (salesman of life insurance company which sold section 401(k) turnkey plan to employer was not ERISA fiduciary where salesman did not provide investment advice and was merely selling his company's financial products); *cf. Buster*, 24 F.3d at 1118 (defendant rendered individualized advice based on relationship between the parties, "which developed over the course of nine years, coupled with the evidence of regular meetings between Buster and the Trustees to discuss investment strategy.")

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS

*Blevins Screw Products, Inc. v. Prudential Bache Securities, Inc.*, 835 F. Supp. 984 (E.D. Mich. 1993) was an ERISA action against a number of defendants, including Mr. Stout, a stockbroker, and Mr. Darr, the president of the brokerage firm's investment group. *Id.* at 985. Defendant Darr allegedly "actively encouraged" Mr. Stout to invest in worthless investments, and Stout then invested plaintiffs' monies in these investments. *Id.* at 986. The Court found that Darr was not an ERISA fiduciary:

> Nowhere do plaintiffs allege that defendant Darr had any discretionary authority to purchase or sell securities, only that he actively encouraged that they be purchased. Moreover, the allegation is that Mr. Stout provided services to determine the primary basis for the investment decisions with respect to plan assets; nowhere do plaintiffs allege that defendant Darr rendered individualized investment advice based upon the particular needs of the Plans.

*Id.* at 987. Similarly, here, there is no allegation that Dr. Rosenberg rendered individualized investment advice to plaintiffs based on the particular needs of their plans. Plaintiffs' failure to allege individualized investment advice by Dr. Rosenberg is fatal to their claim that he is an ERISA fiduciary. *See also In re WorldCom, Inc.*, 263 F.Supp.2d at 763 (granting motion to dismiss where allegations insufficient to show Merrill Lynch provided investment advice on a regular basis pursuant to an agreement that such advice would serve as a primary basis for investment decisions with respect to plan assets and that the advice would be individualized.)

There is likewise no allegation of any "mutual understanding" between Dr. Rosenberg and any of the ERISA plans. Plaintiffs allege that "all clients give AXA Rosenberg discretionary authority to trade on their behalf." CC ¶ 26. But AXA Rosenberg - by definition - does not include Dr. Rosenberg; it is shorthand for ARG, ARIM and the BRRC. No allegations suggest that there was any agreement at all between plaintiffs and Dr. Rosenberg. *See, e.g.*, *Farm King Supply*, 884 F.2d at 294 (sales pitches by underwriter of securities did not amount to agreement to provide individualized investment advice).

**B.   Plaintiffs' ERISA Claims Fail Because Each Requires That Dr. Rosenberg Be An ERISA "Fiduciary."**

Because Dr. Rosenberg is not an ERISA fiduciary, Plaintiffs cannot state a claim for breach of the duty of prudence or breach of the duty of loyalty (Counts V and VI) against him. This is not a subject of debate; plaintiffs acknowledge that they are premising these claims on the

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

1   supposed fiduciary status of the "defendants."  CC ¶¶ 79, 88 ("Defendants are fiduciaries within

2   the meaning of ERISA.").

3          Count VII, which purports to plead a "co-fiduciary" liability claim, also fails.  Such a claim

4   requires that plaintiff allege that the fiduciary had knowledge of a breach of duty by another

5   fiduciary, knowingly participated in the breach of another, or enabled a breach by actively failing

6   to comply with his own fiduciary obligations.  *In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-

7   20030, 2002 WL 31431588, at *17 (dismissing co-fiduciary claims).  Such claims, however, lie

8   only against one who is himself an ERISA fiduciary.  *Id.* (dismissing co-fiduciary claim against

9   HBOC because it was not itself an ERISA fiduciary at the time of the wrongdoing); *see also* 29

10  U.S.C. § 1105(a)("a *fiduciary* with respect to a plan shall be liable . . . . ")(emphasis added).

11  Count VII against Dr. Rosenberg should be dismissed.

12         Finally, Count VIII, which asserts a claim for prohibited transactions under ERISA Section

13  406(b)(1), is also applicable only to ERISA fiduciaries.  ERISA Section 406(b)(1) provides that

14  "[a] fiduciary" with respect to a plan shall not deal with the assets of the plan in his own interest or

15  for his own account.  29 U.S.C. § 1106(b)(1).  Because Dr. Rosenberg is not an ERISA fiduciary,

