1   MAYER BROWN LLP
    Lee H. Rubin (SBN 141331)
2   Two Palo Alto Square, Suite 300
    3000 El Camino Real
3   Palo Alto, CA 94306-2112
    Telephone: (650) 331-2000
4   Facsimile:  (650) 331-2060
    lrubin@mayerbrown.com
5
    Counsel for Defendants
6   AXA Rosenberg Group LLC, AXA Rosenberg
    Investment Management LLC, and Barr
7   Rosenberg Research Center LLC

8

9                  **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12

13  In re AXA ROSENBERG INVESTOR          | Master File No. CV 11-00536 JSW
    LITIGATION
14                                         | CLASS ACTION

15                                         | **REPLY IN SUPPORT OF MOTION TO
    This Document Relates To:  All Actions | DISMISS THE CONSOLIDATED CLASS
16                                         | ACTION COMPLAINT**

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3     TABLE OF AUTHORITIES ........................................................................................ ii

4     INTRODUCTION ................................................................................................... 1

5     I.      SLUSA BARS THE INVESTOR CLAIMS.................................................. 1

6             A.      The Claims Sound In Misrepresentation Or Omission Or Deceptive And/Or
                      Manipulative Conduct.................................................................................. 1

7             B.      The Claims Are In Connection With Covered Securities....................................... 5

8             C.      All Investor Claims Must Be Dismissed............................................................ 8

9     II.     PLAINTIFFS HAVE FAILED TO PLEAD INJURY......................................... 9

10    III.    ARG AND BRRC HAVE NO LEGAL DUTY.................................................. 11

11    IV.     THE GUAM CONTRACT BARS ITS CLAIMS. .............................................. 13

12    V.      THE PROHIBITED TRANSACTION CLAIM FAILS......................................... 14

13    VI.     PLAINTIFFS MUST PROVIDE A MORE DEFINITE STATEMENT.......................... 14

      CONCLUSION.................................................................................................... 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

2

## <u>TABLE OF AUTHORITIES</u>

3

## CASES

4

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    521 F.3d 1278 (10th Cir. 2008) ...................................................................................4, 9

*Anudokem v. Am. Home Mortg. Servicing, Inc.*,
    2010 WL 532440 (N.D. Cal. 2010) ...............................................................................11

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)...........................................................................8

*Ariz. State Carpenters Pension Trust Fund v. Citibank*,
    125 F.3d 715 (9th Cir. 1997) ........................................................................................12

*Beckett v. Mellon Investor Servs., LLC*,
    2006 WL 3249189 (W.D. Wash. 2006).........................................................................3

*Bender v. Williamsport Area Sch. Dist.*,
    475 U.S. 534 (1986)......................................................................................................9

*Bower v. Vill. of Mt. Sterling*,
    44 F. App'x 670 (6th Cir. 2002) ...................................................................................9

*In re Calpine Corp. ERISA Litig.*,
    2005 1431506 (N.D. Cal. 2005)....................................................................................11

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)..........................................................................................15

*Dudek v. Prudential Sec., Inc.*,
    295 F.3d 875 (8th Cir. 2002) ........................................................................................4

*Elliott v. Mitsubishi Cement Corp.*,
    2008 WL 4286985 (C.D. Cal. 2008).............................................................................11

*Falkowski v. Imation Corp.*,
    309 F.3d 1123 (9th Cir. 2002) ......................................................................................7

*Feiner Family Trust v. Xcelera Inc.*,
    2010 WL 3184482 (S.D.N.Y. 2010)..............................................................................4

*Gray v. Seaboard Sec., Inc.*,
    126 F. App'x 14 (2d Cir. 2005) ....................................................................................8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Grund v. Del. Charter Guar. & Trust Co.*,
2011 WL 2118754 (S.D.N.Y. 2011)...................................................................................3

*Hanson v. Morgan Stanley Smith Barney, LLC*,
762 F. Supp. 2d 1201 (C.D. Cal. 2011) ..............................................................................9

*Harris v. Amgen, Inc.*,
2010 WL 744123 (C.D. Cal. 2010)....................................................................................11

*Horattas v. Citigroup Fin. Mkts. Inc.*,
532 F. Supp. 2d 891 (W.D. Mich. 2007) .............................................................................8

*Innospan Corp. v. Intuit, Inc.*,
2011 WL 856265 (N.D. Cal. 2011) ......................................................................................9

*Instituto De Prevision Militar v. Merrill Lynch*,
546 F.3d 1340 (11th Cir. 2008) ...........................................................................................6

*Int'l Bhd. of Painters Pension Fund v. Duval*,
925 F. Supp. 815 (D.D.C. 1996)...................................................................................3, 14

*In re Kingate Mgmt. Ltd. Litig.*,
2011 WL 1362106 (S.D.N.Y. 2011).....................................................................................8

*Kurz v. Fidelity Mgmt. & Research Co.*,
2008 WL2397582 (S.D. Ill. 2008).......................................................................................7

*Leigh v. Engle*,
727 F.2d 113 (7th Cir. 1984) ..............................................................................................14

*Madden v. Cowen & Co.*,
576 F.3d 957 (9th Cir. 2009) ................................................................................................7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006)........................................................................................................4, 6, 7

*In re Mutual Funds Inv. Litig.*,
767 F. Supp. 2d 542 (D. Md. 2011) ......................................................................................8

*Nieto v. Ecker*,
845 F.2d 868 (9th Cir. 1988) ..............................................................................................14

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
2011 WL 1312044 (N.D. Cal. 2011) ....................................................................................2

*Ongstad v. Piper Jaffray & Co.*,
755 N.W.2d 877 (N.D. 2008) ...............................................................................................4

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
750 F. Supp. 2d 450 (S.D.N.Y. 2010)...................................................................................8

*Pension Trust Fund v. McMorgan & Co.*,
   2007 WL 201247 (E.D. Cal. 2007)........................................................................11

*Proctor v. Vishay Intertechnology Inc.*,
   584 F.3d 1208 (9th Cir. 2009) ........................................................................4, 8

