BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP
Blair A. Nicholas (Bar No. 178428)
(blairn@blbglaw.com)
Niki L. Mendoza (Bar No. 214646)
(nikim@blbglaw.com)
Benjamin Galdston (Bar No. 211114)
(beng@blbglaw.com)
David Kaplan (Bar No. 230144)
(davidk@blbglaw.com)
Paul M. Jonna (Bar No. 265389)
(paulj@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:  (858) 793-0070
Facsimile:   (858) 793-0323

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Steven E. Fineman (Bar No. 140335)
(sfineman@lchb.com)
Rachel Geman (admitted *pro hac vice*)
(rgeman@lchb.com)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

*Interim Co-Lead Plaintiffs' Counsel*

*[Additional Counsel Appear on Signature Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re AXA ROSENBERG INVESTOR LITIGATION | Master File No. CV 11-00536 JSW |
| | **CLASS ACTION** |
| This Document Relates To:<br><br>ALL ACTIONS. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED RELIEF**<br><br>Date:  February 17, 2012<br>Time:  9:00 a.m.<br>Location:  Courtroom 11, 19th Floor<br>The Honorable Jeffrey S. White |

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ........................................................................... 1

I.    STATEMENT OF FACTS ........................................................................... 1

      A.    Background .................................................................................. 1

      B.    Procedural History ...................................................................... 2

      C.    Settlement Negotiations .............................................................. 3

II.   TERMS OF THE SETTLEMENT .............................................................. 3

      A.    The Class ...................................................................................... 3

      B.    Monetary Relief ........................................................................... 4

      C.    Plan Of Allocation ...................................................................... 4

      D.    Notice And Administration Of Settlement .................................. 5

      E.    Submission Of Claims, Exclusions, And Objections To The
            Settlement ..................................................................................... 5

      F.    Release ......................................................................................... 5

      G.    Attorneys' Fees And Costs And Settling Plaintiffs' Service Awards ......... 6

III.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .................. 6

      A.    Class Action Settlement Procedure ............................................. 6

      B.    The Settlement Satisfies The Criteria For Preliminary Approval ............... 8

            1.    The Strength Of Plaintiffs' Claims Balanced Against The
                  Risk, Expense, Complexity, And Likely Duration Of
                  Further Litigation Favors Approval Of The Settlement .................. 8

            2.    The Settlement Provides Substantial Relief For Class
                  Members ........................................................................... 9

            3.    The Stage Of Proceedings And Discovery Thus Far Has
                  Enabled  Sufficient Evaluation Of The Merits Of The
                  Claims ............................................................................... 9

            4.    Counsel Are Experienced In Litigation Of Class Cases ............... 10

            5.    The Settlement Is The Product Of Serious, Informed, And
                  Arm's-Length Negotiations ................................................. 10

IV.   CERTIFICATION OF THE CLASS IS APPROPRIATE .............................. 11

      A.    Numerosity ................................................................................... 11

      B.    Commonality ................................................................................ 11

      C.    Typicality ..................................................................................... 12

      D.    Adequacy ...................................................................................... 12

      E.    Predominance And Superiority .................................................... 12

**TABLE OF CONTENTS**
(continued)

Page

V.    PROPOSED PLAN OF NOTICE ........................................................................... 13

VI.   FINAL APPROVAL HEARING ........................................................................... 13

VII.  CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Brailsford v. Jackson Hewitt Inc.*,
No. 06-cv-700, 2007 WL 1302978 (N.D. Cal. May 3, 2007) .................................................... 12

*Browning v. Yahoo! Inc.*,
No. 04-cv-1463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) .............................................. 11

*Chun–Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................................................... 8

*Chun-Hoon v. McKee Foods Corp.*,
No. 05-cv-620, 2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ................................................ 7

*Churchill Vill. LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................................................... 6, 8

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 6

*Delagarza v. Tesoro Refining and Marketing Co.*,
No. 09-cv-5803, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) ............................................ 11

*Glass v. UBS Fin. Servs., Inc.*,
No. 06-cv-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
*aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) ............................................................................ 10

*Haddock v. Nationwide Fin. Services, Inc.*,
262 F.R.D. 97 (D. Conn. 2009) ............................................................................................ 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................... 8, 10, 12

*In re Critical Path, Inc.*,
No. 01-cv-551, 2002 WL 32627559 (N.D. Cal. June 18, 2002) .............................................. 9

