1 | BERNSTEIN LITOWITZ BERGER
  |    & GROSSMANN LLP
2 | BLAIR A. NICHOLAS (Bar No. 178428)
  | (blairn@blbglaw.com)
3 | NIKI L. MENDOZA (Bar No. 214646)
  | (nikim@blbglaw.com)
4 | BENJAMIN GALDSTON (Bar No. 211114)
  | (beng@blbglaw.com)
5 | DAVID KAPLAN (Bar No. 230144)
  | (davidk@blbglaw.com)
6 | PAUL M. JONNA (Bar No. 265389)
  | (paulj@blbglaw.com)
7 | 12481 High Bluff Drive, Suite 300
  | San Diego, CA 92130
8 | Telephone:  (858) 793-0070
  | Facsimile:  (858) 793-0323
9 |
  | LIEFF CABRASER HEIMANN
10 |    & BERNSTEIN, LLP
  | STEVEN E. FINEMAN (Bar No. 140335)
11 | (sfineman@lchb.com)
  | RACHEL GEMAN (admitted *pro hac vice*)
12 | (rgeman@lchb.com)
  | 250 Hudson Street, 8th Floor
13 | New York, NY 10013-1413
  | Telephone:  (212) 355-9500
14 | Facsimile:   (212) 355-9592

15 | *Co-Lead Plaintiffs' Counsel*

16 | [Additional Counsel Appear on Signature Page]

17 |

18 | UNITED STATES DISTRICT COURT

19 | NORTHERN DISTRICT OF CALIFORNIA

20 | In re AXA ROSENBERG INVESTOR | Master File No. CV 11-00536 JSW
   | LITIGATION
21 | | CLASS ACTION

22 | | **PLAINTIFFS' NOTICE OF MOTION
   | This Document Relates To: | AND MOTION FOR ATTORNEYS'
23 | | FEES, REIMBURSEMENT OF
   | ALL ACTIONS. | EXPENSES, AND SERVICE AWARDS;
24 | | MEMORANDUM OF POINTS AND
   | | AUTHORITIES IN SUPPORT THEREOF**
25 |
   | | Date:        March 30, 2012
26 | | Time:        9:00 a.m.
   | | Location:    Courtroom 11, 19th Floor
27 | | The Honorable Jeffrey S. White

28 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to the Court's Order Preliminarily Approving Settlement, Providing For Notice And Scheduling Settlement Hearing (ECF No. 64) ("Preliminary Approval Order"), on March 30, 2012, at 9:00 a.m., before the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Named Plaintiffs Government of Guam Retirement Fund, Sacramento County Employees' Retirement System, Board of Trustees of the National Elevator Industry Health Benefit Fund, and Board of Trustees of the Pipefitters Local 636 Defined Benefit Pension Fund (collectively, "Named Plaintiffs" or "Class Representatives") will and hereby do move the Court for an order pursuant to Fed. R. Civ. P. 23(e) granting the instant Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Joint Declaration of Lead Counsel in Support of Plaintiffs' Motion for Final Approval of Class Settlement and Plan of Allocation and Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards; all pleadings and papers filed herein; arguments of counsel; and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1.  Whether the requested attorneys' fees of 18% of the Settlement Fund (minus Court-approved litigation expenses) should be approved.

2.  Whether the requested reimbursement of expenses in the amount of $185,055 should be approved.

3.  Whether the requested Service Awards in the amount of $10,000 for each Settling Plaintiff should be approved.

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ i

SUMMARY OF THE ARGUMENT ................................................................................... vi

I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................... 1

    A.    Background ................................................................................. 1

    B.    Procedural History ..................................................................... 1

    C.    The Settlement ........................................................................... 3

II.    LEAD COUNSEL'S REQUEST FOR 18% OF THE COMMON FUND IS WELL SUPPORTED ................................................................................ 3

    A.    Application Of The Percentage-Of-The-Fund Method Is Appropriate. ............................................................................. 4

    B.    The Percentage-Of-The-Fund Analysis Supports Lead Counsel's Fee Request. ................................................................ 6

        1.    Lead Counsel Have Obtained An Excellent Result For The Class. ................................................................................. 6

        2.    The Risk Involved With The Litigation Supports The Fee Request. ............................................................................... 7

        3.    The Skill Required And Quality Of Counsel's Work Supports The Fee Request. ................................................... 8

        4.    Lead Counsel's Willingness To Work On Contingency Supports The Fee Request. ................................................... 9

        5.    The Requested Fee Comports With, Or Is Less Than, Fees In Similar Actions. .............................................................. 9

    C.    A Lodestar-Multiplier Cross-Check Confirms The Reasonableness Of The Requested Fee. ..................................... 10

        1.    Plaintiffs' Counsel's Lodestar Is Reasonable. .............. 11

        2.    A Significant Multiplier Is Warranted. ......................... 12

III.    THE PAYMENT OF COSTS IS FAIR AND REASONABLE. ........................ 14

IV.    THE REQUESTED SERVICE AWARDS FOR THE SETTLING PLAINTIFFS ARE REASONABLE. ................................................... 14

V.    CONCLUSION ................................................................................ 15

- ii -

# TABLE OF AUTHORITIES

Page

## CASES

*Adderley v. NFL Players Ass'n*,
2009 WL 4250786 (N.D. Cal. Nov. 23, 2009) .................................................................. 9, 10

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
1991 WL 427893 (S.D. Cal. May 6, 1991) ........................................................................ 10

