BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
(blairn@blbglaw.com)
NIKI L. MENDOZA (Bar No. 214646)
(nikim@blbglaw.com)
BENJAMIN GALDSTON (Bar No. 211114)
(beng@blbglaw.com)
DAVID KAPLAN (Bar No. 230144)
(davidk@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:   (858) 793-0323

*Co-Lead Counsel*

LIEFF CABRASER HEIMANN
   & BERNSTEIN, LLP
KELLY M. DERMODY (Bar No. 171716)
(kdermody@lchb.com)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
Fax: (415) 956-1008
     -and-
STEVEN E. FINEMAN (Bar No. 140335)
(sfineman@lchb.com)
RACHEL GEMAN (admitted *pro hac vice*)
(rgeman@lchb.com)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel: (212) 355-9500
Fax: (212) 355-9592

*Co-Lead Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re AXA ROSENBERG INVESTOR LITIGATION<br><br>This Document Relates To:  All Actions | Master File No. CV 11-00536 JSW<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF SETTLEMENT FUND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date:         March 29, 2013<br>Time:        9:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:       Hon. Jeffrey S. White |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, upon the accompanying Declaration of Stephanie Thurin Regarding Distribution of Settlement Fund (the "Thurin Declaration") submitted by the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), and Plaintiffs' Memorandum of Points and Authorities submitted herewith, on March 29, 2013, at 9:00 a.m., before the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Named Plaintiffs Government of Guam Retirement Fund, Sacramento County Employees' Retirement System, Trustees of the National Elevator Industries Health Benefit Fund, and Trustees of the Pipefitters Local 636 Defined Benefit Pension Fund (collectively, "Named Plaintiffs") will and hereby do move the Court for an order, *inter alia,* (i) approving the administrative determination of Epiq concerning the acceptance and rejection of Claims submitted with respect to the Settlement Fund in this matter; (ii) directing payment of the Net Settlement Fund to Authorized Claimants as discussed below, and once re-distribution becomes no longer cost-effective, authorizing and directing the balance of the Net Settlement Fund to be donated to a non-profit charitable organization selected by Settling Plaintiffs and approved by the Court; and (iii) authorizing payment from the Settlement Fund for outstanding claims administration expenses associated with the notice and administration of the Settlement.[1]

Named Plaintiffs are aware of no opposition to this Motion. Named Plaintiffs thus respectfully submit that a hearing may be unnecessary, and seek the Court's expeditious approval of the Motion so that the funds may be promptly distributed to the Class.

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1. Whether the Court should approve the administrative determinations of the Claims Administrator for acceptance and rejection of submitted claims.

2. Whether the Court should adopt the recommended plan for distribution of the Net Settlement Fund.

---

[1] The terms of the Settlement are set forth in the Stipulation of Settlement, filed with the Court on November 1, 2011. ECF No. 59.

1      3. Whether payment of the claims administration expenses associated with the notice and administration of the Settlement should be authorized.

## I. INTRODUCTION

On April 2, 2012, this Court entered a Final Judgment and Order of Dismissal with Prejudice ("Judgment") approving the terms of the Stipulation of Settlement dated November 1, 2011 (the "Stipulation") in the above-referenced class action. *See* ECF No. 72.

Under the terms of the Stipulation, a $65 million settlement fund was established for the benefit of the Class. The settlement fund, less attorneys' fees and expenses previously awarded by the Court, and less administration costs and taxes (the "Net Settlement Fund"), is to be distributed to all eligible claimants whose claims have been accepted, pursuant to the Plan of Allocation previously approved by the Court.

This Court's Judgment reserved jurisdiction to effectuate and enforce the terms of the Judgment and Settlement, which includes the administration of the Settlement and the distribution of the Net Settlement Fund. Paragraph 28 of the Stipulation provides that Lead Counsel will apply to the Court, on notice to the Settling Defendants, for a Class Distribution Order: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (ii) approving payment of any outstanding administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (iii) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

The Effective Date has occurred, and Lead Counsel now seek approval of the distribution of the Net Settlement Fund to Authorized Claimants as determined by the Claims Administrator. Pursuant to paragraph 28 of the Stipulation, Lead Counsel gave notice to the Settling Defendants of the instant motion, and are informed that the Settling Defendants do not oppose the motion.