16  he cannot be liable for prohibited transactions under Section 406(b)(1).[3]

17         There are no facts in the Consolidated Complaint to suggest that Dr. Rosenberg was an

18  ERISA fiduciary.  He is not a proper defendant in any of Plaintiffs' ERISA-based claims.

19  **III.    PLAINTIFFS' COMMON LAW CLAIMS FAIL BECAUSE DR. ROSENBERG
         OWED NO DUTY TO PLAINTIFFS.**

20

21         The Consolidated Complaint also purports to allege common law claims (by Guam,

22  Sacramento, and the putative "Investor class") against Dr. Rosenberg.  All of these claims require

23  that Dr. Rosenberg owed, and breached, duties *to plaintiffs*.[4]  There are no such allegations.

24  _____

25  [3]  The Consolidated Complaint is also devoid of any facts suggesting that Dr. Rosenberg *engaged*

26  in prohibited transactions.  His "wrongdoing" is alleged to consist of encouraging others not to
    immediately "fix" the error in the code, and of not escalating it to other senior officials.  *Nothing*
    suggests he was dealing in plan assets in his own interest or for his own account.

27  [4]  These claims are also subject to dismissal on the grounds set forth in the AXA Entities' motion.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S
MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

A.      **Plaintiffs State No Claim for Breach of Fiduciary Duty.**

"In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Brown v. Cal. Pension Adm'rs. & Consultants, Inc.*, 45 Cal. App. 4th 333, 347-48 (1996) (quoting *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991)).   Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,* 43 Cal. 4th 375, 386 (2008).  Plaintiffs, however, allege no such undertaking by, or relationship with, Dr. Rosenberg.  Plaintiffs do not allege that Dr. Rosenberg undertook to do anything for them, nor do they allege that he had any relationship with them.

Stockbrokers and investment managers may owe fiduciary duties to their clients, but such a fiduciary relationship arises "only when [the broker or investment manager] actually provides investment advice and has the authority to make trades on the client's behalf." *Swinden v. Vanguard Group, Inc.*, 2009 WL 3415376, at *6 (N.D. Cal. Oct. 21, 2009) (citing *Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.2d 605, 607 (9th Cir. 1983)); *see Brown* v. *Cal. Pension Adm'rs. & Consultants, Inc.*, 45 Cal. App. 4th at 348 (noting that stockbrokers owe a fiduciary duty where they are advisers to the customer about investment decisions).

In *Swinden*, this Court granted the defendant's motion to dismiss a claim for breach of fiduciary duty because "plaintiff's allegations that defendant is an investment company and that [plaintiff's trust] placed its funds with defendant are insufficient to plead the existence of a fiduciary relationship."  2009 WL 3415376, at *6.  The plaintiff's conclusory assertions of breach of fiduciary duty were insufficient because plaintiff had no factual allegations to show that "defendant provided her with investment advice, made any transactions on her behalf, or otherwise acted in the capacity of a fiduciary." *Id.*  Here, as in *Swinden*, Plaintiffs fail to allege that Dr. Rosenberg advised them about their investments, made any transactions on their behalf, or otherwise acted as their fiduciary.  Indeed, Plaintiffs allege *no relationship at all* between themselves and Dr. Rosenberg.  They allege "***Defendants*** assumed and owed fiduciary duties to

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1  Guam, Sacramento, and the Investor Class both pursuant to the terms of their contracts" and

2  "because of the discretionary authority given and exercised by them to trade on Guam,

3  Sacramento, and the Investor Class members' behalf." CC ¶ 52 (emphasis added).  But Guam and

4  Sacramento do not allege they entered into contracts with *Dr. Rosenberg*; their alleged contracts

5  were with ARIM.[5] *Id.* ¶¶ 9-10.  Nor is there any allegation that Dr. Rosenberg was given, or that

6  he exercised, any authority *to trade* on behalf of pension plans or retirement systems.  Plaintiffs

7  also do not allege that Dr. Rosenberg personally advised them about investment decisions.

8       As Guam evidently realized when it filed this action without naming Dr. Rosenberg, there

9  is simply no basis for a breach of fiduciary duty claim against Dr. Rosenberg.  The conclusory

10  allegation that "*Defendants*" owed fiduciary duties does not state a claim for relief against Dr.