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   292 F.3d 1334 (11th Cir. 2002) ........................................................................4

*Romano v. Kazacos*,
   609 F.3d 512 (2d Cir. 2010)........................................................................3, 4

*Rowinski* v. *Salomon Smith Barney Inc.*,
   398 F.3d 294 (3d Cir. 2005)........................................................................4, 8

*Samson v. One West Bank*,
   2011 WL 3269397 (N.D. Cal. 2011) ........................................................................11

*Scala v. Citicorp Inc.*,
   2011 WL 900297 (N.D. Cal. 2011) ........................................................................6, 8

*Segal v. Fifth Third Bank, N.A.*,
   581 F.3d 305 (6th Cir. 2009) ........................................................................4

*Shaw v. Charles Schwab & Co.*,
   128 F. Supp. 2d 1270 (C.D. Cal. 2001) ........................................................................7

*Smit v. Charles Schwab & Co.*,
   2011 WL 846697 (N.D. Cal. 2011) ........................................................................5

*Sofonia v. Principal Life Ins. Co.*,
   465 F.3d 873 (8th Cir. 2006) ........................................................................6

*Stoody-Broser v. Bank of Am., N.A.*,
   2009 WL 2707393 (N.D. Cal. 2009) ........................................................................4

*Stoody-Broser v. Bank of Am., N.A.*,
   2011 WL 2181364 (9th Cir. 2011) ........................................................................4

*Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*,
   2007 WL 4410370 (N.D. Tex. 2007)........................................................................11

*U.S. Mortg., Inc. v. Saxton*,
   494 F.3d 833 (9th Cir. 2007) ........................................................................8

*Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP*,
   2010 WL 4457322 (S.D.N.Y. 2010)........................................................................8

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ........................................................................11

iv

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004) ....................................................................3, 4

**STATUTES**

15 U.S.C. § 77r(b) ............................................................................................................5, 6

15 U.S.C. § 78bb(f) ................................................................................................................5

15 U.S.C. § 78c(a) .................................................................................................................1

29 U.S.C. § 406(b) ..............................................................................................................14

**OTHER AUTHORITIES**

29 C.F.R. § 2550.408b-2(e)(1) ...........................................................................................14

Department of Labor Advisory Opinion No. 82-41A,
    1982 WL 21224 (Aug. 12, 1982) .....................................................................................14

v

1

**<u>INTRODUCTION</u>**

2      Though artfully pleaded, plaintiffs' Complaint has several fatal deficiencies. Try as they

3  might in their opposition brief to rewrite their Complaint, the essence of the Investor plaintiffs'

4  claims are grounded in misrepresentation and are thus precluded by SLUSA. And all of the

5  plaintiffs' claims fail because they allege no facts to suggest any compensable injury, nor any

6  facts creating a legal duty owed by ARG or BRRC to any of the putative class members. To

7  overcome these deficiencies, plaintiffs would have this Court disregard key allegations in their

8  Complaint – including plaintiffs' allegations of the defendants' "cover-up" and "concealment,"

9  and plaintiffs' concession that defendants are compensating plaintiffs for the coding error. At the

10  same time, plaintiffs raise new allegations concerning ARG and BRRC in their opposition brief

11  that are nowhere to be found in the Complaint. Further, plaintiffs would have this Court adopt

12  legal arguments that have been soundly rejected by most courts, while creating a new legal

13  theory concerning ERISA prohibited transactions that has never been adopted by any court.

14  Plaintiffs' arguments should be rejected and their Complaint dismissed without leave to amend.

15  **I.      SLUSA BARS THE INVESTOR CLAIMS.**

16      Investor plaintiffs' claims meet every element of SLUSA. Plaintiffs contest the application of

17  only two of those elements, and their arguments do not bear scrutiny.[1]

18  **A.      The Claims Sound In Misrepresentation Or Omission Or Deceptive And/Or
        Manipulative Conduct.**

19      Plaintiffs' claims sound in misrepresentation, omission and manipulative conduct. Plaintiffs'

20  central argument to the contrary is that the Complaint does not expressly assert misrepresenta-

21  tions or "allegations typically found in a securities fraud case." Op. 10. Plaintiffs' argument is

22  wrong for three reasons. First, plaintiffs ignore the text of their own Complaint, which expressly

23  alleges the types of misrepresentations and omissions that trigger SLUSA. Second, it is the sub-

24  stance of plaintiffs' allegations – not the manner in which they are pled – that is dispositive un-

25

---

26  [1]   Plaintiffs cannot avoid SLUSA by suggesting that Guam law may apply. *See* Op. 15 n.9. Be-
    cause Guam is a possession of the United States, precisely the same status as Puerto Rico, Wash-
27  ington D.C., and the Virgin Islands, it is included within the Exchange Act's definition of "State"
    (15 U.S.C. § 78c(a)(16)). Thus claims under Guam law are precluded by SLUSA, just like claims
28  brought under D.C., Puerto Rico, or Virgin Islands law.

1   der SLUSA. Though plaintiffs have attempted to artfully draft around SLUSA, they cannot hide

2   behind that pleading and deny the substance of their claim, which is evidenced by documents

3   that plaintiffs have themselves drafted or relied upon. Third, plaintiffs' attempt to distinguish be-

4   tween securities fraud claims and "ordinary common law" claims misapprehends the purpose of

5   SLUSA. Of course, securities fraud claims can always be converted to negligence and fiduciary

6   breach claims, theories that have a less stringent standard. But SLUSA is designed precisely to

7   avoid circumvention of the securities laws merely by such relabeling of claims.

8   **1. The text of the Complaint.** The text of plaintiffs' Complaint alone suffices to find that

9   SLUSA applies. As we explained (Mot. 10), the Complaint is replete with allegations that defen-

10  dants "covered up" the alleged error, that they "concealed" it, and that executives ordered em-

11  ployees not to report it. Compl. ¶¶ 5, 30, 31, 33, 38. Plaintiffs studiously avoid any mention of

12  those allegations in their Opposition. Plaintiffs' failure to even address those allegations – particu-

13  larly in the face of consistent authority holding that such allegations do in fact trigger SLUSA

14  (Mot. 10) – can only be construed as a concession of this critical point.