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ................................................................................................. 9

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ................................................................................................. 6

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................. 7

*In re TD Ameritrade Account Holder Litigation*,
Nos. 07-cv-2852, 07-cv-4903, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ....................... 10

*Lewis v. Starbucks Corp.*,
No. 07-cv-490, 2008 WL 4196690 (E.D. Cal. 2008) ............................................................. 13

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234 (9th Cir. 1998)........................................................................ 9

4

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*

5

244 F.3d 1152 (9th Cir. 2001).......................................................................... 12

6

*Ortiz v. Fibreboard Corp.,*

7

527 U.S. 815 (1999)........................................................................................ 11

*Pelletz v. Weyerhaeuser Co.,*

8

255 F.R.D. 537 (W.D. Wash. 2009) ............................................................... 10

9

*Rodriguez v. West Publ'g Corp.,*

10

563 F.3d 948 (9th Cir. 2009)............................................................................. 8

*San Francisco NAACP v. San Francisco Unified School Dist.,*

11

59 F. Supp. 2d 1021 (N.D. Cal. 1999) ............................................................. 6

12

*Thieriot v. Celtic Ins. Co.,*

13

No. C10-04462LB, 2011 WL 1522385 (N.D. Cal. April 21, 2011) ................ 11

*Wren v. RGIS Inventory Specialists,*

14

No. 06-cv-5778, 2011 WL 1230826 (N.D. Cal. April 1, 2011)........................ 9

15

*Young v. Polo Retail, LLC,*

16

No. 02-cv-4546, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ...................... 7

**RULES**

17

18

Fed. R. Civ. Proc. Rule 23 ...................................................................... passim

19

20

**TREATISES**

21

4 Herbert B. Newberg & Alba Conte (4th ed. 2002), *Newberg on Class Actions* .................... 6, 13

Manual for Complex Litigation (Fourth) (2004) ....................................................... 6, 7

22

23

24

25

26

27

28

1

**SUMMARY OF THE ARGUMENT**

2      Plaintiffs Government of Guam Retirement Fund ("Government of Guam"), Sacramento

3   County Employees' Retirement System ("Sacramento"), Board of Trustees of the National

4   Elevator Industry Health Benefit Fund ("NEI Health Benefit Fund"), and Board of Trustees of the

5   Pipefitters Local 636 Defined Benefit Pension Fund ("Pipefitters Pension Fund") ("Named

6   Plaintiffs" or "Plaintiffs") respectfully move this Court for preliminary approval of the Stipulation

7   of Settlement reached with Defendants AXA Rosenberg Investment Management LLC

8   ("ARIM"), Barr Rosenberg Research Center LLC ("BRRC"), AXA Rosenberg Group LLC

9   ("ARG"), and Barr Rosenberg ("Rosenberg") ("Defendants").[1]

10     Plaintiffs' Complaint alleges that a coding error negatively affected the performance of

11  Defendants' computer-driven investment system for over two years, causing investment losses for

12  the Class.  During the period the error was in effect and its aftermath, including the period after

13  Defendants detected the error, Defendants allegedly received substantial investment management

14  fees.  Plaintiffs allege common-law claims and claims under the Employee Retirement Income

15  Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Following briefing on Defendants'

16  motions to dismiss and informal discovery, the parties reached this proposed Settlement with the

17  assistance of former federal District Court Judge and mediator Layn R. Phillips.

18     The question at the preliminary approval stage is whether a settlement is within the range

19  of reasonableness such that notice to the class of the settlement's terms and conditions and the

20  scheduling of a final approval hearing are appropriate.  The proposed $65 million Settlement that

21  resolves all the claims in this case marks a substantial recovery for the Class in light of the risks

22  of ongoing litigation.  The terms of the Settlement, negotiated at arm's-length, merit distribution

23  of Notice to the Class and review at a fairness hearing.  *See*, *e.g.*, *In re Tableware Antitrust Litig.*,

24  484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

25  1027 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

26

27

28

---

[1] All capitalized terms in this memorandum shall have the meaning as specified in the Stipulation of Settlement and its attachments, filed simultaneously herewith.