*Bd. of Trs. of the Nat'l Elevator Ind. Health Benefit Fund v. AXA Rosenberg Grp., LLC*,
Case No. 11-cv-0898 (N.D. Cal.) ...................................................................................... 1

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................................................... 4

*Craft v. San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................................ 11, 13

*Florin v. NationsBank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ............................................................................................... 5

*Glass v. UBS Fin. Servs.*,
2007 WL 221862(N.D. Cal. Jan. 26, 2007) .................................................................... 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................................. 4, 11, 13

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) ....................................................................................... 15

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) .................................................................. 11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................................................... 6

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ................................................................................. 5

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............................................................................. 4, 5, 6, 11

*In re Broadcom Corp. Sec. Litig.*,
2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 12, 2005) ............................................... 8

*In re Charles Schwab Corp. Sec. Litig.*,
2011 WL 1481424 (N.D. Cal. April 19, 2011) ............................................................... 6, 7

*In re Corel Corp. Inc. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ................................................................................ 7

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993) ................................................................................... 7

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ................................................................................... 10

*In re Gen. Instruments Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................................ 7

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................................. 10

**TABLE OF AUTHORITIES**
(continued)

Page

*In re HPL Techs., Inc. Sec. Litig.*,
366 F. Supp. 2d 912 (N.D. Cal. 2005) ................................................................. 8

*In re LDK Solar Secs. Litig.*,
2010 WL 3001384 (N.D. Cal. July 29, 2010)....................................................... 15

*In re M.D.C. Holdings Sec. Litig.*,
1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ....................................................... 10

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................... 14

*In re Med. X-Ray Film Antitrust Litig.*,
1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ........................................................... 7

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)........................................................................... 7, 10

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010)............................................................................... 4

*In re Merry-Go-Round Enters.*,
244 B.R. 327 (Bankr. D. Md. 2000) ................................................................... 14

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... passim

*In re Pac. Sec. Enter. Litig.*,
47 F.3d 373 (9th Cir. 1995)................................................................................. 9

*In re Pub. Serv. Co. of New Mexico*,
1992 WL 278452 (S.D. Cal. July 28, 1992) ....................................................... 10

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) ................................................................. 13

*In re RJR Nabisco, Inc. Sec. Litig*,
1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...................................................... 13

*In re The PMI Group, Inc. Secs. Litig.*,
No. 08-1405 (N.D. Cal. Dec. 20, 2010) .............................................................. 13

*In re Wash. Pub. Power Supply Sys. Sec Litig.*,
19 F.3d 1291 (9th Cir. 1994)............................................................................. 12

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................... 10

*Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*,
2009 WL 3562871 (N.D. Cal. Oct. 27, 2009)..................................................... 11

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975)............................................................................... 11

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................................... 5, 10

*Kolar v. Rite Aid Corp.*,
2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) ..................................................... 10

*Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (2000) ............................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)............................................................................ 14

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989)............................................................ 4, 6

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)............................................................ 15

*Ross v. U.S. Bank Nat'l Ass'n*,
  2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ................................ 15

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990)............................................................ 6

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)............................................................ 4

*Steiner v. Am. Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. 2007) ................................................ 13

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993)........................................................... 6, 9

*Trs. of the Carpenters Pension Fund of Ill. v. AXA Rosenberg Grp., LLC*,
  Case No. CV11-2594 (N.D. Cal.) ...................................................... 2

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)................................................... passim

**STATUTES, RULES & REGULATIONS**

Employee Retirement Income Security Act of 1974 ("ERISA"),
  29 U.S.C. § 1001, *et seq*. ................................................................. 1

Securities Litigation Uniform Standards Act of 1998 ("SLUSA"),
  15 U.S.C. § 77p ................................................................................ 2

Fed. R. Civ. P. 23(e)............................................................................ 4

**OTHER AUTHORITIES**

D. Martin, V. Juneja, T. Foster, F. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions*?
  (NERA Nov. 1996) ......................................................................... 10

Theodore Eisenberg & Geoffrey P. Millery, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*,
  7 Journal of Empirical Legal Studies 248 (2010) ............................. 5

962631.6                                    - v -

NOT. OF MOT. & MOT. FOR ATTYS' FEES, REIMBURSEMENT
OF EXPENSES, AND SERVICE AWARDS; MEM. IN SUPPORT
MASTER FILE NO. CV 11-00536 JSW

**SUMMARY OF THE ARGUMENT**

Counsel for plaintiffs Government of Guam Retirement Fund, Sacramento County Employees' Retirement System, Board of Trustees of the National Elevator Industry Health Benefit Fund, and Board of Trustees of the Pipefitters Local 636 Defined Benefit Pension Fund ("Named Plaintiffs" or "Plaintiffs") respectfully move this Court for: (a) an award of attorneys' fees in the amount of $11,666,690 for distribution to Plaintiffs' Counsel, which is 18% of the common fund created for the Class net of litigation expenses; (b) reimbursement from the Settlement Fund[1] of Plaintiffs' Counsel's reasonable out-of-pocket expenses of $185,055 necessarily incurred in the prosecution of the case; and (c) Service Awards to the five Settling Plaintiffs of $10,000 each.