## II. SUMMARY OF CLAIMS PROCESSING

Pursuant to the Stipulation, Class Members were required to submit Proof of Claim forms to share in the distribution of the Net Settlement Fund. This Court authorized the retention of the claims administration firm Epiq to mail and publish notice to the Class, to act as the Claims

MOTION FOR DISTRIBUTION OF SETTLEMENT FUND
Case No. CV 11-00536 JSW                                              2

Administrator, to process the Proofs of Claim received, and to assist in the distribution of the Net Settlement Fund. The processing procedures and the basis of the distribution are described in the Thurin Declaration, filed simultaneously herewith. As explained therein, Epiq performed a thorough review of each claim submitted. Named Plaintiffs respectfully request that this Court enter an Order approving the determinations of Epiq accepting and rejecting the claims submitted.

In the Court's December 6, 2011 Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing as Modified (the "Preliminary Approval Order"), the Court set an April 26, 2012 deadline for submission of claim forms. As of November 27, 2012, a total of 560 Proofs of Claim have been received and processed by Epiq. Thurin Decl. ¶3. Of these, Epiq determined that 446 claims are eligible and are recommended for acceptance as "Complete (Valid)." *Id.* ¶18. Epiq determined that, pursuant to the Court approved Plan of Allocation, every Class member who filed a claim should have his, her or its claim accepted; the claims that are recommended for denial are either duplicates or from non-Class members. *Id.*

Epiq attempted to match each claim to the data provided by Defendants in order to determine if the claim fell within the definition of the Class.[2] If a claim did not match Defendants' records, Epiq then sought to obtain additional information from the Defense Counsel to determine whether or not the account listed on the Proof of Claim was eligible. With respect to those claims in which Epiq requested additional information from Defense Counsel,

---

[2] The Class, as certified by the Court in the Preliminary Approval Order, is defined as all persons and entities (whether consisting of a pooled investment fund or individually managed account) for which AXA Rosenberg Investment Management LLC or an Affiliated Adviser provided investment management or advisory services during the Class Period; and (i) for which a separate account (including sub-accounts) holding cash and/or securities was maintained with a custodian (or administrator or trustee) under that person's or entity's name (other than the pooled investment funds whose investors meet the definition of clause (ii)), or (ii) that signed subscription agreements (or similar documentation) to invest (and were invested) during the Class Period in a pooled investment fund that was sponsored by AXA Rosenberg Investment Management LLC, which fund did not have a board or other non-directed independent trustee(s) with independent fiduciary management responsibility ("Non-Independent Funds"). Defendants and certain other persons and entities are excluded from the Class.

MOTION FOR DISTRIBUTION OF SETTLEMENT FUND                                                    3
Case No. CV 11-00536 JSW

1  Epiq placed those claims in a status of "Pending" until additional information was received and a
2  determination regarding the account's eligibility could be made.  If the claim was determined to
3  be eligible it was matched to the appropriate original record and processed.  If the claim was
4  determined to be ineligible based on the Claims Administrator's review of any additional
5  records, the claim was placed into "Denied" status.

6  As explained in the Thurin Declaration, during the Claims processing phase, Epiq mailed
7  denial notification letters ("Denial Letters") to those Claimants who are not Class members
8  according to Defendants' records and the review of the Administrator.  In total Epiq mailed 84
9  Denial Letters.  If a Claimant sent a response to a Denial Letter, that claim was re-processed to
10 verify if it was an eligible claim.  Epiq received 34 responses to the Denial Letters.  In all
11 instances the Claimant did not provide additional information or support to confirm his/her/its
12 eligibility as a Class Member and the Proofs of Claim remained in "Denied" status.

13 If a Claimant proved both that he/she/it was eligible to participate in the Settlement and if
14 the account listed on the Proof of Claim matched Defendants' records, Epiq placed the Proof of
15 Claim in a "Complete" status.  If a claimant listed an eligible account but the Proof of Claim was
16 missing required information, such as a signature, Epiq placed the Proof of Claim in an
17 "Incomplete" status.

18 During the claims processing phase, Epiq mailed deficiency letters ("Defect Letters") to
19 those Claimants whose Proofs of Claim had been deemed "Incomplete" with a potentially
20 curable deficiency.  The Defect Letters identified the reason(s) the claim was defective and gave
21 Claimants 30 days to cure the deficiency(ies) in their claim. A sample Defect Letter is attached
22 to the Thurin Declaration as Exhibit A.  In total, Epiq mailed six Defect Letters.

23 After processing any responses received from Defect Letters, Epiq updated claims to a
24 status of "Complete" if the claim no longer had any deficiency(ies). All of the six deficient
25 claims have been responded to and cured, and the claims have been updated to a "Complete"
26 status.

27 Epiq ran audits of claims received to determine if duplicate claims had been filed for a
28 single account.  If a Proof of Claim was found to be an exact duplicate of another Proof of

Claim, the Proof of Claim submitted first is considered to be the main claim and any subsequent Proofs of Claim are put in a status of "Duplicate."