11  Rosenberg.  *See Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (to satisfy Rule

12  8, plaintiff must state the basis of claim against each defendant, dismissing cause of action where

13  "all defendants are lumped together in a single, broad allegation"); *Brennan v. Concord EFS, Inc.*,

14  369 F.Supp.2d 1127, 1136 (N.D. Cal. 2005) (Rule 8 "sets a minimum threshold of defendant-by-

15  defendant specificity that a plaintiff must meet.")

16       **B.**     **Plaintiffs State No Claim for Aiding and Abetting Breach of Fiduciary Duty.**

17       Liability may be imposed on one "who aids and abets the commission of an intentional tort

18  if the person [] knows the other's conduct constitutes a breach of duty and gives substantial

19  assistance or encouragement to the other" to so act or provides substantial assistance and his

20  conduct constitutes a breach of duty to that person.  *Saunders v. Superior Court*, 27 Cal. App. 4th

21  832, 846 (1994).  "California courts have long held that liability for aiding and abetting depends

22  on proof the defendant had actual knowledge of the specific primary wrong the defendant

23

24  _____

25  [5] In a footnote, Sacramento alleges that its contract with ARIM provides that ARIM will cause its employees, agents and representatives providing services in connection with the agreement to exercise the same standard of care as ARIM.  CC at 4 n.1.  Assuming that Dr. Rosenberg was an

26  employee, agent or representative of ARIM, and assuming that ARIM failed to cause Dr. Rosenberg to exercise "the same standard of care as ARIM," then ARIM may have breached a

27  promise to Sacramento.  It is not alleged that Dr. Rosenberg made any promises to Plaintiffs.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

1   substantially assisted."  *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005); *see*

2   *also Henry v. Lehman Commercial Paper, Inc.*, 471 F.3d 977, 993 (9th Cir. 2006).

3        **1.    No Allegations of Either a Specific Primary Wrong or Dr. Rosenberg's**
         **Actual Knowledge of It.**

4        The Consolidated Complaint does not allege that Dr. Rosenberg had actual knowledge of a

5   specific primary wrong by one or more of the other defendants.  Instead, it alleges that

6   "Defendants BRRC and Barr Rosenberg, as the entity and principal individual responsible for

7   developing, maintaining, overseeing, and controlling the operation of AXA Rosenberg's

8   quantitative investment model, and Defendant ARG, as ARIM and BRRC's parent company, had

9   actual knowledge of ARIM's investment management business, including its use of the model in

10  managing the entrusted assets of Guam, Sacramento, and the Investor Class."  CC ¶ 60.  Alleging

11  that Dr. Rosenberg had "actual knowledge of ARIM's investment management business" is not the

12  equivalent of, or a substitute for, an allegation of *actual knowledge* of a specific primary wrong.

13       In *Casey,* defendant banks allegedly aided and abetted certain fiduciaries in a scheme to

14  unlawfully divert investor funds from a corporation.  *Casey*, 127 Cal. App. 4th at 1142.

15  Defendants allegedly "knew the [fiduciaries] were involved in 'wrongful or illegal conduct'."  *Id.*

16  at 1152.  This allegation was insufficient, and the aiding and abetting claim was dismissed,

17  because plaintiffs failed to allege that the defendant banks had actual knowledge of the specific

18  primary wrong; namely that the fiduciaries were diverting funds from the corporation.  *Id.* at 1153.

19  That knowledge requirement is met only where actual knowledge of the specific primary wrong is

20  sufficiently pleaded.  *Sollberger v. Wachovia Securities, LLC*, No. 09-0766, 2010 WL 2674456

21  (C.D. Cal. June 30, 2010) (dismissing aiding and abetting claim against securities broker-dealers

22  where defendants' actual knowledge of Ponzi scheme was insufficiently alleged).

23       It is not even clear from the Consolidated Complaint what specific primary wrong Dr.

24  Rosenberg allegedly aided and abetted.  Plaintiffs do allege that allowing only a small "micro

25  group" of employees to have full access to the model and all of its underlying code was "a

26  dangerous situation that management, the AXA Rosenberg Board, and Barr Rosenberg *knew, or*

27  *should have known*, was likely to result in harm to the firm's clients."  CC ¶ 39 (emphasis added).