15  That these misrepresentation and omission claims form a core component of plaintiffs' claim

16  is evident by the class period selected by plaintiffs. Although plaintiffs concede that the coding

17  error itself was fixed by November 2009 (Compl. ¶ 30), plaintiffs define the class period to run

18  through April 15, 2010, the date that defendants disclosed the error to its clients. *Id.* ¶¶ 32, 43.

19  That latter date is relevant only if the allegations of "concealment" and "cover-up" are necessary

20  to the claims plaintiffs assert.[2]

21  **2. Substance of the Complaint.** Despite plaintiffs' artful pleading, the essence of their alle-

22  gations involves misrepresentation and omissions. Mot. 12. This is demonstrated by the overt

23  allegations in now-superseded complaints, and by allegations made by the SEC in an Order that

24  plaintiffs expressly rely upon in their Complaint. Those documents reflect the substance of plain-

25  tiffs' claims: that defendants "misrepresented the Model's ability to control risk," "made misre-

26  presentations and omissions about the scope and application of their compliance policies and

27  [2] *See, e.g.*, *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 2011 WL 1312044, at \*2, \*8 (N.D. Cal. 2011) (claims covered by SLUSA where class period defined to include period during which statements were alleged to be false).

28

REPLY IN SUPPORT OF MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT
(CASE NO. CV 11-00536 JSW)

1  procedures," "failed to disclose the . . . absence of internal compliance," and "failed to disclose"

2  "the true reasons for AXA Funds' performance." *See* Mot. 9-12.[3]

3      Plaintiffs counter that these precise written formulations are not contained in their Complaint.

4  Op. 11. Indeed they are not. As we pointed out – and plaintiffs have not denied – plaintiffs re-

5  moved those allegations from their Complaint in an apparent effort to artfully plead their claim

6  to avoid SLUSA preclusion. Plaintiffs concede, as they must, that they "cannot escape SLUSA

7  preemption through artful pleading." Op. 12 (quotation omitted). Yet, their Complaint is based

8  on the same facts that formed the basis of the SEC's Order and plaintiffs' own prior versions of

9  the Complaint. Plaintiffs have merely removed the references to misrepresentation and omission

10  in an attempt to circumvent SLUSA. This Court should not countenance such a transparent effort

11  to avoid the preclusive force of the federal securities laws.

12      Having so carefully constructed their Complaint to omit those references, plaintiffs take their

13  argument one step further; they now insist that "'whether SLUSA applies may only be made by

14  reference to what a party has alleged.'" Op. 12 (quoting *Grund v. Delaware Charter Guar. &*

15  *Trust Co.*).[4] Plaintiffs' assertion is simply incorrect. Courts are "free to look beyond the face" of

16  a complaint "to determine whether [it] allege[s] securities fraud in connection with the purchase

17  or sale of covered securities." *Romano v. Kazacos*, 609 F.3d 512, 519-20 (2d Cir. 2010). As this

18  Court has stated: "the Court must look beyond the face of the complaint to analyze the substance

19  [3] Plaintiffs' prohibited transaction theory further demonstrates that plaintiffs' claims depend
20  upon alleged omissions and misrepresentations. There, the ERISA plaintiffs contend that, by fail-
   ing to disclose relevant information, "a fiduciary acts in breach of its fiduciary duties to insure
   the continuation of those fees." Op. 35. They analogize this case to *International Brotherhood of*
21  *Painters Pension Fund v. Duval*, 925 F. Supp. 815 (D.D.C. 1996), whose facts they summarize
   as an "investment manager, for its own benefit, had *withheld* from [its clients] *material informa-*
22  *tion* that would have impacted decision to continue use of investment manager." Op. 34-35 (em-
   phasis added). But "[c]laims that investment advisors breached fiduciary duties in charging un-
23  authorized fees have been held to necessarily coincide with the sale or purchase of securities and
   are based in part on material omissions or the misrepresentations concerning the fees." *Beckett v.*
24  *Mellon Investor Servs., LLC*, 2006 WL 3249189, at *4 (W.D. Wash. 2006).
   [4] Plaintiffs' reliance (Op. 12) on *Grund*, 2011 WL 2118754, at *9 (S.D.N.Y. 2011), and *Xpedior*
25  *Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 268 (S.D.N.Y.
   2004) – two district court cases from outside the Ninth Circuit – is fundamentally misplaced. In-
26  deed, both *Grund* and *Xpedior* acknowledged that "the Court may choose to 'look beyond the
   face of the [complaint] to determine whether [it alleges] securities fraud in connection with the
27  purchase or sale of covered securities.'" *Grund*, 2011 WL 2118754, at *9; *Xpedior*, 341 F. Supp.
   2d at 265 ("[T]he Court must 'look[] beyond the explicit allegations of the complaint and the
28  state law labels the plaintiffs employ [] to the 'gravamen' or 'essence' of their claims.'").

of the allegations." *Stoody-Broser v. Bank of Am., N.A.*, 2009 WL 2707393, at *3 (N.D. Cal. 2009). Every court of appeals that has addressed the issue has agreed that a plaintiff may not artfully plead around SLUSA by excising any allegations of misrepresentation, as the critical inquiry is the substance of the allegations, even if not affirmatively pleaded.[5] Indeed, while plaintiffs urge the Court to ignore allegations from their superseded complaints or the SEC Order (which plaintiffs themselves relied upon), courts – including cases relied upon by plaintiffs – regularly consider such documents in determining the true substance of plaintiffs' allegations.[6]