I.     **STATEMENT OF FACTS**

A.     **Background**

AXA Rosenberg operates as an integrated investment management firm consisting of a parent holding company and its subsidiaries and affiliates, including AXA Rosenberg Investment Management LLC ("ARIM"), Barr Rosenberg Research Center LLC ("BRRC"), AXA Rosenberg Group LLC ("ARG"), and AXA Rosenberg-Affiliated Investment Advisers ("Affiliated Advisers").[2]

AXA Rosenberg specializes in "fundamental" quantitative investing, a technique that focuses on company fundamentals, such as earnings, as well as industry and broader economic factors, to identify stocks that are mispriced in the near term relative to their peers.  Plaintiffs' Complaint alleges that all investment decisions with respect to each of the Named Plaintiffs' assets (and those of the Class) were made according to the recommendations of AXA Rosenberg's quantitative computer model.

The Complaint also alleges that in January 2007, while making a periodic upgrade to the model, BRRC programmers introduced a coding error into the heart of the model that caused the model to improperly process information received in decimals with information received in percentages.  The error effectively eliminated information relating to over 54 common risk factors (risks associated with particular industries, countries, and stock fundamentals) and exposed client portfolios to excessive risk.  The error caused nearly half of all AXA Rosenberg client portfolios to incur investment losses that they would not have incurred but for the error.

Plaintiffs' Complaint alleges that the coding error operated undetected until June 2009, when an employee at BRRC discovered it.  BRRC personnel did not immediately bring the error to the attention of ARIM upper management, or to AXA Rosenberg's Global CEO.  AXA Rosenberg's Global CEO was informed of the error by November 2009, shortly after the correction of the error.  Senior management thereafter initiated an internal investigation, which

---

[2] ARG, ARIM, and BRRC (together, "AXA Rosenberg") operate out of shared offices in Orinda, California.  *See* Consolidated Class Action Complaint ("Compl.") ¶¶14-19.  For general factual background, *see* Compl. ¶¶26-42.  Defendants do not admit to the factual allegations in this Motion, and have expressly denied some of the assertions alleged herein.

1   resulted in retention of an outside law firm to investigate the coding error and Defendants'

2   response to the error.  ARIM disclosed the error to the firm's clients on April 15, 2010.  During

3   the entire time period, Defendants received investment management fees.

4        On February 3, 2011, AXA Rosenberg reached a settlement concerning the coding error

5   and surrounding circumstances with the United States Securities and Exchange Commission

6   ("SEC").  Under the agreement with the SEC, AXA Rosenberg was required to pay a $25 million

7   fine to the SEC and to reimburse clients in the amount of $217 million for the impact of the

8   coding error based on a methodology employed by a consulting firm that Defendants had retained

9   to calculate such impact.[3]

10   **B.**    **Procedural History**

11        The Government of Guam filed a class action complaint on February 3, 2011 against

12   Defendants ARG, BRRC, and ARIM alleging common-law breach of fiduciary duty, negligence,

13   and accounting claims on behalf of investors who suffered damages as a result of the coding

14   error.  Dkt. No. 1.  On February 24, 2011, NEI Health Benefit Fund filed a class action complaint

15   against the same Defendants, plus Barr Rosenberg, alleging ERISA claims on behalf of similarly-

16   situated fiduciaries of plans governed by ERISA.  *See The Board of Trustees of the National*

17   *Elevator Industry Health Benefit Fund v. AXA Rosenberg Group LLC, et al*., Case No. 11-cv-

18   0898 (N.D. Cal.) (Dkt. No. 1).  On March 18, 2011, this Court related the Government of Guam

19   and NEI Health Benefit Fund actions.  Dkt. No. 19.  Plaintiffs thereafter filed the operative

20   Consolidated Class Action Complaint ("Complaint") alleging common-law claims of breach of

21   fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, accounting and ERISA

22   claims of breach of the duties of prudence and loyalty, co-fiduciary liability, and prohibited

23   transaction liability.  Dkt. No. 20.[4]

24        On May 31, 2011, Defendants moved to dismiss the Complaint, making four primary

---

25   [3] The SEC found this methodology "not unacceptable."