The Stipulation of Settlement, providing for a Settlement Fund of $65 million, reflects the expertise, skill, and efficient and effective case management of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff Cabraser") ("Lead Counsel"), as well as other plaintiffs' counsel involved ("Plaintiffs' Counsel"). The contingency fee lawsuit involved risky, unusual litigation about a computer error in Defendants' quantitative investment system.[2] The Settlement provides this global and domestic Class of investors and ERISA plans with tens of millions of dollars above the amount that Defendants and the Securities and Exchange Commission ("SEC") had earlier treated, in a separate settlement, as constituting *full* recovery of damages caused by the computer error. Lead Counsel also negotiated for the return of a portion of the investment management fees that the Class paid to Defendants and their affiliates.

In light of this strong result, and for the reasons discussed below, Plaintiffs respectfully submit that their well-supported requests should be granted.

---

[1] Unless otherwise indicated, the capitalized terms in this memorandum shall have the same meaning as specified in the Stipulation of Settlement. ECF No. 59.

[2] Defendants are AXA Rosenberg Investment Management LLC ("ARIM"), Barr Rosenberg Research Center LLC ("BRRC"), AXA Rosenberg Group LLC ("ARG") (collectively, "AXA Rosenberg"), and Barr Rosenberg ("Rosenberg").

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.      Background

This litigation arose from a coding error negatively affecting the performance of Defendants' computer-driven investment system for over two years, causing investment losses for the Class.[3]  Plaintiffs allege that the error effectively eliminated information relating to over 54 risk factors associated with particular industries, countries, and stock fundamentals that the computer model was intended to incorporate to identify mispriced stocks.  During the entire period of time the error was in effect and in its aftermath, Class Members paid substantial investment management fees to Defendants and their affiliates.

On February 3, 2011, AXA Rosenberg reached a settlement with the SEC.  Under the agreement with the SEC, AXA Rosenberg was required to pay a $25 million fine to the SEC and to reimburse clients in the amount of $217 million, based on a methodology employed by a consulting firm Defendants had retained to calculate such impact.  The SEC found this methodology "not unacceptable."

### B.      Procedural History

After a period of pre-filing investigation, the Government of Guam filed a class action complaint on February 3, 2011, against Defendants ARG, BRRC, and ARIM, alleging common-law breach of fiduciary duty, negligence, and accounting claims on behalf of investors who suffered damages as a result of the coding error.  ECF No. 1.  On February 24, 2011, also after a period of pre-filing investigation, NEI Health Benefit Fund filed a class action complaint against the same Defendants, plus Barr Rosenberg, alleging claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., on behalf of similarly-situated fiduciaries of plans governed by ERISA.[4]

Plaintiffs' counsel in these two lawsuits worked quickly and efficiently to coordinate

---

[3] *See* Consolidated Class Action Complaint at ¶¶26-42.  For fuller background, Plaintiffs also refer the Court to the Memorandum of Law In Support of Motion for Preliminary Approval of Class Settlement and Related Relief, ECF No. 58.

[4] *See Bd. of Trs. of the Nat'l Elevator Ind. Health Benefit Fund v. AXA Rosenberg Group LLC*, Case No. 11-cv-0898 (N.D. Cal.) (ECF No. 1).

1    efforts, and, on March 18, 2011, this Court related the Government of Guam and NEI Health

2    Benefit Fund actions and appointed Bernstein Litowitz and Lieff Cabraser as Interim Co-Lead

3    Counsel. ECF Nos. 18, 19.[5] Plaintiffs thereafter filed the operative Consolidated Class Action

4    Complaint ("Complaint") alleging common-law claims of breach of fiduciary duty, aiding and

5    abetting breach of fiduciary duty, negligence, accounting and ERISA claims of breach of the

6    duties of prudence and loyalty, co-fiduciary liability, and prohibited transaction liability. ECF

7    No. 20.[6]

8        On May 31, 2011, Defendants moved to dismiss the Complaint, arguing primarily (among

9    other arguments) that the Class had suffered no injuries, that their common-law claims were

10   precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C.

11   § 77p, that Defendants owed no fiduciary or other duties to the Class, and that Plaintiffs had no

12   prohibited transaction claim under ERISA. ECF Nos. 27, 30. Plaintiffs opposed the motions on

13   July 15, 2011. On August 12, 2011, Defendants filed replies. ECF Nos. 49, 50.

14       During the period of briefing the motion to dismiss and after, Lead Counsel sought

15   specific data discovery about Defendants' complex investment system and information about

16   investment management fees that Defendants had collected. In response to Lead Counsel's data

17   requests, and in anticipation of mediation, Lead Counsel obtained from Defendants certain

18   confidential data relating to how AXA Rosenberg's proprietary trading system operated and how

19   the computer error affected the model and the trades that occurred during the relevant time

20   period. Lead Counsel retained and worked closely with experts to analyze this data. *See* Joint

21   Declaration of Lead Counsel in Support of Plaintiffs' Motion for Final Approval of Class

22   Settlement and Plan of Allocation and Motion for Attorneys' Fees, Reimbursement of Expenses,

23   and Service Awards ("Joint Decl.") ¶¶19-22. The informal discovery in this case also included a

24   _____

     [5] On December 6, 2011, the Court appointed Bernstein, Litowitz, Berger & Grossmann LLP and
25   Lieff, Cabraser, Heimann & Bernstein, LLP as Lead Counsel for Settlement purposes. ECF
     No. 64.