### III. LATE BUT OTHERWISE VALID CLAIMS

Epiq received 139 otherwise valid Proofs of Claim after the original deadline of April 26, 2012. Lead Counsel believe that it would be unfair to prevent an otherwise valid Proof of Claim from participating in the Net Settlement Fund solely because it was submitted after the original deadline, when it was submitted while Proofs of Claim were still being processed. In addition, extending the deadline furthers the good faith attempts to have Class Members participate in the settlement recovery. Accordingly, unless otherwise ordered by the Court, all otherwise-valid Proofs of Claim received after the original filing deadline of April 26, 2012, but before or on November 14, 2012 (while Proofs of Claim were still being processed), will be treated as timely.

Any Proof of Claim received after November 14, 2012, will be marked and treated as rejected untimely "Late Claimants," as processing such late Proofs of Claim would potentially require a delay in the proposed distribution. Such Late Claimants will be informed that their claims are denied.

Named Plaintiffs respectfully request that the Court enter the attached Order approving the administrative determinations of the Claims Administrator, both accepting the Complete claims and rejecting the Denied or Duplicate claims as detailed in the Thurin Declaration.

### IV. REQUEST FOR DISTRIBUTION TO AUTHORIZED CLAIMANTS

The Gross Settlement Fund, according to section 7.1 of the Stipulation, is to be used to pay a) Taxes, b) Notice and Administration Costs pursuant to paragraph 15 of the Stipulation and as otherwise approved by the Court, c) attorneys' fees awarded by the Court, d) Litigation Expenses awarded by the Court, e) Service Awards awarded by the Court as set forth in paragraph 20 of the Stipulation, and f) other Court-approved deductions. The balance remaining in the Settlement Fund (the "Net Settlement Fund") shall be distributed to Authorized Claimants as provided in the Stipulation and in accordance with the terms of the Plan of Allocation.

MOTION FOR DISTRIBUTION OF SETTLEMENT FUND 5
Case No. CV 11-00536 JSW

1       The Plan of Allocation approved by the Court provides that each Authorized Claimant will receive his or her *pro rata* share of the Net Settlement Fund according to the Authorized Claimants' Recognized Claim under the Plan of Allocation, depending on the total number of valid Claim Forms that Class Members submit to the Claims Administrator and the aggregate amount of those claims relative to the Net Settlement Fund. The Plan of Allocation also directs that no payment will be made on a Recognized Claim where the distribution amount is less than $10.00. Any Authorized Claimant whose *pro rata* distribution amount falls below this threshold will be sent a notification that his/her/its Proof of Claim is *de minimis* and will not be sent an award from the Net Settlement Fund.

      After the *de minimis* Proofs of Claim have been excluded, Epiq will recalculate the remaining *pro rata* distribution amounts for the Authorized Claimants whose Recognized Claims are above the minimum payment threshold. Once these amounts are determined, Epiq will create a payment file that identifies the distribution amounts for such Authorized Claimants. Epiq will then perform quality control checks to confirm that the payment file is expected to correctly pay the eligible Authorized Claimants according to the Plan of Allocation. If any discrepancies are found, Epiq will correct these and re-run the payment file. When the payment file appears to be correct, Epiq will print the checks. Epiq will compare the printed checks to the list of Authorized Claimants and their projected payment amounts to confirm those checks have printed correctly and are made payable in the correct amounts to the correct Authorized Claimants.

      Epiq will then mail the checks to the eligible Authorized Claimants by first class mail. Epiq will issue replacement checks upon request by the payee, and will respond to inquiries about distribution amounts and claim calculations. Epiq will also attempt to place phone calls to any Authorized Claimants who do not timely cash their checks, to remind them to cash their checks.

      As indicated in the Plan of Allocation (paragraph 33 of the Notice), if any funds remain in the Net Settlement Fund by reason of un-cashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have participating Class members deposit the checks they were issued, any balance remaining in the Net Settlement Fund 180 days

1  after entry of an order directing the Net Settlement Fund to be distributed to Authorized
2  Claimants, shall be distributed among the Authorized Claimants as many times as is necessary,
3  in a manner consistent with the Plan of Allocation.[3]