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S**
**MOTION TO DISMISS**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

But there is no allegation that this "situation" was the actual cause of plaintiffs' alleged harm. Even if there were such an allegation, an allegation of constructive knowledge is not sufficient. "California law requires that a defendant have actual knowledge of tortious activity before it can be held liable as an aider and abettor, and federal courts have found that the phrase 'knew or should have known' does not plead actual knowledge."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118-19 (C.D. Cal. 2003).  And the tort allegedly committed by a primary actor (and that Dr. Rosenberg allegedly knew about and intentionally assisted) is unclear.  If plaintiffs are positing that a non-fiduciary who knows that a fiduciary is allowing a "dangerous situation" to persist thereby "aids and abets" the fiduciary's breach of some duty of care owed to the fiduciary's client, nothing in the law supports such an untrammeled expansion of a non-fiduciary's duties.

### 2. The Alternative Test of Aiding and Abetting Liability Is Not Satisfied Because Plaintiffs Fail to Allege Duty.

Plaintiffs also allege that "BRRC and Barr Rosenberg substantially assisted the fiduciary duty breaches of ARIM, for their own interests or financial gain, by providing ARIM with the quantitative investment model to use in managing the entrusted assets of Guam, Sacramento and the Investor Class."  CC ¶ 61.  This allegation does not establish liability because under the alternative test one is liable only where one "gives substantial assistance to the other in accomplishing a tortious result *and the person's own conduct, separately considered, constitutes a breach of duty to the third person*."  *Saunders*, 27 Cal. App. 4th at 846 (emphasis added).  As explained elsewhere in this Motion, there are no legally sufficient allegations that Dr. Rosenberg himself owed, or breached, *any* duty to plaintiffs.[6]

### C. Plaintiffs State No Claim for Negligence/Gross Negligence.

"The threshold element of a cause of action for negligence is the existence of a duty to use

---

[6] Plaintiffs never explain how "providing the model" substantially assisted any tort committed by the other defendants.  Is it plaintiffs' claim that employing or having a model that contained a coding error in it was itself a tort of some kind?  There is no law, to defendants' knowledge, that imposes strict liability on a fiduciary that commits a mistake (which is what appears to be the basis of the claims here).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

1 due care toward an interest of another that enjoys legal protection against unintentional invasion."

2 *Bily v. Arthur Young & Co.,* 3 Cal. 4th 370, 397 (1992).  Plaintiffs fail to allege specific facts to

3 support the existence of a "legal duty" owed to them by Dr. Rosenberg.  Instead, Plaintiffs allege

4 that "***Defendants*** owed Guam, Sacramento, and the Investor Class a duty to manage and monitor

5 the investments of Guam, Sacramento, and the Investor Class with reasonable care and in good

6 faith."  CC ¶ 66.  There is no basis for asserting that Dr. Rosenberg personally owed a duty of care

7 to the pension plans and employee retirement systems that contracted with the entity defendants.

8 *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.3d 586, 595 (1970) ("More must be

9 shown than breach of the officer's duty *to his corporation* to impose personal liability *to a third*

10 *person* upon him.") (italics in original).

11             **D.       Plaintiffs State No Claim for an Accounting.**

12             A claim for an accounting requires a showing that a relationship exists between the

13 plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that

14 can only be ascertained by an accounting.  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179

15 (2009); 5 Witkin, *Cal. Procedure* (5th ed. 2008) Pleading, § 819, p. 236.  While a fiduciary

16 relationship between the parties is not required to state a cause of action for accounting, a plaintiff

17 must allege *some* relationship that gives rise to a right to an accounting.  *Id.*  Here, there are no

18 allegations that *any* relationship exists between Plaintiffs Guam or Sacramento and Dr. Rosenberg,

19 or that some balance is due to these plaintiffs from Dr. Rosenberg.  The claim for an accounting

20 against Dr. Rosenberg should be dismissed.

21                                   **CONCLUSION**

22             Barr Rosenberg respectfully requests that the Court dismiss all claims against him for

23 failure to state a claim upon which relief can be granted.

24 DATED: May 31, 2011                    COBLENTZ, PATCH, DUFFY & BASS LLP

25

26                                   By:    */s/* Jonathan R. Bass
                                           JONATHAN R. BASS
27                                         Attorneys for Defendant
                                           Barr Rosenberg
28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BARR ROSENBERG'S MOTION TO DISMISS**