Plaintiffs alternatively argue that "SLUSA applies only if the misrepresentations are a 'necessary component' or a 'factual predicate' for liability." Op. 14. But that argument, ultimately originating from *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 268 (S.D.N.Y. 2004), has been rejected by virtually every court to consider it, including the Ninth Circuit. In *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208 (9th Cir. 2009), the Ninth Circuit held that a "[m]isrepresentation need not be a specific element of the claim to fall within the Act's preclusion." *Id.* at 1221-22 & n.13. *See also Rowinski v. Salomon Smith Barney Inc.,* 398 F.3d 294, 300 (3d Cir. 2005) (under SLUSA, "preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim"); *Ongstad v. Piper Jaffray & Co.*, 755 N.W.2d 877, 882 (N.D. 2008) (expressly rejecting *Xpedior*'s "necessary component" test in favor of the Third Circuit's holding in *Rowinski*); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) (noting that *Xpedior* "pro-

---

[5]   *See, e.g.*, *Stoody-Broser v. Bank of Am., N.A.*, 2011 WL 2181364, at *1 (9th Cir. 2011) (unpublished) (notwithstanding the artful language of the complaint, this Court "correctly ruled that the essence of these allegations is that [defendant] fraudulently engaged in self-dealing"); *Romano*, 609 F.3d at 519 (2d Cir.) ("[C]ourts look beyond the face of an 'artfully pled' complaint"); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1287-88 (10th Cir. 2008); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) ("SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting."); *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1346 (11th Cir. 2002).

[6]   *See, e.g.*, *Dudek*, 295 F.3d at 879 (complaint preempted by SLUSA where it relied on same facts as prior complaint but removed misrepresentation allegations); *Feiner Family Trust v. Xcelera Inc.*, 2010 WL 3184482, at *4 (S.D.N.Y. 2010) (amending complaint to remove misrepresentation allegations is "artful pleading," not defeating SLUSA); *Xpedior Creditor Trust,* 341 F. Supp. 2d at 268-69 (reliance on prior iterations of complaint to divine true meaning has merit where there is a prior complaint and later complaint alleges identical facts).

vides some support for Plaintiffs" but concluding that "the weight of the authority is overwhelmingly" against it).

**3. Common law claims.** Plaintiffs' argument that their claims only sound in "common law" misapprehends SLUSA. Plaintiffs raise a straw man by arguing that their claims are "classic common law claims" "under ordinary fiduciary and negligence law," and do not assert "allegations typically found in a securities fraud case," such as "claims alleging that the defendant made intentional misrepresentations." Op. 10, 16. SLUSA applies even in the absence of allegations of *scienter*, or intentional misrepresentations. *See, e.g.*, *Smit v. Charles Schwab & Co.*, 2011 WL 846697, at *7 (N.D. Cal. 2011). And as we noted – and plaintiffs do not dispute – courts routinely apply SLUSA to claims, like plaintiffs' here, involving fiduciary and negligence claims. Mot. 11 n.7.[7] Indeed, if such claims were not precluded, every securities fraud plaintiff could defeat SLUSA's purpose by recasting their claims as state breach of fiduciary duty and negligence claims, which carry a less stringent legal standard.[8]

**B. The Claims Are In Connection With Covered Securities.**

**1. Covered Securities.** The claims here are "covered securities" within the definition of SLUSA in two separate ways: they relate to securities exchanged on a national market (15 U.S.C. § 77r(b)(1)) and they relate to securities "issued by an investment company" registered under the Investment Company Act of 1940 (*id.* § 77r(b)(2)). *See* 15 U.S.C. § 78bb(f)(5)(E) (incorporating definition of "covered security" for purposes of SLUSA).

---

[7] SLUSA also applies to claims for flawed investment advice and for an investment advisor's misleading research. *See* Mot. 11 (collecting cases). Plaintiffs' argument – that this case is not "about misleading research or flawed investment advice." Op. 11 – is belied by their own Complaint. Plaintiffs assert that claims relate to the *services* that AXA Rosenberg provides (Op. 14), which their Complaint describes as "investment management services" using "computer-driven algorithms" to "identify large numbers of stocks that may be underpriced." Compl. ¶¶ 9, 26. This is otherwise known as "research" used to provide "investment advice."

[8] Plaintiffs suggest that SLUSA should not apply because "Plaintiffs are unaware of *any* available federal cause of action that would permit" recovery of the full extent of damages, and "there is no federal breach of fiduciary duty claim available that the Investor Plaintiffs could assert." Op. 10 n.3, 16. But the Supreme Court made clear in *Dabit* that "the statute also [precludes] state-law class-action claims for which federal law provides no private remedy." 547 U.S. 71, 74 (2006). And application of SLUSA would not leave plaintiffs and other class members without a remedy, because "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims." *Id.* at 87. Plaintiffs and other class members could pursue their purported fiduciary breach and negligence claims (if they were valid) individually.

*First*, the plaintiffs' claims relate to securities traded on national exchanges. Plaintiffs argue that Plaintiff Sacramento and some class members may have invested some assets the stocks of foreign companies, and thus that "Defendants have not established that SLUSA's 'covered securities' requirement applies to ***all*** Investor Plaintiffs or the Investor Class." Op. 15 (emphasis added). This argument misunderstands SLUSA. Plaintiff "cannot avoid SLUSA's application by including some nonpurchasers or nonsellers of covered securities in the putative class." *Sofonia v. Principal Life Ins. Co.,* 465 F.3d 873, 879 n.4 (8th Cir. 2006). *See also Scala v. Citicorp Inc.*, 2011 WL 900297, at *4 (N.D. Cal. 2011) ("If a covered class action brought under state law concerns a transaction involving covered securities at all, it is subject to dismissal under SLUSA – even if it also involves non-covered securities or non-securities."). This is because SLUSA applies to any "*covered class action*" where a private party alleges a misrepresentation, omission or deceptive device, in connection with a covered security. Plaintiffs' own Complaint states that AXA Rosenberg invests in "domestic" stocks, and that AXA Rosenberg's largest strategy invests in "U.S. large-cap equity." Compl. ¶¶ 26, 34. Plaintiffs' class, which purports to be on behalf of all AXA Rosenberg clients, does not exclude clients investing in U.S. equities. By suing on behalf of a class that purportedly invested in U.S. domestic stocks, *plaintiffs* have established that SLUSA's "covered securities" requirement applies.