26   [4] On May 31, 2011, a third class case was filed in this District alleging ERISA claims against
Defendants.  *See Trustees of the Carpenters Pension Fund of Illinois v. AXA Rosenberg Group*

27   *LLC et al.*, Case No. CV11-2594 (N.D. Cal.).  The three cases were consolidated under the
Master File Number CV 11-536 on June 30, 2011.  Dkt. No. 42.  The Named Plaintiffs and

28   Plaintiff Carpenters Pension Fund of Illinois are the "Settling Plaintiffs."

1   arguments: (1) that the common law claims were precluded by the Securities Litigation Uniform

2   Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p; (2) that Plaintiffs could not establish they

3   suffered any injuries beyond what they had already received through Defendants' settlement with

4   the SEC and that Plaintiffs' claim for the return of investment fees was without basis; (3) that

5   certain Defendants did not owe fiduciary or other legal duties to Plaintiffs; and (4) that Plaintiffs'

6   prohibited transaction claim was not a cognizable theory of liability under ERISA.  Dkt. Nos. 27,

7   30.[5]  On July 15, 2011, Plaintiffs opposed Defendants' motions.  On August 12, 2011, Defendants

8   filed replies in support of their motions.

9         **C.**    **Settlement Negotiations**

10      On September 12, 2011, the Settling Parties engaged in a full day of mediated settlement

11   negotiations before the Honorable Layn R. Phillips (Ret.), a former federal District Court Judge

12   and experienced mediator.  The mediation followed extensive briefing related to the motions to

13   dismiss as well as a period of mediation-related discovery, including data analysis with experts

14   and analysis of management fees paid by Plaintiffs and the Class.

15      During the mediation, the parties discussed their relative views of the law and the facts

16   and potential relief for the proposed Class.  The negotiations were adversarial, non-collusive, and

17   at arm's-length. Through the mediated settlement negotiations, the parties reached an agreement

18   in principle and executed a Term Sheet on September 12, 2011.  The parties then negotiated and

19   executed the Stipulation of Settlement ("Stipulation"), and its attachments, on or about

20   November 1, 2011.  A copy of the executed Stipulation is submitted herewith.

21   **II.**    **TERMS OF THE SETTLEMENT**

22      The Settlement's details are contained in the Stipulation and are summarized below for the

23   purposes of preliminary approval.

24         **A.**    **The Class**

25      The "Class," as stipulated by the parties, includes:

26

27   ─────────────────

28   [5] Barr Rosenberg joined in the brief filed by the institutional defendants and also filed a separate brief raising questions related to his individual liability.

(i) all persons and entities (whether consisting of a pooled investment fund or individually managed account) for which AXA Rosenberg Investment Management LLC or an Affiliated Adviser provided investment management or advisory services during the Class Period; and (i) for which a separate account (including sub-accounts) holding cash and/or securities was maintained with a custodian (or administrator or trustee) under that person's or entity's name (other than the pooled investment funds whose investors meet the definition of clause (ii)), or (ii) that signed subscription agreements (or similar documentation) to invest (and were invested) during the Class Period in a pooled investment fund that was sponsored by AXA Rosenberg Investment Management LLC, which fund did not have a board or other non-directed independent trustee(s) with independent fiduciary management responsibility ("Non-Independent Funds").[6]

Stipulation ¶1(h).

## B.   <u>Monetary Relief</u>

Defendants have agreed to pay $65,000,000 into a Settlement Fund for the benefit of the Class.   Stipulation ¶6.   There will be no reversion of any portion of the Settlement Fund to Defendants.   Stipulation ¶11.   The Settlement Fund shall be used to pay any (i) Taxes; (ii) Notice and Administration Costs; (iii) attorneys' fees awarded by the Court; (iv) Litigation Expenses awarded by the Court; (v) service awards awarded by the Court; and (vi) other Court-approved deductions.   The balance remaining in the Settlement Fund (the "Net Settlement Fund") shall be distributed to Authorized Claimants.   Stipulation ¶7.

## C.   <u>Plan Of Allocation</u>

Authorized Claimants will share in the distribution of the Net Settlement Fund under the Plan of Allocation.   Notice ¶26; Stipulation ¶1(b).   If the Plan of Allocation is approved, each Authorized Claimant's share of the Net Settlement Fund will depend on the total number of valid Claim Forms that members of the Class submit to the Claims Administrator, the aggregate amount of those claims relative to the Net Settlement Fund, the amount of fees received by Defendants or an Affiliated Adviser in connection with its investments on behalf of the

---

[6] Excluded from the Class are Defendants and their subsidiaries, parents, affiliates, successors, predecessors, officers and directors, any entity in which any excluded person has a controlling interest, and the legal representatives, spouses, heirs, successors and assigns of any such excluded person, except that funds managed or advised by AXA Rosenberg or affiliates any portion of which are for the benefit of non-affiliated third parties are not excluded.   Also excluded from the Class are any persons or entities who exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Notice.   Stipulation ¶1(h).