26   [6] On May 31, 2011, a third class case was filed in this District alleging ERISA claims against
     Defendants. *See Trs. of the Carpenters Pension Fund of Ill. v. AXA Rosenberg Grp. LLC*, Case
27   No. CV11-2594 (N.D. Cal.). The three cases were consolidated under the Master File Number
     CV 11-536 on June 30, 2011. ECF No. 42. The Named Plaintiffs and plaintiff Carpenters
28   Pension Fund of Illinois are the "Settling Plaintiffs."

962631.6                                - 2 -

NOT. OF MOT. & MOT. FOR ATTYS' FEES, REIMBURSEMENT
OF EXPENSES, AND SERVICE AWARDS; MEM. IN SUPPORT
MASTER FILE NO. CV 11-00536 JSW

meeting early in the litigation between counsel, with experts from both sides present.  *Id.* ¶17.

On September 12, 2011, the Settling Parties engaged in a full day of mediated settlement negotiations before the Honorable Layn R. Phillips (Fmr.), a former federal District Court Judge and experienced mediator.  When the parties were still at an impasse late in the day, Judge Phillips made a mediator's proposal that the parties independently accepted.  Joint Decl. ¶¶24-26. The parties executed a Term Sheet that same day and, after a period of negotiation, executed the Stipulation of Settlement on November 1, 2011.  *Id.*

### C.  The Settlement

The Settlement provides for Defendants' payment of $65 million into a Settlement Fund for the benefit of the Class. If the Court approves Lead Counsel's proposed Plan of Allocation, as addressed more fully in the Memorandum of Law in Support of Final Approval Of Class Action Settlement ("Final Approval Brief"), filed concurrently, the Net Settlement Fund will be divided evenly between investment management fees paid by the Class and losses resulting from the error itself.

This Court preliminarily approved the Settlement on December 6, 2011, and ordered the dissemination of Notice to the Class.  ECF No. 64.  Among other information, the Notice informed the Class of Lead Counsel's intention to apply for an award of attorneys' fees to Plaintiffs' Counsel amounting to not more than 20% of the Settlement Fund (net of approved litigation expenses), reimbursement of litigation expenses not to exceed $300,000, and Service Awards for the Settling Plaintiffs.  Notice ¶41.  As of the present date, no Class Member has objected to the attorneys' fees and costs request or the requested Service Awards (or to any other aspect of the Settlement).[7]

## II.  LEAD COUNSEL'S REQUEST FOR 18% OF THE COMMON FUND IS WELL SUPPORTED

Lead Counsel seeks an unopposed award of attorneys' fees of $11,666,690, or 18% of the Settlement Fund of $65 million minus requested expenses.  This figure is based on the lowest

---

[7] The deadline for Class Members to file objections is March 9, 2012.  Plaintiffs will address the substance of any objections relating to fees, if any, in the reply briefing.

1   percentage fee provided in any of the fee agreements the Named Plaintiffs negotiated with Lead

2   Counsel. Joint Decl. ¶40.

3          "Attorneys' fees provisions included in proposed class action settlement agreements are,

4   like every other aspect of such agreements, subject to the determination whether the settlement is

5   'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th

6   Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). Where counsel for a class seek fees from a common

7   fund, courts within the Ninth Circuit have discretion to use one of two methods to determine

8   whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier." *Id.* at 963-

9   64; *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010);

10  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*,

11  150 F.3d 1011, 1029 (9th Cir. 1998). "Though courts have discretion to choose which calculation

12  method they use, their discretion must be exercised so as to achieve a reasonable result." *In re*

13  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Lead Counsel's request

14  for fees is reasonable under—and warrants application of—the percentage-of-the-fund analysis, a

15  conclusion confirmed by the lodestar-multiplier cross-check that courts in the Ninth Circuit

16  typically perform.

17         **A.      Application Of The Percentage-Of-The-Fund Method Is Appropriate**

18         The common fund doctrine rests on the understanding that attorneys should normally be

19  paid by their clients. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States

20  Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common

21  fund . . . is entitled to a reasonable attorney's fee from the fund as a whole."); *Paul, Johnson,*

22  *Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer

23  who creates a common fund is allowed an **extra** reward, beyond that which he has arranged with

24  his client, so that he might share the wealth of those upon whom he has conferred a benefit.")

25  (emphasis in original); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal.

26  2008) (considering attorneys' fees in securities settlement and noting that the common fund

27  doctrine is "designed to prevent unjust enrichment by distributing the costs of litigation among

28  those who benefit from the efforts of the litigants and their counsel.").

Unsurprisingly, given this equitable principle, courts prefer a percentage-of-the-fund model over a lodestar-multiplier approach in cases where it is possible to ascertain the value of the settlement through the existence of a common fund.  *See Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Omnivision*, 559 F. Supp. 2d at 1046 ("use of the percentage method in common fund cases appears to be dominant."); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (same); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-78 (N.D. Cal. 1989) (discussing advantages of percentage of recovery method in common fund cases).[8]

Further confirming courts' preference for awarding attorneys' fees in class cases on a percentage-of-the-fund-basis, an empirical study based on eighteen years of published opinions on settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that: (1) 83% of cases employed the percentage-of-the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6% from 2003 to 2008.  *See* Theodore Eisenberg & Geoffrey P. Millery, *Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies 248, 267-69 (2010) (attached as Exhibit O to the Joint Decl.).