4  Pursuant to the Stipulation, once Lead Counsel determine that it is not cost-effective to
5  conduct further distribution, Lead Counsel shall cause the remaining balance to be donated to a
6  non-profit charitable organization selected by Named Plaintiffs and approved by the Court.
7  After research and deliberation, Named Plaintiffs propose the Institute for Law & Economic
8  Policy ("ILEP"). This case involves Class members in diverse geographical locations, who were
9  investors for which AXA Rosenberg or its affiliated adviser provided investment management or
10 advisory services, who were allegedly harmed by an error in a computer code included in the
11 models used by AXA Rosenberg as part of its quantitative investment management process
12 between 2007 and 2009, and Defendants' response to the error upon discovery. *See supra* note
13 2. ILEP is a nationwide public policy research and educational foundation established to
14 preserve, study, and enhance access to the civil justice system by all consumers. *See*
15 http://www.ilep.info/. Of special relevance to the Class members in this case, the ILEP provides
16 resources focused on, *inter alia,* protection of investors. Accordingly, in the event there is
17 residual available for a *cy pres* award after re-distribution of the settlement fund to Authorized
18 Claimants becomes no longer cost-effective, a donation to ILEP will account for "the nature of
19 the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent
20 class members," and the potential cy pres award will bear "a direct and substantial nexus to the
21 interests of absent class members and thus properly provide[] for the 'next best distribution' to
22 the class." *Zeisel v. Diamond Foods, Inc.,* Civ. No. C 10-01192 JSW, 2012 WL 4902970, at *2
23 (N.D. Cal. Oct. 16, 2012) (quoting *Lane v. Facebook, Inc.,* 696 F.3d 811, 821 (9th Cir. 2012)).

---

[3] The Plan of Allocation provides that an Authorized Claimant shall not receive a distribution greater than his, her or its Recognized Claim. As set forth in the Thurin Declaration (¶20), the total Recognized Claims for all Authorized Claimants is greater than the amount of the Settlement. Accordingly, no Authorized Claimant will receive a distribution greater than his, her or its Recognized Claim, and the Net Settlement Fund will be distributed *pro rata* based on each Authorized Claimant's Recognized Claim.

MOTION FOR DISTRIBUTION OF SETTLEMENT FUND  7
Case No. CV 11-00536 JSW

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Named Plaintiffs request that the Court bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement.

## V. REQUEST FOR DISPOSITION OF CLAIMS ADMINISTRATOR'S RECORDS

Lead Counsel respectfully request approval for the Claims Administrator to discard: (i) paper copies of the Proofs of Claim and all supporting documentation one year after distribution; and (ii) electronic copies of the same three years after distribution.

## VI. REQUEST FOR APPROVAL TO PAY CLAIMS ADMINISTRATION FEES AND EXPENSES

Pursuant to the Stipulation and the Court's Preliminary Approval Order (ECF No. 64), Lead Counsel may direct payment from the Escrow Account for the actual costs incurred in connection with notice and administration of the Settlement. (ECF No. 59, ¶25). The notice and administration costs incurred by the Claims Administrator for mailing and publishing the Notice and otherwise complying with the provisions of the Stipulation is $19,957.21. Epiq's invoice, attached as Exhibit B to the Thurin Declaration, reflects this amount as well as $3,783.00 in additional administration costs estimated to be incurred through the end of the project. Epiq has not received any payment from the settlement fund. Accordingly, this Motion seeks approval for payment of the outstanding balance of $23,740.21 payable to Epiq.

**WHEREFORE**, Named Plaintiffs respectfully request that this Court enter the proposed Order submitted simultaneously herewith.

Dated: December 27, 2012

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP


              */s/ Blair A. Nicholas*
              BLAIR A. NICHOLAS

BLAIR A. NICHOLAS
(blairn@blbglaw.com)
NIKI L. MENDOZA
(nikim@blbglaw.com)
BENJAMIN GALDSTON
(beng@blbglaw.com)
DAVID KAPLAN
(davidk@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

*Co-Lead Counsel*

LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP

              */s/ Steven E. Fineman*
              STEVEN E. FINEMAN

Steven E. Fineman (Bar No. 140335)
(sfineman@lchb.com)
Rachel Geman
(rgeman@lchb.com)
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel:    (212) 355-9500
Fax:    (212) 355-9592

LIEFF CABRASER HEIMANN
 & BERNSTEIN, LLP
Kelly M. Dermody (Bar No. 171716)
(kdermody@lchb.com)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel:    (415) 956-1000
Fax:    (415) 956-1008

*Co-Lead Counsel*

O'DONOGHUE & O'DONOGHUE LLP
Louis P. Malone, III
4748 Wisconsin Avenue, N.W.
Washington, DC 20016
Tel:    (202) 361-0041
Fax:    (202) 362-2640

*Additional Counsel for Plaintiffs*