*Second*, the investment vehicles provided by the defendants constitute "a security issued by an investment company that is registered . . . under the Investment Company Act of 1940." 15 U.S.C. § 77r(b)(2). *See Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1351 (11th Cir. 2008) ("mutual funds qualify as 'covered securities' under SLUSA"). Plaintiffs claim that one of the Laudus Rosenberg funds invests principally in international stocks. Op. 15. But those Laudus Rosenberg funds are issued by an investment company registered under the Investment Company Act of 1940, and therefore, those funds themselves constitute "covered securities" under SLUSA. *See, e.g.*, Laudus Rosenberg International Equity Fund Subadviser Agreement, Rubin Decl. Ex. D at 2; Laudus Rosenberg International Small Capitalization Fund Subadviser Agreement, Rubin Decl. Ex. E at 2.

**2. In connection with.** The allegations are "in connection with" those covered securities. A "misrepresentation is 'in connection with' the purchase or sale of securities if there is 'a relationship in which the fraud and the stock sale coincide or are more than tangentially related.'" *Madden v. Cowen & Co.*, 576 F.3d 957, 965-66 (9th Cir. 2009) (quoting *Falkowski v. Imation Corp.,* 309 F.3d 1123, 1131 (9th Cir. 2002)). The test is satisfied here.

Plaintiffs argue that "their claims relate [only] to AXA Rosenberg's *services* rather than the securities in plaintiffs' investment portfolios." But, plaintiffs' Complaint makes clear that AXA Rosenberg's service *is* the purchase and sale of securities. *See* Compl. ¶¶ 2, 10, 26 (AXA Rosenberg "invest[s] and manage[s] a portfolio" of securities, "identif[ies] large numbers of stocks that may be underpriced," and "trade[s] on their [clients'] behalf" in domestic stock). Indeed, the error itself purportedly led to the purchase and sale of the wrong securities, which then underperformed the market. *Id.* ¶ 34. Plaintiffs seek to recover both the lost investment value of those investments and their fees paid for the investment advice and trading of securities. This is precisely the type of claim that courts find to trigger SLUSA. *See* Mot. 11. *See also Rowinski*, 398 F.3d at 301 ("[T]he relief sought by plaintiffs – such as the recovery of investment losses or trading fees – may be relevant in 'connecting' the allegations to the purchase or sale of securities.").

Plaintiffs' argument to the contrary is premised on theories and cases that were rejected by the Supreme court in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006). First, relying on *Shaw v. Charles Schwab & Co.*, 128 F. Supp. 2d 1270, 1274 (C.D. Cal. 2001), plaintiffs argue that SLUSA should not apply when the claim does not relate to any "particular stock" (Op. 13) that passed through plaintiffs' accounts. But *Shaw* was predicated on an interpretation of SLUSA that *Dabit* rejected. As the court stated in *Kurz v. Fidelity Management & Research Co.,* 2008 WL2397582, at *5 (S.D. Ill. 2008), the court's conclusion in *Shaw* "hinged on its refusal to give SLUSA's 'in connection with' language the broad reading later dictated by the Supreme Court's holding in *Dabit*." In *Kurz,* the court found that *Shaw* would likely not be decided the same way post-*Dabit*, and it rejected the argument that the focus of a complaint must be on a "particular security." *Id.* Rather, *Kurz* found that SLUSA applied even where, as here, defendants' alleged misstatements coincided with the purchase and sale of securities within a

1    mutual fund's underlying portfolio. *Id.*[9] Other courts have similarly found that SLUSA applies

2    when plaintiffs allege misrepresentations related to accounts that hold covered securities. *See,*

3    *e.g.*, *Rowinski* 398 F.3d at 301 (noting that "a broker/investor dispute . . . arises 'in connection'

4    with the purchase or sale of securities, in part because investors maintain brokerage accounts 'for

5    the very purpose of trading in securities'").[10]

6        Second, plaintiffs argue that because they "did not themselves purchase any covered securi-

7    ties," plaintiffs' claims cannot be "in connection with" the purchase or sale of a security because

8    "defendant's alleged fraud must 'coincide ***with plaintiff's*** purchase or sale of covered securi-

9    ties." Op. 13-14 (emphasis added). Plaintiffs are twice wrong. As noted above, plaintiffs *did* pur-

10   chase covered securities, such as the Laudus Rosenberg funds. Moreover, the Supreme Court in

11   *Dabit* specifically rejected plaintiffs' rule, finding a transaction meets the "in connection with"

12   test if the misrepresentation alleged "'coincide[s]' with a securities transaction – whether by the

13   plaintiff ***or by someone else***." *Dabit*, 547 U.S. at 85 (emphasis added). *See also U.S. Mortg., Inc.*

14   *v. Saxton*, 494 F.3d 833, 845 (9th Cir. 2007) ("While plaintiffs themselves did not purchase or

15   sell any of the publicly traded shares of Saxton, *Dabit* does not require that they do so.").

16       **C.    All Investor Claims Must Be Dismissed.**

17       If any portion of the Investor Plaintiffs' claims is precluded, the entire claim must be dis-

18   missed. *See* Mot. 12-13 & n.10. Plaintiffs point to the Ninth Circuit's decision in *Proctor*, 584

19   _____

20   [9]   Plaintiffs' other cases fare no better. *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC*, 750 F. Supp. 2d 450, 453-55 (S.D.N.Y. 2010)

21   and *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 398-99 & n.6 (S.D.N.Y. 2010) both involved misrepresentations about funds that were not covered securities, where the securities in

22   those funds were not "at the heart" of the case. By contrast here, the mutual funds (like the Laudus fund) are "covered securities," and the alleged misrepresentations concern how AXA Rosen-

23   berg selected the individual securities in the funds. *See Scala*, 2011 WL 900297, at *7 n.6 (distinguishing both *Anwar* and *Montreal Pension Plan* on these grounds); *In re Kingate Mgmt. Ltd. Litig.*, 2011 WL 1362106, at *8 (S.D.N.Y. 2011) (same).