Authorized Claimant ("Recognized Fees"), and the amount, if any, that was paid to the Authorized Claimant under the plan of allocation adopted by the SEC ("Recognized Investment Losses"), or, with respect to Non-Independent Funds, the amount paid in connection with the distribution of compensation resulting from the coding error.  Notice ¶27.  As detailed in the Notice, the Plan of Allocation anticipates an allocation of the Net Settlement Fund among the Authorized Claimants on a *pro rata* basis, with one half (50%) of the Net Settlement Fund allocated for payment of aggregate Recognized Investment Losses and the other half (50%) of the Net Settlement Fund allocated for payment of the aggregate Recognized Fees.  Notice ¶¶28-29.

### D.    Notice And Administration Of Settlement

Within 10 business days of entry of the Preliminary Approval Order, Defendants will provide the Claims Administrator (at no cost to the Settlement Fund) information relevant to the claims administration process.  Stipulation ¶¶13-14.  Within 15 business days of entry of the Preliminary Approval Order, the Claims Administrator will mail to Class Members the Notice of Settlement and Proof of Claim Form.  [Proposed] Preliminary Approval Order ¶6.  The proposed Notice provides detailed information regarding, among other things, the reasons for the Settlement, and the Class Members' rights to opt out of the Class, or to object to the Settlement, the Plan of Allocation, or the request for attorneys' fees and reimbursement of litigation expenses.  Information related to the Settlement, such as copies of the Stipulation, Claim Form, Notice, request for attorneys' fees, and Complaint, will also be available on the websites maintained by Lead Counsel.  Notice ¶59.

### E.    Submission Of Claims, Exclusions, And Objections To The Settlement

In order to participate in the Settlement, a Class Member must complete and submit a Claim Form in accordance with the instructions contained therein, postmarked no later than one-hundred and twenty (120) days after the Notice Date.  Notice ¶21.  Any objection to the Settlement or request for exclusion must be filed and received at least 21 days prior to the Final Approval Hearing.  [Proposed] Preliminary Approval Order ¶¶13, 20.

### F.    Release

In exchange for the benefits allowed under the Settlement, Class Members (other than

those who have properly excluded themselves) will release claims against Defendants and their affiliates that were in, or arose out of or relate to, the same facts as those in the Consolidated Complaint.  Stipulation ¶¶3-4.

G.     **Attorneys' Fees And Costs And Settling Plaintiffs' Service Awards**

Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel amounting to not more than 20% of the Settlement Fund. Lead Counsel also will apply to the Court for reimbursement of litigation expenses not to exceed $300,000.  Notice ¶4.  Lead Counsel may also apply for service awards in an amount not to exceed $10,000 for each Settling Plaintiff.  Stipulation ¶20.[7]

III.    **PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED**

A.     **Class Action Settlement Procedure**

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements"); *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (same); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999) (same); 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.41 (4th ed. 2002) (citing cases).  The proposed Settlement in this case is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) (2004) § 21.63 ("*Manual for Compl. Lit.*") describes a three-step procedure for approval of class action settlements that has been adopted by courts within the Ninth Circuit:

---

[7] The motion for attorneys' fees, reimbursement of costs, and service awards (and in support of the Plan of Allocation) will be summarized in the Notice to the Class and filed with the Court a reasonable time before the date for objections.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (Class must have adequate time to review motion for attorneys' fees before deadline for objections).

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *Newberg* § 11.25.

Plaintiffs now request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement.  The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether it is worthwhile to schedule notice to the class of the settlement's terms and a formal fairness hearing at which the court may assess the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  *Id.*

"[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotations and citations omitted).[8]   Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *See Manual for Compl. Lit.* § 13.14.  At the final approval hearing, Class Members may be heard regarding the Settlement and the parties may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See id.* §§ 13.14, 21.632.

---

[8] *See also Young v. Polo Retail, LLC*, No. 02-cv-4546, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (same); *Chun–Hoon v. McKee Foods Corp.*, No. 05-cv-620, 2009 WL 3349549, at * 2 (N.D. Cal. Oct. 15, 2009) (discussing limited preliminary approval review).