By contrast, courts rely on the lodestar method under circumstances not applicable here, *i.e.*, when "there is no way to gauge the net value of the settlement or of any percentage thereof." *Hanlon*, 150 F.3d at 1029; *Bluetooth*, 654 F.3d at 941 (lodestar appropriate "where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized"). This limited use of the lodestar method relates in part to its potential deterrent effect: "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."  *Vizcaino*, 290 F.3d at 1050 n.5; *see also In re Activision*, 723 F.

---

[8] *See also Florin v. NationsBank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("The terms of ERISA's fee-shifting provision do not purport to control fee awards in cases settled with the creation of a common fund").

- 5 -

1    Supp. at 1378 (observing that application of the lodestar method may encourage "abuses such as

2    unjustified work" and therefore "does not achieve the stated purposes of proportionality,

3    predictability and protection of the class.").

4         For these reasons, Lead Counsel submit that the Court should use the standard percentage-

5    of-the-fund approach to determining the award of attorneys' fees in this action.

6         **B.     The Percentage-Of-The-Fund Analysis Supports Lead Counsel's Fee Request**

7         Lead Counsel's request for $11,666,690 in attorneys' fees—18% of the common fund net

8    of litigation expenses—is fair and reasonable under the circumstances of this case.   The

9    benchmark for an attorneys' fee award in the Ninth Circuit is 25% of the common fund.  *See*

10   *Bluetooth*, 654 F.3d at 942; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993);

11   *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul,*

12   *Johnson*, 886 F.2d at 272.

13        In addition to being lower than the benchmark (due to the fee agreements in this case),

14   Lead Counsel's request is supported by the five factors that federal courts in the Ninth Circuit use

15   to determine the reasonableness of fees when determining what percentage of the fund to award

16   in common fund cases:  (1) the results achieved; (2) the risk involved with the litigation; (3) the

17   skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards

18   made in similar cases.  *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1048; *In re Charles Schwab Corp. Sec.*

19   *Litig.*, 2011 WL 1481424, at *9 (N.D. Cal. April 19, 2011).

20        **1.     Lead Counsel Have Obtained An Excellent Result For The Class**

21        The significant and prompt settlement that Lead Counsel negotiated for the Class supports

22   the fee request.  The Supreme Court has held that in determining the amount of attorneys' fees to

23   award, a court should examine "the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S.

24   424, 436 (1983).  "The overall result and benefit to the class from the litigation is the most critical

25   factor in granting a fee award."  *Omnivision*, 559 F. Supp. 2d at 1046.

26        Lead Counsel have secured $65 million on top of the $217 million Defendants already

27   paid members of the Class, a particularly noteworthy result because Defendants and the SEC

28   treated the earlier settlement as compensating investors in AXA Rosenberg funds for their full

losses resulting from the computer error.  The Settlement Fund also provides the Class with a partial return of the investment management fees the Class Members paid to Defendants and their affiliates over the entire Class Period, including the period before the coding error was even discovered.  The SEC settlement did not address investment management fees at all, and Defendants have asserted that the Class is not legally entitled to both fees and damages.  As Judge Phillips stated in his Declaration, the Settlement "represents an excellent recovery for the Class and a reasonable and fair outcome for all parties involved."  Declaration of Layn R. Phillips (Former U.S. District Court Judge) in Support of Final Approval of Class Action Settlement ("Phillips Decl.") ¶2.

These results support the fee request, particularly when considering that in the settlement context courts have awarded the benchmark (or higher) in cases where plaintiffs obtained only a small percent of the estimated losses at issue.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 452, 459 (9th Cir. 2000) (settlement of only a fraction of potential recovery fair); *Charles Schwab*, 2011 WL 1481424, at *5 (approving settlement recoveries of 35.9 and 23.4 percent of initial estimated damages related to securities claims).[9]

### 2.    The Risk Involved With The Litigation Supports The Fee Request

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).

To prevail in any ongoing litigation of this case, Plaintiffs would be required to successfully litigate a number of untested and evolving legal issues at the center of their liability and damages claims.  In addition to defenses related to Plaintiffs' damages claims, Defendants raised highly-disputed questions relating to SLUSA preclusion of the common-law claims, the

---

[9] *See also In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003) (awarding one-third fee where settlement fund equaled approximately 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (awarding one-third fee where settlement fund equaled approximately 11% of estimated damages); *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *5, 7-8 (E.D.N.Y. Aug. 7, 1998) (awarding one-third fee where recovery was 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% fee where recovery was 10% of damages).

1    extent of Defendants' fiduciary or other obligations to the Class, and the contours of ERISA's

2    prohibited transaction provisions. *See* Defendants' Motion to Dismiss, ECF Nos. 27, 30.

3          Even assuming Plaintiffs' success in connection with the pending motions to dismiss,

4    Plaintiffs would have needed to obtain class certification of a class or classes consisting of

5    international investors as well as domestic investors and ERISA plans.  And, assuming Plaintiffs

6    prevailed on class certification and any summary judgment motions, it was by no means clear that

7    Plaintiffs could have expected a verdict in their favor on the breach of fiduciary duty and

8    negligence claims in light of questions related to industry norms among quantitative investment

9    firms, particularly with respect to what Defendants characterize as frequent model errors and

10   what constitute reasonable measures to prevent, detect, correct, and disclose them.  If Plaintiffs

11   prevailed through hard-fought motion practice and at trial, recovery could have been delayed for

12   years (or rejected) by an appeal.  As courts recognize, significant risks of non-recovery are

13   inherent to any trial of complex financial claims.  *See Omnivision*, 559 F. Supp. 2d at 1047

14   (noting low rate of success for plaintiffs litigating securities class actions to verdict).