24   [10]   *See also Horattas v. Citigroup Fin. Mkts. Inc.*, 532 F. Supp. 2d 891, 902-03 (W.D. Mich. 2007) (SLUSA applies where covered securities were traded in accounts that are the subject of

25   the claim); *Gray v. Seaboard Sec., Inc.*, 126 F. App'x 14, 17 (2d Cir. 2005) (SLUSA triggered where investment advice purported to be something it was not, and breach caused damages

26   through transactions in securities); *Wolf Living Trust v. FM Multi-Strategy Inv. Fund, LP*, 2010 WL 4457322, at *3 (S.D.N.Y. 2010) ("[M]isrepresentations related to non-covered limited part-

27   nership interests may be nonetheless 'in connection with' covered securities where the Funds were created for the purpose of investing in such securities, and the misrepresentations 'had the

28   effect of facilitating Madoff's fraud.'").

1   F.3d at 1227-28, but that decision merely permitted *separate*, non-precluded claims to proceed.

2   Investor Plaintiffs here have not pleaded any separate claim that it not precluded by SLUSA.

3       Perhaps sensing the weakness of their position, plaintiffs repeatedly request permission to

4   replead. *See*, *e.g.*, Op. 12 n.4 & 17 n.10. Such leave should be denied because any claim based

5   on the same facts would still be precluded by SLUSA, so "[a]ny amendment . . . would [be] fu-

6   tile." *Anderson*, 521 F.3d at 1288. *See also In re Mutual Funds Inv. Litig.*, 767 F. Supp. 2d 542,

7   547 (D. Md. 2011) (repleading futile because SLUSA would still preclude claims even if misre-

8   presentation allegations were removed). Plaintiffs' cases are not to the contrary, because unlike

9   here, the courts could hypothesize potential non-precluded claims. To the extent the Court enter-

10  tains any repleading in this action, it should be limited to permitting the plaintiffs either (1) to

11  plead their claims as a federal securities action or (2) to pursue their state claims on an individual

12  basis. *See Hanson v. Morgan Stanley Smith Barney, LLC*, 762 F. Supp. 2d 1201, 1208-09 (C.D.

13  Cal. 2011) (leave to amend limited to stating a securities claim or pursuing claim on individual

14  basis; merely deleting references to misrepresentations would run afoul of SLUSA's intent).

15      Finally, because the claim for an accounting turns on the existence of a separate cause of ac-

16  tion, it too must fail with the balance of the claims. *See* Mot. 17.

17  **II.      PLAINTIFFS HAVE FAILED TO PLEAD INJURY.**

18      Plaintiffs' causes of action – and plaintiffs' constitutional standing – all require plaintiffs to

19  allege facts demonstrating injury that each plaintiff suffered, and that such injury was caused by

20  defendants' conduct. *See* Mot. 13-15. *See also Bender v. Williamsport Area Sch. Dist.*, 475 U.S.

21  534, 542 (1986). Plaintiffs' Complaint fails this test. Even accepting plaintiffs' allegations as

22  true, plaintiffs do not allege any facts suggesting that they individually, or the class as a whole,

23  suffered any injury beyond the $217 million already agreed with the SEC and paid to plaintiffs.

24      Plaintiffs' argument would have this Court ignore the $217 million payment. But this Court

25  may not consider the allegations of the coding error in isolation, without also considering that

26  AXA Rosenberg has agreed, with the SEC, to pay its clients $217 million. *See, e.g., Bower v.*

27  *Vill. of Mt. Sterling,* 44 F. App'x 670, 677 (6th Cir. 2002) (district court cannot "ignore facts al-

28  leged in the complaint that undermine the plaintiff's claim") (quotation omitted); *Innospan Corp.*

*v. Intuit, Inc.*, 2011 WL 856265, at *5 (N.D. Cal. 2011) (a court "must consider whether the circumstances, in their totality, warrant [unjust enrichment] relief"). Plaintiffs identify no factual allegations (as opposed to conclusory statements) suggesting that, once the $217 million payment is considered, the class as a whole suffered any injury. Even worse, plaintiffs fail entirely, yet again, to identify any specific injury suffered by each individual plaintiff.[11]

Plaintiffs claim that their request for management fees somehow obviates their obligation to allege any losses. Not so. First, as even plaintiffs' authority acknowledges, for plaintiffs to have Article III standing, they must allege an injury in fact that is concrete and particularized (not conjectural or hypothetical) together with a causal connection between the injury and the alleged conduct. *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.,* 2007 WL 4410370, at *14 (N.D. Tex. 2007). "[A] state law cause of action that does not require injury will not give a federal court jurisdiction when the court lacks Article III standing." *Id.* Second, the authority relied upon by plaintiffs is based entirely on law outside of California (whose law plaintiffs argue this Court should apply). Plaintiffs nowhere dispute that under California law, a claim for breach of fiduciary duty must allege damages proximately caused by the breach. Mot. 14. Third, even if plaintiffs could proceed on a claim for disgorgement of fees under another state's law, plaintiffs would have to allege facts suggesting a causal connection between the payment of fees and the error, specifically distinguishing between fees legally and illegally obtained. *Super Future Equities*, 2007 WL 4410370, at *17. "[Plaintiffs] cannot simply claim that sometime after [plaintiffs] became a [client], [defendants] breached a fiduciary duty, and then recover every cent defendant has earned for the [] services it has provided since [2007]." *Id.* at *18 (quotation omitted). Plaintiffs' Complaint makes no effort at such a distinction.

---

[11] That plaintiffs invested substantial sums with AXA Rosenberg and paid substantial management fees (Op. 18) does not support any claim that all plaintiffs (let alone each plaintiff) suffered any uncompensated loss as a result of the coding error. Further, that the coding error exposed clients to greater than intended risk, or that clients experienced large negative performance deviations, also does not imply that the clients as a whole (or plaintiffs individually) suffered any specific loss as a result of the coding error, let alone a loss that exceeds the $217 million paid to clients. Indeed, Cornerstone was retained to calculate the impact of the error. Plaintiffs have identified no factual basis to disbelieve or discredit the conclusions that Cornerstone reached, using a methodology that the SEC incorporated into its Order.