**B.    The Settlement Satisfies The Criteria For Preliminary Approval**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable."  *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).  The issue is not whether the settlement could be "better," but whether it is "fair, adequate, and free from collusion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In evaluating the fairness of a settlement at the final approval stage, the district court may consider factors that include the following:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575 (citing *Hanlon*, 150 F.3d at 1026).  Courts also frequently consider the procedure by which the parties arrived at the settlement when assessing the settlement's fairness.  *See*, *e.g*., *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding that "arms-length negotiations, including a day-long mediation . . . indicate that the settlement was reached in a procedurally sound manner").  Plaintiffs will address each of the factors required for final settlement approval in detail in their Motion for Final Approval of the Settlement, to be filed at the close of the Notice period.

While thorough consideration of the requirements for final approval is unnecessary at this stage, an initial preview of the relevant factors indicates that the Settlement proposed here is within the range of reasonableness such that preliminary approval of the Settlement is appropriate.

**1.    The Strength Of Plaintiffs' Claims Balanced Against
The Risk, Expense, Complexity, And Likely Duration
Of Further Litigation Favors Approval Of The Settlement**

Lead Counsel have conducted an extensive investigation relating to the claims and the underlying events and transactions alleged in the Complaint.  Lead Counsel have analyzed evidence adduced during their investigation and in informal discovery and have researched the

1   applicable law with respect to the claims and potential defenses in the case. Entering into

2   mediation, Plaintiffs and Lead Counsel were confident in the strength of their case, but also

3   pragmatic in their awareness of the risks inherent to litigation.  For example, Plaintiffs face the

4   risk of dismissal of certain of their claims at an early stage in this litigation.  As noted above, the

5   resolution of the pending motions to dismiss turns on competing views of, among other things,

6   the requirements of SLUSA and the adequacy of Plaintiffs' pleading of injury.

7        Further, it is by no means clear that Plaintiffs can expect a verdict in their favor on the

8   breach of fiduciary duty and negligence claims in light of questions related to industry norms

9   among quantitative investment firms, particularly with respect to what Defendants characterize as

10  frequent model errors and what constitute reasonable measures to prevent, detect, correct, and

11  disclose them.  And, Plaintiffs must undergo at great expense an effort to collect and process data

12  necessary to generate expert reports regarding damages.  The "battle of experts" that is near

13  certain to ensue would render this endeavor not only expensive, but full of risk.  Even if Plaintiffs

14  did prevail through hard-fought motion practice and at trial, recovery could be delayed for years

15  by an appeal.  The Settlement provides substantial relief to Class Members without further delay.

16       **2.      The Settlement Provides Substantial Relief For Class Members**

17       The $65 million Settlement provides substantial relief to the Class, including the return of

18  some portion of their management fees.  All Class Members who submit valid claims will be

19  eligible for recovery.  Notice ¶¶26-34.  This distribution is fair, adequate, and reasonable.  *See In*

20  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (noting that settlement

21  amounting to only a fraction of potential recovery may still be fair); *Wren v. RGIS Inventory*

22  *Specialists*, No. 06-cv-5778, 2011 WL 1230826, at * 8 (N.D. Cal. April 1, 2011).

23       **3.      The Stage Of Proceedings And Discovery Thus Far**

24       **Has Enabled  Sufficient Evaluation Of The Merits Of The Claims**

25       Courts regularly approve settlements reached relatively early in litigation.  *See, e.g.*, *In re*

26  *Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's

27  significant investigation and research supported settlement approval); *Linney v. Cellular Alaska*

28  *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *In re Critical Path, Inc.*, No. 01-cv-551, 2002 WL

32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing"); *see also Glass v. UBS Fin. Servs., Inc.*, No. 06-cv-4068, 2007 WL 221862, at *15-*16 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. Appx. 452, 457 (9th Cir. 2009).

In this case, Lead Counsel is able to evaluate the strengths and weaknesses of Plaintiffs' claims, particularly given the informal discovery and data analysis that has occurred and the fact that Plaintiffs need not engage in further discovery to prove that the coding error in fact occurred and the timing of certain of the relevant events. *See In re TD Ameritrade Account Holder Litig.*, Nos. 07-cv-2852, 07-cv-4903, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior to significant discovery where the defendant admitted that the data breach that gave rise to the claims occurred).

### 4. Counsel Are Experienced In Litigation Of Class Cases

Counsel for the parties are experienced in the litigation, certification, trial, and settlement of nationwide class action cases involving breach of fiduciary duty and ERISA claims. Lead Counsel are well-positioned to evaluate the strengths and weaknesses of Plaintiffs' case, as well as the appropriate basis upon which to settle it.