15         A fee award of 18% of the Settlement (net litigation expenses, a further conservative

16   reduction) is appropriate when considered against the risks of the case.  *See, e.g.*, *In re Broadcom*

17   *Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41993, at *19 (C.D. Cal. Sept. 12, 2005) (25% fee

18   award appropriate where case involved complex factual and legal disputes where "[m]uch of the

19   law governing the parties' claims and defenses is sparse, unsettled and still evolving.").

20              **3.      The Skill Required And Quality Of**
                          **Counsel's Work Supports The Fee Request**
21

22         The prosecution and management of a complex class action requires advanced legal skills

23   and abilities that are to be considered when evaluating fees.  *See Omnivision*, 559 F. Supp. 2d at

24   1047.  "[A] common fund fee award serves to reward counsel for creativity and skill in enlarging

25   a settlement fund beyond what was thought possible or likely at the inception of the case."  *In re*

26   *HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal. 2005).

27          Lead Counsel are experienced class action litigators who have successfully prosecuted

28   complex securities and financial cases.  *See* Joint Decl. ¶42.  Lead Counsel briefed a number of

1   complex issues in evolving areas of the law, worked closely with experts on data analysis, and

2   efficiently and vigorously negotiated a $65 million Settlement that Defendants are paying above

3   and beyond what Defendants already paid out as the purported full recovery.  Counsel's skill and

4   expertise, reflected in the prompt and significant Settlement, support the fee request.  *See also*

5   Phillips Decl. ¶8 (describing Lead Counsel's skill and professionalism).

### 4. Lead Counsel's Willingness To Work On Contingency Supports The Fee Request

8       The requested fee is also justified by the financial risks undertaken by Lead Counsel in

9   representing the Class on a contingency basis.  *See Vizcaino*, 290 F.3d at 1050 (class counsel's

10  representation of the class on a contingency basis is relevant to the assessment of the fee); *Torrisi*,

11  8 F.3d at 1377 (affirming 25% fee as reward to counsel "for carrying the financial burden of the

12  case, effectively prosecuting it and, by reason of their expert handling of the case, achieving a just

13  settlement for the class.").  In spite of the risks in this case, as outlined in Section B(2) above,

14  Lead Counsel invested significant resources in the case on behalf of the Class.  Lead Counsel

15  thoroughly investigated the case and evaluated the claims of potential lead plaintiffs.  Joint Decl.

16  ¶9.  After the lawsuits were filed, Lead Counsel, among other things, opposed Defendants'

17  extensive motions to dismiss, obtained data discovery for mediation, worked with experts on data

18  analysis, and extensively prepared for and conducted mediation-negotiated settlement

19  discussions.  Had discovery progressed, Lead Counsel were prepared to analyze at great expense

20  the full data set necessary to generate complete expert reports.  Joint Decl. ¶¶10-26.

### 5. The Requested Fee Comports With, Or Is Less Than, Fees In Similar Actions

23      The requested fee of 18% is conservative, representing the lowest fee amount in all the fee

24  agreements Lead Counsel had with the Named Plaintiffs.  It is also consistent with, or lower than,

25  fees awarded in other complex investor and ERISA cases, including cases settled at an early stage

26  of litigation.  *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (upholding fee

27  award of one-third on the basis of complexity of issues faced and risks involved where case

28  settled before decision on motion to dismiss); *Adderley v. NFL Players Ass'n*, 2009 WL 4250786,

at *2 (N.D. Cal. Nov. 23, 2009) (approving fee of 20% of $26.25 million fund in case involving common law breach of fiduciary duty claim, even where court criticized counsel's performance); *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000-01 (D. Minn. 2005) (awarding fee of 25% of fund in ERISA breach of fiduciary duty settlement that occurred prior to summary judgment, noting that claims relate to "an area of developing and controversial law"); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502-04 (E.D. Mich. 2008) (awarding fee of 18% of securities fraud fund of $284 million and holding 20% of ERISA fund of $47 million in reserve for fees; settlement occurred prior to decision on motions to dismiss); *Kolar v. Rite Aid Corp.*, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003) (awarding over $5 million in attorney fees from an ERISA settlement of which only $10,760,000 of the award was cash).

Despite the 25% benchmark, it is not uncommon for courts to issue awards exceeding that figure, particularly in financial cases. In a 1996 analysis of 433 shareholder class actions conducted by the National Economic Research Associates ("NERA"), NERA concluded that "[r]egardless of case size, fees average approximately 32 percent of the settlement." D. Martin, V. Juneja, T. Foster, F. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions*? 12-13 (NERA Nov. 1996) (attached as Exhibit Q to the Joint Decl.).[10]

Because the fee request is in line with (or less than) fees granted in other cases with similar claims, this final factor also supports Lead Counsel's request.

### C. A Lodestar-Multiplier Cross-Check Confirms The Reasonableness Of The Requested Fee

The Ninth Circuit has encouraged, but not required, that courts conduct a lodestar cross-

---

[10] *See also, e.g., Omnivision*, 559 F. Supp. 2d at 1047 ("in most common fund cases, the award exceeds that [25%] benchmark."); *Mego Fin.*, 213 F.3d at 457, 460 (affirming fee award of one-third of common fund); *Knight*, 2009 WL 248367, at *5-6 (awarding 30% fee); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (awarding one-third fee); *In re Pub. Serv. Co. of N.M.*, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (same); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (same); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses).