### III.    ARG AND BRRC HAVE NO LEGAL DUTY.

Having engaged in impermissible group pleading, plaintiffs' Complaint is bereft of any fac-
tual allegations specific to ARG and BRRC that might create any legal duty. Rather than rebut
that point – or even acknowledge it – plaintiffs simply rewrite their Complaint in their opposition
brief. Plaintiffs further cloud the issue by confusing "control over plaintiffs' assets" (vested in
ARIM) on the one hand with, on the other hand, control over the investment model (ascribed to
BRRC) and the normal corporate governance control that exists between a parent company and
its subsidiaries. While the first may give rise to a fiduciary obligation, the latter two do not.

Plaintiffs repeatedly seek to minimize the importance of their pleading obligations by insist-
ing that fiduciary status is a question of fact, "inappropriate for resolution on a motion to dis-
miss." Op. 22, 25, 29. The Ninth Circuit has soundly rejected that position, holding that "[a] de-
fendant's fiduciary status under ERISA may be decided on a motion to dismiss." *In re Calpine
Corp. ERISA Litig.*, 2005 1431506, at *2 (N.D. Cal. 2005) (citing *Wright v. Or. Metallurgical
Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004)). In fact, courts routinely dismiss fiduciary breach
claims where a plaintiff "'does not provide factual allegations in support of [his legal] conclusion
sufficient to support a finding that . . . Defendants are *de facto* fiduciaries.'" *Harris v. Amgen,
Inc.*, 2010 WL 744123, at *6 (C.D. Cal. 2010) (quoting *In re Calpine*).[12]

Plaintiffs' Complaint fundamentally fails to allege any factual allegations in support of its
legal conclusion that ARG and BRRC are fiduciaries. Rather than citing any allegations from
their Complaint, plaintiffs instead simply assert new (conclusory) statements that are nowhere to
be found in their Complaint. They assert that "ARG was responsible for quality control over the
coding process used in the model" (Op. 24), that ARG had "control over Plaintiffs' assets" (Op.
25), that ARG "was responsible for the decision in early 2007 to make operational the model that

---

[12] *See also In re Calpine Corp.*, 2005 WL1431506, at *3 (dismissing ERISA claims against Di-
rectors due to failure to allege facts sufficient for de facto fiduciary status); *Elliott v. Mitsubishi
Cement Corp.*, 2008 WL 4286985, at *5 (C.D. Cal. 2008) (plaintiffs "allege no specific facts to
demonstrate that Defendants had actual control over Trust assets"); *Pension Trust Fund v.
McMorgan & Co.*, 2007 WL 201247, at *7-8 (E.D. Cal. 2007) (same) The same is also true for
common law fiduciary breach claims. *See, e.g.*, *Samson v. One West Bank*, 2011 WL 3269397, at
*5-6 (N.D. Cal. 2011) (dismissing complaint because it "alleges no facts sufficient to give rise to
an inference that the relationship between plaintiff and [defendant] is fiduciary in nature"); *Anu-
dokem v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 532440, at *3-4 (N.D. Cal. 2010) (same).

contained the error" (Op. 24), that "ARG knew that the model was operating without adequate oversight" (Op. 31), and that ARG had "control over the other Defendants with respect to the specific issues in the case (Op. 30). Plaintiffs invent new allegations to support their claims against BRRC as well. *See* Op. 24 (BRRC was "responsible for allowing the coding error to be introduced into the model" and "exercised significant . . . authority and control over Plaintiffs' assets"); Op. 26 (BRRC "substantially participated in ARIM's management of plan assets"). None of those statements appears anywhere in plaintiffs' Complaint. Plaintiffs' belated attempt to modify their Complaint essentially concedes its deficiencies.

Moreover, plaintiffs confuse control over the quantitative investment model with "control over plaintiffs' assets." As we noted, to be an ERISA fiduciary, one must "'exercise control un-ilaterally over a portion of a plan's assets, not merely [] propose investments.'" Mot. 19 (collect-ing cases). Plaintiffs do not dispute this point.[13] Plaintiffs also concede that ARIM has been des-ignated as the investment manager with fiduciary responsibility for plaintiffs' plan assets. Op. 23; Compl. ¶ 11. *See, e.g., Ariz. State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 721 (9th Cir. 1997) (evidence that plaintiffs had "expressly delegated authority to . . . an invest-ment manager," belies contention that defendant had been delegated responsibility).

Plaintiffs allege no facts suggesting that BRRC or ARG actually exercised control over plain-tiffs' assets. Instead, they confuse control over the model, with control over plaintiffs' assets. Plaintiffs argue that BRRC "controlled the model." Op. 26. They then suggest that "[c]ontrol over the model *amounted* to control over the funds of which ARIM was the named investment manager," and that defendants "shared control over the model *and/or* clients' funds." Op. 23, 25 (emphasis added). But, plaintiffs allege no facts suggesting that control over the model resulted in control over any participant's assets. To the contrary, plaintiffs concede that ARIM physically managed and traded those assets. Op. 26; Compl. ¶ 61. BRRC's control over its quantitative in-

---

[13] Plaintiffs' argument regarding "discretionary" authority or control misses the point. Plaintiffs have failed to show *any* authority or control by ARG or BRRC over plaintiffs' assets. But, to the extent that plaintiffs rely on the language of NEI's Private Offering Memoranda, that memoranda states that only another person "exercising *discretionary* authority over the Fund or its assets" will be deemed a fiduciary.

vestment model no more renders BRRC a fiduciary than it would render Microsoft a fiduciary if ARIM used Microsoft Excel in generating its trading recommendations.

With respect to ARG, plaintiffs confuse the normal governance control that exists in a parent-subsidiary relationship with control over plaintiffs' assets. The allegations in plaintiffs' Complaint describe the normal parent-subsidiary relationship, in which ARG "is a holding company" that "owns and governs" ARIM and BRRC, and that shares an office with its subsidiary. Compl. ¶¶ 16-17.[14] Those normal governance functions do not result in ARG's "functional exercise of authority and/or control over Plaintiffs' assets" as plaintiffs allege. Op. 25. Plaintiffs also assert (for the first time) that ARG was directly involved in making the model operational and "cross[ed] the line" as a service provider to become a functional fiduciary. Op. 28-29. But this conclusory argument lacks any facts suggesting ARG's control over any of plaintiffs' assets.