### 5. The Settlement Is The Product Of Serious, Informed, And Arm's-Length Negotiations

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 542–43 (W.D. Wash. 2009) (approving settlement "reached after good faith, arms-length negotiations").

As detailed above, the proposed Settlement is the result of a full day of arm's-length mediation and negotiations with retired federal District Court Judge Layn R. Phillips and negotiations between experienced attorneys on both sides, including defense counsel from Mayer Brown LLP, Wilson Sonsini Goodrich & Rosati, and Coblentz Patch Duffy & Bass who are

1    familiar with class action litigation and with the legal and factual issues of this case.

2    **IV.    <u>CERTIFICATION OF THE CLASS IS APPROPRIATE</u>**

3         A court may certify a settlement class if a plaintiff demonstrates that all of the

4    prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the

5    requirements of Rule 23(b) have been met.  *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019; *see*

6    *also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999).  "In assessing Rule 23 requirements

7    in the settlement context, a court need not inquire whether the case, if tried, would present

8    intractable management problems[,] for the proposal is that there be no trial."  *Browning v.*

9    *Yahoo! Inc.*, No. 04-cv-1463, 2007 WL 4105971, at *8 (N.D. Cal. Nov. 16, 2007) (internal

10   quotations and alterations omitted); *see also, e.g., Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462,

11   2011 WL 1522385 (N.D. Cal. April 21, 2011) (certifying settlement class).  Plaintiffs respectfully

12   request that the Court certify the Class, as stipulated by the parties, for settlement purposes.

13   Stipulation ¶1(h).

14        **A.    <u>Numerosity</u>**

15        The numerosity requirement of Rule 23(a)(1) is satisfied because the Class consists of

16   hundreds of Class Members dispersed over a broad geographical area, and joinder of all such

17   persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).

18        **B.    <u>Commonality</u>**

19        Under Rule 23(a)(2), the requirement of commonality is satisfied if "there are questions of

20   law or fact common to the class."  Commonality requires plaintiffs to demonstrate "that the class

21   members have suffered the same injury."  *Delagarza v. Tesoro Refining and Mktg. Co*., No. 09-

22   cv-5803, 2011 WL 4017967, at * 5 (N.D. Cal. Sept. 8, 2011) (internal quotations omitted).  A

23   single common question of law or fact will suffice to satisfy Rule 23(a).  *Id.*

24        The central question of whether Defendants breached their duties to Plaintiffs is capable

25   of class wide resolution, because it depends upon an examination of Defendants' conduct without

26   regard to the behavior of or individual facts related to members of the Class.  Any dissimilarities

27   among Class Members are irrelevant to the resolution of whether Defendants' measures to

28

prevent, detect, correct, and disclose the coding error satisfied their obligations to the Class.[9]

## C.      Typicality

The typicality requirement requires the claims of representative plaintiffs to be "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3). Typicality does not require the claims to be identical. *Hanlon*, 150 F.3d at 1020. Plaintiffs' claims are sufficiently parallel with those of absent Class Members, because Plaintiffs' claims are based on Defendants' uniform misconduct that had a similar impact upon all Class Members.

## D.      Adequacy

Plaintiffs must also show that "the representative parties will fairly and adequately protect the interests of the class." Rules 23(a)(4), 23(g). To do so, Plaintiffs must show that (1) neither they nor their counsel have conflicts of interest with other class members, and (2) they will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Class. Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including breach of fiduciary duty and ERISA actions. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (recognizing adequacy of representation based on counsel's extensive relevant experience).

## E.      Predominance And Superiority

Under Rule 23(b)(3), common questions of law or fact must predominate over any individual claims and the class action must be superior to other available methods of adjudication. A "common nucleus of facts and potential legal remedies" satisfies the predominance requirement. *Hanlon*, 150 F.3d at 1022. Here, the common liability questions constitute the

---

[9] *See Brailsford v. Jackson Hewitt Inc.*, No. 06-cv-700, 2007 WL 1302978, at *2 (N.D. Cal. May 3, 2007) (concluding that the determination of whether defendants' conduct amounted to, *inter alia*, a breach of fiduciary duty was an issue common to all members of the class for the purposes of settlement approval); *see also Haddock v. Nationwide Fin. Services, Inc.*, 262 F.R.D. 97, 128 (D. Conn. 2009) (in multi-plan ERISA class action, breach of fiduciary duty claim seeking disgorgement of payments of ERISA plans did not present predominating individual issues; "determining the appropriate [disgorgement] figure for each Class member requires a mechanical calculation using readily available data").

central aspects of the case and can be resolved for all Class members in a single adjudication. Furthermore, "[c]lass certification is not prevented here by the minor variation in each [Class Member]'s measure of damages." *Lewis v. Starbucks Corp*., No. 07-cv-490, 2008 WL 4196690, at *4 (E.D. Cal. Sept. 11, 2008). Resolution of hundreds of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.