962631.6

- 10 -

check when assessing the reasonableness of a percentage fee award. *See Bluetooth*, 654 F.3d at 944 (stating "we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method" of determining fees); *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). Courts in the Ninth Circuit "typically use the lodestar method to cross-check the reasonableness of the percentage to be awarded." *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871, at *3 (N.D. Cal. Oct. 27, 2009).[11]

The lodestar-multiplier cross-check confirms the propriety of the requested fee here. The first step in the lodestar method is to multiply the number of hours counsel reasonably expended on the litigation by a reasonable hourly rate. *See Hanlon*, 150 F.3d at 1029. At that point, according to recent Ninth Circuit authority, "the resulting figure may be adjusted upward or downward to account for several factors including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)); *see also Bluetooth*, 654 F.3d at 942.

### 1.  <u>Plaintiffs' Counsel's Lodestar Is Reasonable</u>

Since they first began investigating the claims in this case well over a year ago, Plaintiffs' Counsel have incurred $2,495,235.25 in lodestar. Joint Decl. ¶47 and Exhibits E and F; *see also* Declaration of Louis P. Malone III in Support of Motions For Final Approval of Settlement and Attorneys' Fees, Reimbursement of Expenses, and Service Awards ("Malone Decl."), Exhibit G;

---

[11] Despite the typical practice, some courts have opted not to perform a lodestar cross-check where counsel have achieved exceptional results for the class through an early settlement. *See, e.g., Glass v. UBS Fin. Servs.*, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) ("where the early settlement resulted in a significant benefit to the class, the Court finds no need to conduct a lodestar cross-check"); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) (awarding 25% fee in securities settlement prior to decision on second motion to dismiss); *see also Craft v. San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.").

Declaration of David J. George in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("George Decl."), Exhibit H.  In all, Plaintiffs' Counsel have devoted more than 4,657 hours to the litigation, consisting of time spent investigating potential claims, analyzing legal issues, drafting the complaints, consolidating the cases, opposing Defendants' motions to dismiss, working with experts, engaging in settlement negotiations, creating the settlement documents, settlement-related briefing, and speaking with Class Members.  Joint Decl. ¶¶43, 9-28.

The time Plaintiffs' Counsel, under the direction of Lead Counsel, have devoted to this case is more than reasonable.  Lead Counsel have prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case.  Joint Decl. ¶44.  Counsel estimate they will spend at least 100 more hours to see this case through its final resolution, including the drafting of reply briefs in support of final approval and this motion, discussing the Settlement and claims process with Class Members (generally sophisticated institutional investors with their own counsel), and attending the final approval hearing.  Joint Decl. ¶46.

Plaintiffs' Counsel's hourly rates are also reasonable.[12]  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  As discussed in Section B(3), above, Plaintiffs' Counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions and complex litigation involving investor claims like those at issue here.  *See* Joint Decl. ¶42.  Plaintiffs' Counsel's customary rates used in calculating the lodestar here have been approved by courts in this District and other courts.  Joint Decl. ¶47.

## 2.    A Significant Multiplier Is Warranted

The fee requested by Lead Counsel reflects a multiplier of 4.68 of Plaintiffs' Counsel's

---

[12] Courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the delay in payment.  *In re Wash. Pub. Power Supply Sys. Sec Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

combined lodestar.  As shown above, courts in the Ninth Circuit presently use virtually identical factors in determining the reasonableness of a percentage-of-the-fund-award as they do in determining an adjustment of lodestar when conducting a lodestar-multiplier cross-check, namely, results, risks, and the quality of representation, considered in light of the complexity and novelty of issues in the case.  Lead Counsel thus refer to the Court to the discussion in Section B.

By way of summary, the multiplier here is reasonable given the outstanding result Lead Counsel have achieved for the Class in the creation of a $65 million Settlement Fund; the risks involved in this contingent litigation, particularly given that the SEC treated payments Defendants already made as compensation for full losses and the nature of the defenses raised by Defendants; the complex issues involved in prosecuting claims of domestic and international investors and ERISA plans together on a class basis in the relatively new area of quantitative investing; and the high-quality representation by experienced and skilled Lead Counsel.  *See Hanlon*, 150 F.3d at 1029; *Bluetooth*, 654 F.3d at 942.

Further, the multiplier is in line with other multipliers courts in and out of the Ninth Circuit have accepted, which further supports its reasonableness.  In *Vizcaino*, the Ninth Circuit noted that multipliers have ranged from 0.6 to 19.6, and upheld an award with a 3.65 multiplier.  290 F.3d at 1050-51 and n.6.[13]  *See generally Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where multiplier was 6.85); *Craft*, 624 F. Supp. 2d at 1123 (awarding 25% fee, plus costs, where multiplier was 5.2); *In re The PMI Grp., Inc. Sec. Litig.*, No. 08-1405 (N.D. Cal. Dec. 20, 2010) (awarding 24.5% of the fund, a 4.76 multiplier) (attached as Exhibit P to the Joint Decl.); *see also In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding 25% of $126 million fund, representing a 6.96 multiplier; noting that multipliers "need not fall within any pre-defined range"); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) (25% of $72.5 million fund; multiplier of 6);

---

[13] *Vizcaino* involved a case with protracted litigation, a factor which – in that case – supported a multiplier of the already large lodestar.  However, the Ninth Circuit also clarified that multipliers may be particularly appropriate when cases settle early: ". . . it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  290 F.3d at 1050 n.5; s*ee also Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 52-53 (2000) ("counsel should be rewarded" for obtaining a prompt settlement).