In short, plaintiffs have an obligation to allege in their Complaint facts suggesting defendants' control over plaintiffs' plan assets. Because plaintiffs failed to allege any such facts against ARG and BRRC, those defendants must be dismissed.

## IV.   THE GUAM CONTRACT BARS ITS CLAIMS.

Guam's claims based on negligence and fiduciary breach must be dismissed because they are precluded by Guam's agreement with ARIM. Mot. 20 (citing Rubin Decl. Ex. B at 10; Rubin Decl. Ex. D at 4; Rubin Decl. Ex. E at 4). That agreement, which incorporates the Schwab Mutual Fund Documents, precludes any claim absent willful misfeasance, bad faith, or gross negligence. *Id.* Plaintiffs argue that "Mutual Fund Documents" do not include the Subadviser Agreements that include this limitation. Op. 37. Plaintiffs are incorrect. The Subadviser Agreements were specifically incorporated by reference into the fund's registration statement, which includes the prospectus.[15] "Mutual Fund Documents" are defined to include the prospectus. Rubin Decl.

---

[14] Plaintiffs' brief expands on those factual allegations to make the unfounded argument that ARG "controls" the other defendants. Op. 23. Building on this fictional allegation, plaintiffs argue that ARG is liable for the other defendants' breaches based on an agency relationship. But, of course, plaintiffs never alleged the existence of any agency relationship. Op. 30.

[15] *See, e.g.*, Laudus Trust, Registration Statement (Sept. 2009), Part C, Item 16, *available at* http://www.sec.gov/Archives/edgar/data/832545/000095012309034106/f53305nv14.htm; Laudus Trust, Registration Statement (June 2004), Part C, Item 23, *available at* http://www.sec.gov/Archives/edgar/data/832545/000104746904007661/a2130178z485apos.txt.

1  Ex. B at 3. Thus, the Subadviser Agreements are part of the Mutual Fund Documents, and there-

2  fore form a part of the Investment Management Agreement with Guam.

3  **V.    THE PROHIBITED TRANSACTION CLAIM FAILS.**

4      Plaintiffs urge a dramatic expansion of ERISA prohibited transaction liability. Under their

5  view, *any* fiduciary breach by a party that receives management fees would constitute a prohi-

6  bited transaction. Such a holding would make Section 406(b) liability coextensive with a fidu-

7  ciary breach, rendering the provision superfluous. Unsurprisingly, plaintiffs can point to no court

8  that has adopted such expansive liability.[16] This Court should not be the first.

9      Plaintiffs conspicuously ignore defendants' fundamental point (Mot. 22-23) about the alleged

10  ERISA § 406(b)(1) prohibited transaction. As the U.S. Department of Labor has explained by

11  regulation, to which the Court should defer, ERISA § 406(b)(1) is intended to prevent investment

12  fiduciaries from using "the authority, control, or responsibility which makes such person a fidu-

13  ciary *to cause a plan to pay an additional fee to such fiduciary*." 29 C.F.R. § 2550.408b-2(e)(1)

14  (emphasis added). In the context of investment management fees, to assert a violation of Section

15  406(b)(1), the ERISA plaintiffs must show that the defendants exercised fiduciary authority to

16  cause the plans to pay additional fees beyond those to which the plans had already agreed. *Id.*;

17  Department of Labor Advisory Opinion No. 82-41A, 1982 WL 21224 (Aug. 12, 1982) (applying

18  the regulation, and finding no Section 406(b)(1) prohibited transaction where the investment fi-

19  duciaries were independent from the plan fiduciaries who decided to make the investments and

20  pay the associated fees). The ERISA plaintiffs have not – and cannot – make such a showing,

21  and thus the alleged claim of a prohibited transaction should be dismissed.

22  **VI.    PLAINTIFFS MUST PROVIDE A MORE DEFINITE STATEMENT.**

23      If the Investor claims are not dismissed, plaintiffs must provide a more definite statement.

24  State laws will differ in ways material to defendants' ability to answer this Complaint. Some

25  _____

26  [16] Plaintiffs' reliance on *International Brotherhood of Painters Pension Fund v. Duval*, 925 F.
Supp. 815 (D.D.C. 1996) is misplaced. That case concerned a classic prohibited transaction: the
fiduciary steered the fund to an investment manager who employed the fiduciary's son. *Id.* at

27  824. No such inside transaction is asserted here. And plaintiffs' other cases are even further
afield, as neither deal with investment management fees whatsoever. *See Leigh v. Engle*, 727

28  F.2d 113 (7th Cir. 1984); *Nieto v. Ecker*, 845 F.2d 868 (9th Cir. 1988).

1  state laws, for example, would flatly bar the claims asserted here. *See, e.g.*, *Castellano v. Young*

2  *& Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001) (finding New York fiduciary duty claims

3  preempted by the State's Martin Act). And plaintiffs have already begun their shell game, shift-

4  ing law to suit their needs. *See* Op. 15 n.9 (suggesting SLUSA does not apply because claim *may*

5  arise under foreign law). Under the principles of notice pleading, plaintiffs must specify which

6  law they contend controls.

7  ## CONCLUSION

8     For the foregoing reasons, defendants ARG, ARIM and BRRC respectfully request that the

9  Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, the Court should

10  require the Investor plaintiffs to provide a more definite statement, pursuant to Rule 12(e).

11

12  Dated: August 12, 2011                     MAYER BROWN LLP

13

14                                            By:  /s/ Lee H. Rubin
                                                  Lee H. Rubin
15

16                                            Counsel for Defendants
                                              AXA Rosenberg Group LLC, AXA Rosenberg
17                                            Investment Management LLC, and Barr
                                              Rosenberg Research Center LLC

18

19

20

21

22

23

24

25

26

27

28