## V. PROPOSED PLAN OF NOTICE

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). When a Rule 23(b)(3) class is certified, notice must be the best "that is practicable under the circumstances," including through individual notice to all class members who can be identified, clearly explaining, *inter alia*, the nature of the action, the definition of the class, the implications of a class judgment and how class members may exclude themselves if they wish to do so. Fed. R. Civ. P. 23(c)(2)(B); *see also Newberg* § 8.32.

Direct mailed Notice to Class Members is the best practicable form of notice here because Class Members' addresses are known and/or can be reliably ascertained based on Defendants' records. The content of the proposed Class Notice, attached to the Stipulation as Exhibit A-1, fully complies with due process and Rule 23. It describes the nature of the action and the Settlement terms; defines the Class; provides the date, time, and place of the Final Approval Hearing; advises Class Members regarding the Release that will bind them in the event they do not exclude themselves from the Settlement; describes how Class Members may exclude themselves from or object to the Settlement; and informs the Class of the existence and timing of Lead Counsel's application for attorneys' fees and costs, a Plan of Allocation, and service awards, and of how they may access and object to that application.

## VI. FINAL APPROVAL HEARING

Plaintiffs propose the following schedule for final approval of the Settlement:

- 13 -

| Date | Action |
|------|--------|
| 15 business days after entry of the Preliminary Approval Order | Mailing of Class Notice |
| 35 days before Final Approval Hearing | Deadline for filing of motion in support of final approval of Settlement, Plan of Allocation, and application for attorneys' fees, costs and service awards |
| 21 days before Final Approval Hearing | Deadline for filing and receipt of objections and receipt of requests for exclusion |
| 7 days before Final Approval Hearing | Deadline for filing reply papers in support of final approval of Settlement, Plan of Allocation, and application for attorneys' fees, costs and service awards |
| No earlier than 100 days after entry of Preliminary Approval Order | Final Settlement Approval Hearing/Fairness Hearing |

## VII.   **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and the related relief requested herein.

Respectfully submitted,

Dated: November 1, 2011

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

By:    */s/ Blair A. Nicholas*
BLAIR A. NICHOLAS

Blair A. Nicholas (Bar No. 178428)
(blairn@blbglaw.com)
Niki L. Mendoza (Bar No. 214646)
(nikim@blbglaw.com)
Benjamin Galdston (Bar No. 211114)
(beng@blbglaw.com)
David Kaplan (Bar No. 230144)
(davidk@blbglaw.com)
Paul M. Jonna (Bar No. 265389)
(paulj@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone:  (858) 793-0070
Facsimile:  (858) 793-0323

*Interim Co-Lead Plaintiffs' Counsel*

Dated: November 1, 2011          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                 By:    /s/ Steven E. Fineman
                                        STEVEN E. FINEMAN

                                 Steven E. Fineman (Bar No. 140335)
                                 (sfineman@lchb.com)
                                 Rachel Geman
                                 (rgeman@lchb.com)
                                 250 Hudson Street, 8th Floor
                                 New York, NY 10013-1413
                                 Telephone:  (212) 355-9500
                                 Facsimile:   (212) 355-9592

                                 LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                 Kelly M. Dermody (Bar No. 171716)
                                 (kdermody@lchb.com)
                                 275 Battery Street, 29th Floor
                                 San Francisco, CA 94111-3339
                                 Telephone:  (415) 956-1000
                                 Facsimile:   (415) 956-1008

                                 *Interim Co-Lead Plaintiffs' Counsel*

                                 O'DONOGHUE & O'DONOGHUE LLP
                                 Louis P. Malone, III
                                 4748 Wisconsin Avenue, N.W.
                                 Washington, DC 20016
                                 Telephone:  (202) 361-0041
                                 Facsimile:   (202) 362-2640

                                 *Additional Counsel for Plaintiffs and the Proposed Class*