*In re Merry-Go-Round Enters.*, 244 B.R. 327 (Bankr. D. Md. 2000) (awarding 40% of settlement recovery in accordance with terms of contingent fee agreement where substantial legal obstacles existed; multiplier was 19.6).

The multiplier of 4.68 is thus on the lower end of the spectrum identified by the Ninth Circuit in *Vizcaino*, above, and is in line with the multipliers awarded in other courts within the Ninth Circuit. The lodestar-multiplier cross-check supports the fee request here.

## III. THE PAYMENT OF COSTS IS FAIR AND REASONABLE

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)). Plaintiffs' Counsel (in particular Lead Counsel) have incurred out-of-pocket costs to date totaling $185,055, primarily for expert costs, mediation fees, travel, and research and investigation, and Lead Counsel estimate that they will expend another $5,000 between now and the Final Approval Hearing. Thus, Lead Counsel seek reimbursement of these costs on behalf of themselves and Plaintiffs' Counsel. Joint Decl. ¶¶49-50. These out-of-pocket costs were necessary to secure the resolution of this litigation, and should be recouped. *See Media Vision*, 913 F. Supp. at 1367-72 (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be reimbursed).

## IV. THE REQUESTED SERVICE AWARDS FOR THE SETTLING PLAINTIFFS ARE REASONABLE

Lead Counsel ask the Court to award service payments to the five Settling Plaintiffs in the amount of $10,000 each.[14] Modest enhancement payments compensate named plaintiffs for work done on behalf of the class, attempt to account for financial or reputational risks associated with the litigation, and promote the public policy of encouraging individual plaintiffs to undertake the

---

[14] In addition to the four Court-appointed Class Representatives, the Trustees of the Carpenters Pension Fund of Illinois, which filed a complaint titled *Trs. of the Carpenters Pension Fund of Ill. v. AXA Rosenberg Group LLC, et al.,* Case No. CV11-2594 (N.D. Cal.), participated in settlement proceedings and is a party to the Stipulation of Settlement.

1    responsibility of representative lawsuits.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-

2    59 (9th Cir. 2009); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646-47 (S.D. Cal. 2011) ("Incentive

3    awards are fairly typical in class actions.").   The Settling Plaintiffs came forward to serve as

4    plaintiffs in the underlying litigations, kept abreast of the litigation, furnished Plaintiffs' Counsel

5    with documents, and approved the terms of the Stipulation of Settlement after review and

6    consultation with counsel.  Joint Decl. ¶53.[15]  A $10,000 service award to each of the five Settling

7    Plaintiffs is appropriate and consistent with awards approved by federal courts in this District.

8    *See*, *e.g.*, *Ross v. U.S. Bank Nat'l Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010)

9    (approving $20,000 service award); *In re LDK Solar Sec. Litig.*, 2010 WL 3001384, at *4 (N.D.

10   Cal. July 29, 2010) (awarding $10,000 service award to named plaintiff in securities settlement).

11   **V.     CONCLUSION**

12         Based on the foregoing, Plaintiffs respectfully request that the Court grant Lead Counsel's

13   Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

14                                     Respectfully submitted,

15   Dated: February 24, 2012          BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

16                                     By:   */s/ Blair A. Nicholas*
                                              BLAIR A. NICHOLAS
17

18                                     BLAIR A. NICHOLAS
                                       (blairn@blbglaw.com)
19                                     NIKI L. MENDOZA
                                       (nikim@blbglaw.com)
20                                     BENJAMIN GALDSTON
                                       (beng@blbglaw.com)
21                                     DAVID KAPLAN
                                       (davidk@blbglaw.com)
22                                     PAUL M. JONNA
                                       (paulj@blbglaw.com)
23                                     12481 High Bluff Drive, Suite 300
                                       San Diego, CA 92130
24                                     Telephone:  (858) 793-0070
                                       Facsimile:  (858) 793-0323
25
                                       *Co-Lead Plaintiffs' Counsel*
26

27   _____
     [15] The four Named Plaintiffs have filed declarations in support of this Motion and the Motion in
28   Support of Final Approval describing their role in this litigation.

1    Dated: February 24, 2012          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

2                                      By:    /s/ Steven E. Fineman
                                                  STEVEN E. FINEMAN
3

4                                      Steven E. Fineman
                                       (sfineman@lchb.com)
5                                      Rachel Geman
                                       (rgeman@lchb.com)
6                                      250 Hudson Street, 8th Floor
                                       New York, NY 10013-1413
7                                      Telephone: (212) 355-9500
                                       Facsimile:  (212) 355-9592
8
                                       LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
9                                      Kelly M. Dermody
                                       (kdermody@lchb.com)
10                                     275 Battery Street, 29th Floor
                                       San Francisco, CA 94111-3339
11                                     Telephone: (415) 956-1000
                                       Facsimile:  (415) 956-1008
12
                                       *Co-Lead Plaintiffs' Counsel*
13

14                                     O'DONOGHUE & O'DONOGHUE LLP
                                       Louis P. Malone, III
15                                     4748 Wisconsin Avenue, N.W.
                                       Washington, DC 20016
16                                     Telephone: (202) 361-0041
                                       Facsimile:  (202) 362-2640

17                                     *Additional Counsel for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28